CASE NO. CIV-22-522- C

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

SINCERE TERRY, *et al.*

Plaintiff,

v.

CITY OF OKLAHOMA CITY, *et al.,*

Defendants.

DEFENDANT DAVID PRATER'S MOTION TO DISMISS
AND BRIEF IN SUPPORT

JESSICA WILKES, OBA#34823
KEVIN MCCLURE, OBA#12767
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-3921   Facsimile: (405) 521-4518

*Attorneys for DAVID PRATER*

September 28, 2022

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................... ii

DEFENDANT DAVID PRATER'S MOTION TO DISMISS ........................................ 1

STATEMENT OF THE CASE ....................................................................................... 1

PLAINTIFF'S ALLEGATIONS ................................................................................... 2

STANDARD OF REVIEW ............................................................................................ 7

ARGUMENT AND AUTHORITY ............................................................................... 9

PROPOSITION I: DEFENDANT PRATER IS ENTITLED TO ELEVENTH
AMENDMENT IMMUNITY ....................................................................................... 9

PROPOSITION II: DEFENDANT PRATER IS ENTITLED TO ABSOLUTE
IMMUNITY .................................................................................................................. 13

PROPOSITION III: PLAINTIFF HAVE FAILED TO SUFFIECIENTLY ALLEGE A
CLAIM FOR CONSPIRACY ....................................................................................... 15

PROPOSITION IV: DEFENDANT PRATER IS ENTITLED TO QUALIFIED
IMMUNITY .................................................................................................................. 17

PROPOSITION V: PLAINTIFF'S CLAIMS AREE PRECLUDED UNDER *HECK V.
HUMPHREY* ................................................................................................................ 22

CONCLUSION .............................................................................................................. 25

CERTIFICATE OF SERVICE ...................................................................................... 26

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Oklahoma,*
  382 F.3d 1206,1217 (10th Cir. 2004)......................................................................................1

*Anderson v. Creighton,*
  483 U.S. 635 (1987)..........................................................................................................19

*Arnold v. McClain,*
  926 F.2d 963,965-66(10th Cir. 1991)................................................................................10

*Ash Creed Mining co. v. Lujan,*
  969 F.2d 868,870 (10th Cir. 1992)......................................................................................8

*Ashcroft v. al-Kidd,*
  563 U.S. 731, 131 S. Ct. 2074 (2011).............................................................................18, 19

*Ashcroft v. Iqbal,*
  556 U.S. 662,678 (2009)...........................................................................................8, 15, 21

*Beattie v. United States,*
  949 F.2d 1092,1093 (10th Cir. 1991)................................................................................12

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544,570 (2007).............................................................................................8, 9,16, 21

*Bennett v. Passic,*
  545 F.2d 1260, 1262-63 (10th Cir. 1976)............................................................................15

*Brill v. Gurich,*
  1998 OK CR 49, Para 5 965 P.2d 404 (10th Cir. 2016)........................................................22

*Bryson v. Gonzalez,*
  534 F.3d 1282,1287(10th Cir. 2008)..................................................................................8, 9

*Buchheit v. Green,*
705 F.3d 1157 (10th Cir. 2012)...................................................................12

*Butz v. Economou,*
438 U.S. 478,512 (1978)...........................................................................13

*Carpenter v. Nutter,*
127 Cal. 61 (1899)....................................................................................23

*Cherokee Nation v. McKesson Corp.,*
529 F. Supp. 3d 1225 (E.D. Okla. 2021)...................................................15

*City of Los Angeles v. Lyons,*
461 U.S. 95,111 (1983).............................................................................12

*City & Cnty of San Francisco V. Sheehan,*
135 S. Ct. 1765,1774 (2015).....................................................................19

*Coyle v. Smith,*
221 U.S. 559,579 (1911)...........................................................................10

*Cunningham v. BHP Petroleum Great Britain PLC,*
427 P.3d 1238,1245 (10th Cir. 2005).........................................................7

*District of Columbia v. Wesby,*
138 S. Ct. 577 (2018)................................................................................19

*Dodds v. Richardson,*
614 F. 3d 1191 (10th Cir. 2010).................................................................19

*Dubbs v. Head Start, Inc,*
336 F.3d 1194,1201 (10th Cir. 2003)...........................................................8

*Ex Parte Edward T. Young,*
209 U.S. 159-160, 28 S. Ct. 441 (1908)..............................................10, 11

*Foote v. Spiegel,*
118 F.3d 1416 (10th Cir. 1997).................................................................15

*Gagan v. Norton,*
    35 F.3d 1473, 1475 (10th Cir. 1994)...........................................................................13

*Gregorich v. Lund,*
    54 F. 3d 410,415 (7th Cir. 1994)...............................................................................19

*Grimsley v. MacKay,*
    93 F.3d 676 (10th Cir. 1996)....................................................................................15

*Gomes v. Wood,*
    451 F.3d 1122,1134 (10th Cir. 2006).......................................................................18

*Gutierrez v. Cobos,*
    841 F. 3d 895 (10th Cir. 2016)..................................................................................19

*Gutierrez v. Smith,*
    707 F. 3d 1161,1162 (10th Cir. 2013).......................................................................19

*Heck v. Humphrey,*
    512 U.S. 477 (1994)...............................................................................22, 23, 24, 25

*Hernandez v. Mesa,*
    173 S. Ct. 2003 (2017).............................................................................................17

*Holt v. U.S.,*
    46 F.3d 1000,1003 (10th Cir. 1995)...........................................................................7

*Imbler v. Pachtman,*
    424 U.S. 409,424-26 (1976)..........................................................13, 14, 15, 17

*Jordan v. Sosa,*
    654 F.3d 1012,1024   (10th Cir. 2011).......................................................................12

*Kalina v. Fletcher,*
    522 U.S. 118,128-30 (1997)......................................................................................14

*Kentucky v. Graham,*
   473 U.S. 159 (1985)..................................................................................................9

*Kirby v. Dallas County Adult Probation Dep't,*
   359 F. App'x 27 (10th Cir. 2009)..............................................................14, 15, 17

*Kisela v. Hughes,*
   138 S. Ct. 1148 (2018)............................................................................................17

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
   511 U.S. 375,377 (1994)...........................................................................................7

*Lundgrin v. Claytor,*
   619 F.2d 61 (10th Cir. 1980)..................................................................................11

*Mazurek v. Armstrong,*
   520 U.S. 968,972 (1997)........................................................................................11

*Medina v. Cram,*
   252 F.3d 1124(10th Cir. 2001)...............................................................................18

*Mitchell v. Forsyth,*
   472 U.S. 511 (1985)................................................................................................18

*Mink v. Suthers,*
   485 F.3d 1244,1254-55 (10th Cir. 2007)...........................................................12, 14

*Morris v. Noe,*
   672 F.3d 1185 (10th Cir. 2012)..............................................................................18

*Mullenix v. Luna,*
   136 S. Ct. 305,308 (2015)......................................................................................19

*Nieves v. Barlett,*
   139 S. Ct. 1715(2019).......................................................................................20, 25

*O Centro Espirito Beneficiente Uniao Do Vegatal v. Ashcroft,*
   389 F.3d 973 (10th Cir. 2004).................................................................................11

*O'Shea v. Littleton,*
    414 U.S. 488,495-96 (1974)....................................................................12

*Pahls v. Thomas,*
    718 F.3d 1210 (10th Cir. 2013)............................................................18

*Papasan v. Allain,*
    478 U.S. 265(1986).............................................................................10

*Pearson v. Callahan,*
    555 U.S. 223,231 (2009)..........................................................18, 19, 22

*Petition of Humphrey,*
    1979 OK CR 97, 601 P.2d 103…………….........................................22

*Pfeiffer v. Hartford Fire Ins. Co.,*
    929 F.2d 1484,1490 (10th Cir. 1991)..................................................14

*Prairie Band Potawatomi Nation v. Wagnon,*
    476 F.3d 818 (10th Cir. 2007)..............................................................10

*Price v. State,*
    1994 OK CR 26, 873 P.2d 1049,1052...................................................20

*Printz v. United States,*
    521 U.S. 898 (1997).............................................................................10

*Ramirez v. Sanchez Ramos,*
    438 F.3d 92(1st Cir. 2006)..................................................................12

*Randolph v. Rodgers,*
    170 F.3d 850(8th Cir. 1999)................................................................12

*Richardson v. McKnight,*
    521 U.S. 399 (1997).............................................................................18

*Ruiz v. McDonnell,*,
  299 F.3d 1173,1180 (10th Cir. 2002)............................................................................7

*Scheuer v. Rhodes,*
  416 U.S. 232,236 (1974)..........................................................................................9

*Snell v. Tunnell,*
  920 F.2d 673,687 (10th Cir. 1990)..........................................................................13

*Serna v. Colo. Dept. of Corr.,*
  455 F.3d 1146 (10th Cir. 2006)..........................................................................15, 21

*Thomas v. Kaven,*
  765 F.3d 1183,1197 (10th Cir. 2014)........................................................................3

*Verizon Maryland, Inc. v. Public Service Com'n of Maryland,*
  535 U.S. 635(2002)..............................................................................................10, 12

*United States v. Enterprise Mngmt Consultants, Inc.,*
  883 F.2d 886 (10th Cir. 1989)................................................................................11

*Westar Energy, Inc. v. Lake,*
  552 F.3d 1215 (10th Cir. 2009)............................................................................10, 12

*White v. Pauly,*
  137 S. C.t 548 (2017)..............................................................................................19

*Yoder v. Honeywell, Inc.,*
  104 F. 3d 1215,1224 (10th Cir. 1997)........................................................................8

*Ziglar v. Abbasi,*
  137 S. Ct. 1843 (2017)............................................................................................18

## STATUTES

42 U.S.C. § 1983....................................................................1, 2, 3, 13, 14, 15, 23, 24, 25

OKLA. STAT. tit. 12, §95(A)(3)........................................................................................2

## RULES

11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §2948 (2d ed.
1995)…………………………………………………………………...……………………11

Fed. R. Civ. P. 8(a)(2) …………………………………………………...……………………1

Fed. R. Civ. P. 12(b)(1) …………………………………………………..………………1, 7

Fed. R. Civ. P. 12(B)(6) ……………………………………………..………………1, 8, 9

Fed. R. Civ. P. 12(h)(3) ………………………………………………...……………………7

## OTHER

15 U.S.C § 1 …………………………………………………..………………………………17

28 U.S.C § 2254 ……………………………………………...……...……………………24

U.S. Const. amend. I…….………………...………………………………1, 2, 25

U.S. Const. amend. IV ……………………………………………..………………………1

U.S. Const. amend. XI ………………………………………………………...……………10

U.S. Const. art. III §2……………………………………………………………………7

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

SINCERE TERRY, *et al.*,                     )
                                             )
        Plaintiffs,                )
                                             )
vs.                                          )
                                             )   CASE NO. CIV-22-522-C
CITY OF OKLAHOMA CITY, *et al.*,             )
                                             )   JURY TRIAL DEMANDED
        Defendants.                )

## DEFENDANT DAVID PRATER'S MOTION TO DISMISS

Defendant, David Prater, sued in his individual and official capacities, to file this Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). In support of this motion, Prater would show this Court the following:

## STATEMENT OF THE CASE

Plaintiffs have filed this lawsuit pursuant to 42 U.S.C. §1983 against Oklahoma County District Attorney David Prater *et al.*, for alleged violations of their First and Fourth Amendment rights. [Doc. 39, ¶¶ 389, 415, 442]. Most of their factual allegations occurred outside the applicable statute of limitations.[1] This case was filed on June 23, 2022, therefore, the only (possible) relevant allegations against Prater occurred after the Plaintiffs' arrests on June 24, 2020 [Doc. 39, ¶¶ 135, 138] at the Oklahoma City Police Department where one of the Plaintiffs *admittedly* threatened that she would "**burn this whole b\*\*\*\* to the f\*\*\*\*\*\* ground**," [Doc. 39, ¶ 133].

---

[1] 42 U.S.C. §1983 claims in Oklahoma must be filed within two (2) years of their occurrence. *Alexander v. Oklahoma*, 382 F.3d 1206, 1217 (10th Cir.2004) (in a §1983 case, "state law governs the application of tolling in a civil rights action;" in Oklahoma that is two (2) years pursuant to 12 O.S. §95(A)(3)).

While Plaintiffs have made numerous allegations against numerous Defendants, their only claims alleged against Prater are: Count I – Violation of First Amendment (Retaliatory Arrest and Prosecution for Protect Speech) wherein Plaintiffs have sued Prater in his official capacity, seeking injunctive relief, and individual capacity, seeking damages [Doc. 39, ¶389]; Count III – Violation of First Amendment (Content and/or Viewpoint Discrimination) wherein Plaintiffs have sued Prater in his official capacity, seeking injunctive relief, and individual capacity, seeking damages [Doc. 39, ¶415]; and Count VI – 42 U.S.C. §1983 (Conspiracy to Violate Constitutional Rights) wherein Plaintiffs have sued Prater in his "individual capacity," seeking money damages, [Doc. 39, ¶442].[2] Plaintiffs bring these claims against Prater despite admitting that they all pled guilty to charges of "obstruction of an officer." [Doc. 39, ¶253 (Terry pled guilty); ¶262 (Hogsett pled guilty); ¶268 (Baker pled guilty); ¶281 (Nabors pled guilty); ¶290 (Webb pled guilty)]. For the reasons set out below, Plaintiffs' claims against Defendant Prater must be dismissed.

## PLAINTIFFS' ALLEGATIONS

Plaintiffs identify as a group of young activists who admittedly act in solidarity with the larger movement for racial justice. [Doc. 39, ¶2]. While Plaintiffs have pled numerous background facts leading up to their June 24, 2020, arrest, if they are relying on those background facts to form the basis of their claims against Prater, this court must dismiss them as beyond the applicable statute of limitations. (*See* fn.1). In fact, ¶¶ 22 through 72 are outside

---

[2] Plaintiffs state that Count V – Malicious Prosecution is only asserted against the City of the Oklahoma City and VanNort.   [Doc. 39, ¶427]. However, Plaintiffs' assertion of Count V includes alleged conduct on behalf of Prater.   Plaintiffs also allege that VanNort and Prater conspired to violate Plaintiffs' Fourth Amendment rights. For reasons set forth herein, Plaintiffs cannot bring a Fourth Amendment claim against Prater. *Imbler v. Pachtman*, 424 U.S. 409 (1976).

the two years statute of limitations for §1983 claims since the Amended Complaint was not filed until June 23, 2022. [Doc. 39]. The only applicable facts that could possibly form the basis of their claims against Prater begin at ¶ 73 and are referencing their arrest on June 24, 2020. *Id.*

Plaintiffs allege that they had received a permit to paint a mural on June 20, 2020 that would be painted "on a stretch of Shartel Ave. abutting the OCPD headquarters." [Doc. 39, ¶75]; [Doc. 32-1].[3] They allege that before the painting began, an Oklahoma City employee set up barricades at the location. [Doc. 39, ¶76]. Later, a member of the painting group moved the barricades further North than the permit allowed – blocking off access to Colcord Drive from Shartel Ave and impeding access to police headquarters. [Doc. 39, ¶88]; [Doc. 32-2](photos from June 23, 2022 showing painting attendees, one attendee moving the barricades). Even though they claim that a city employee had given them permission to move the barricades outside their permitted area [Doc. 39, ¶77], there is no evidence to suggest their actions were ever properly or legally modified by the permitting entity. They do not identify the city employee who they claim gave them permission to move the barricades nor indicate whether such city employee had authority to grant such modification.[4]

During this same time frame Plaintiffs Nabors and Webb walked to Nabors' vehicle where he showed Webb a "camo-painted AR-22 rifle." [Doc. 39, ¶89]. This action in isolation would probably not be normally alarming (as long as the rifle was purchased legally), except for the fact that Oklahoma City has just experienced several weeks of rioting involving property

---

[3] "A district court may consider documents (1)referenced in a complaint that are (2)central to a plaintiff's claims, and (3)indisputably authentic when resolving a motion to dismiss without converting the motion to one for summary judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1197 (10th Cir. 2014).

[4] For all we know the alleged city employee could have been a trash hauler, a clerk, or a police officer. Plaintiffs knew they needed proper and legal authority to paint the mural or else they

destruction and violence from several protesters. [Doc. 39, ¶¶33–50]. As laid out in Plaintiffs'

Amended Complaint, these *allegedly* peaceful protests have a history of quickly turn into

dangerous riots. [Doc. 39, ¶35] ("Late in the night, some protesters began setting off fireworks,

jumping on and setting fire to an Oklahoma City police car, and breaking the windows of the

first floor of the Oklahoma County Jail and nearby bail bonds company.").

About 45 minutes later "Sgt. Wald of OCPD was driving his police cruiser and encountered

the city barricades at the north end of the mural painting area at the intersection of Shartel Ave.

and Colcord Dr." [Doc. 39, ¶91]. "Wald attempted to turn left onto Colcord Dr. from Shartel

Ave., but the city barricades blocked his passage. Wald stopped his car and stepped out onto

the street, proceeding to pick up one of the city barricades at the northeast corner of the

intersection and move it west, which would allow him to turn onto Colcord Dr." [Doc. 39,

¶92].

An encounter then ensued between Plaintiffs Nabors and Baker, and Sgt. Wald wherein

Nabors confronted Wald telling him that the road was blocked off and asked Wald "if he

thought he could move the barricades just because he was a police officer." [Doc. 39, ¶93];

[Doc. 34] (videos of the June 23, 2022 provocations)(filed conventionally), at time stamp 1:25

to 1:35. As Wald attempted to drive past the barricade that he had just moved to get to the

police station, Nabors and Baker blocked his vehicle from proceeding. [Doc. 39, ¶94]. Sgt.

Wald exited his vehicle and ordered them to move out of the way. *Id.* Sgt. Wald informed the

two that he was transporting a witness and that he was trying get his witness to the station for

further questioning. [Doc. 39, ¶95]. It was at this point that Plaintiffs' Terry, Hogsett, and

---

would not have sought a permit to begin with.  Yet, they unilaterally decided to expand their
permitted area just because they wanted to, <u>without seeking proper authority</u>.

Webb ran towards Sgt Wald, yelling at the sergeant and attempting to provoke the officer in his line of duty. [Doc. 39, ¶96]; [Doc. 34], Bates stamp video 0215, at time stamp 5:00 to 7:14; Bates stamp video 0216, at time stamp 0:27 to 2:14 (group congregating around Sgt. Wald's car, screaming "hit me if you want to" and other profanities); *see generally* Bates stamp videos 0217–0220 (filed conventionally). Sgt. Wald got back in his vehicle and attempted to drive forward, however the group continued to block his vehicle. [Doc. 39, ¶97].

In an attempt to incite the group, multiple Plaintiffs started shouting about the alleged injustice. Plaintiff Nabors cried that Sgt. Wald's actions were "a perfect example of a cop abusing his fucking power" and that Wald should "just go the other way." [Doc. 39, ¶97]. Plaintiffs Terry and Hogsett admit they yelled "Fuck the police"; "We have a permit"; and "This is a city ordinance!" [Doc. 39, ¶98]; [Doc. 34], Bates stamp video 0215, at time stamp 5:00 to 7:14; Bates stamp video 0216, at time stamp 0:27 to 2:14 (filed conventionally).

At this point Brandon Riles who had received the permit approached the scene, showed Sgt. Wald the permit and Wald then proceeded to back up and go a different direction to the station. [Doc. 39, ¶¶99, 101]. Plaintiffs claim that after their encounter with Sgt. Wald an [unnamed] OCPD officer approached them and told them they were welcome to file a complaint against Wald if they wanted. [Doc. 39, ¶114].

The next day, Plaintiffs allege that they attempted to enter OCPD headquarters to lodge a complaint about their encounter with Sgt. Wald. [Doc. 39, ¶116]; [Doc. 34] (videos of the event on June 24, 2022/filed conventionally). They were in a "vestibule" area but were not allowed into the station any further because of COVID restrictions. [Doc. 39, ¶¶119–121]. They claim others were allowed in, but they were repeatedly refused entrance to lodge their complaint

against Wald, being told that if they wished to file a complaint, they could call 911. [Doc. 39, ¶¶122, 124].

After multiple unsuccessful attempts to enter the station, Plaintiffs began showing their frustrations by yelling at the officers in the building and banging on the doors. A non-Plaintiff, (identified in the Amended Complaint as MM) attempted to sneak into the building by following a delivery person through the doors. [Doc. 39, ¶128]; [Doc. 34], Bates stamped video 0015, at time stamp 15:00 through 17:00. Tempers rose and the Plaintiffs began to grow agitated exchanging words with several officers. [Doc. 39, ¶129–130]. MM was apparently arrested, [Doc. 39, ¶131], and in frustration, Plaintiff Hogsett exclaimed she would "**burn this whole b\*\*\*\* to the f\*\*\*\*\*\* ground**."[5] [Doc. 39, ¶133]; [Doc. 34], Bates stamped video 0015, at time stamp 30:51. *See also Id.,* at time stamp 19:53 (Hogsett shouts "Burn that b\*\*\*\* down, Miracle."); *id.* at Bates stamped video 0015, at time stamp 18:40 (filed conventionally) (individuals in the vestibule on the phone with unknown persons asking them to come down to the station). It was then that several arrests occurred. [Doc. 39, ¶135 (Terry was arrested); ¶138 (Plaintiffs Hogsett and Baker were arrested)]; [Docs. 32-4 and 32-5].

Later arrest warrants were obtained for all of the Plaintiffs for their conduct regarding Sgt. Wald. [Doc. 39, ¶226]. Plaintiffs eventually pled guilty for lesser charges **based on the same operable facts**. [Doc. 39, ¶253 (Terry pled guilty); ¶262 (Hogsett pled guilty); ¶268 (Baker pled guilty); ¶281 (Nabors pled guilty); ¶290 (Webb pled guilty); ¶¶303–304 (charges against Mack were dropped as being the wrong person arrested)]; [Doc. 32-6]; [Doc. 32-5 pp. 0194–95] (charges against Mack dropped). Based on the videos ([Doc. 34]) (filed conventionally), photos

---

[5] Relevant to this time period, Black Lives Matter protesters in Seattle, Washington had set fires throughout the city largely in response to the killing of George Floyd.

([Doc. 32-2]), and other documentation gathered to obtain the arrest warrants ([Doc. 32-5]), it is clear that Plaintiffs violated their permit by moving the barricades, then interfered with Sgt. Wald's attempt to transport a witness to the police station, and Plaintiffs intentionally tried to provoke Wald and excite others at the mural painting with their actions and foul-mouthed comments.

## STANDARD OF REVIEW

### (i)      Fed. R. Civ. P. 12(b)(1)

A court must have jurisdiction over a case to enter a valid and enforceable final judgment. *Cunningham v. BHP Petroleum Great Britain PLC*, 427 P.3d 1238, 1245 (10th Cir. 2005). By rule, a federal court "must dismiss" an action "if it determines at any time it lacks subject matter jurisdiction." Fed. R. Civ. P. 12(h)(3). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Article III of the Constitution only permits federal courts to decide actual "Cases" or "Controversies". U.S. CONST. art. III. §2.

A motion to dismiss under Rule 12(b)(1) takes two forms: (1) a facial attack on the sufficiency of the plaintiff's allegations to establish subject matter jurisdiction, or (2)a challenge of the actual facts used to establish subject matter jurisdiction. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). When an opponent presents a facial attack, the court will presume true all allegations as to subject matter jurisdiction allegations. *Id.* However, a party may go beyond the allegations contained in the complaint and challenge the facts upon which the subject matter jurisdiction depends. *Holt v. U.S.*, 46 F.3d 1000, 1003 (10th Cir. 1995). "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* "A court has wide discretion to allow affidavits, other

documents, and a limited evidentiary hearing to resolve disputed jurisdictions facts under Rule 12(b)(1)." *Id.* Courts are required to convert a Rule 12(b)(1) motion to dismiss to a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment when resolution of the jurisdictional question requires resolution of an aspect of the substantive claim. *Id.*

**(ii)      Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff's pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The Rule 8 pleading requirements serves two purposes. First, it ensures that defendants know "the actual grounds of the claim against them," and can therefore prepare a defense. *Bryson v. Gonzales*, 534 F.3d 1282, 1287 (10th Cir. 2008). Second, it "avoid[s] ginning up the costly machinery associated with our civil discovery regime on the basis of 'a largely groundless claim.'" *Id.*

Under Fed. R. Civ. P. 12(b)(6), a complaint must be dismissed for failure to state a claim upon which relief can be granted when "it appears that the plaintiff can prove no set of facts in support that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997)). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff's factual allegations must state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Courts look to the plaintiff's complaint to determine whether "plausibility" exists. *Alvarado v. KOBTV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Only well-pled factual allegations in the complaint are accepted as true, *Ash Creek Mining Co. v. Lujan*, 969 F.2d 868, 870 (1992), and viewed in the light

most favorable to the nonmoving party, *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" is not enough. *Twombly*, 550 U.S. at 555. A complaint must contain enough "<u>facts</u> to state a claim to relief that is plausible on its face" and those factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555, 570 (citations omitted) (emphasis added). "[I]f a complaint is sufficiently devoid of facts necessary to establish liability that it encompass[es] a wide swath of conduct, much of it innocent, a court must conclude that plaintiffs 'have not nudged their claims across the line from conceivable to plausible." *Bryson*, 534 F.3d at 1286 (quoting *Twombly*, 550 U.S. at 570).

## ARGUMENT AND AUTHORITY

Based upon the allegations in the Amended Complaint with reference to the Probable Cause Affidavits, supporting documentation, and videos of the arrests, this Court must dismiss Prater from this lawsuit. The Amended Complaint does not plausibly show that Plaintiffs are entitled to any relief from Prater. Prater was not present during the alleged incident, and his Warrants to Arrest as well as his actions were based on a good faith belief that the Plaintiffs did in fact violate the law.

**PROPOSITION I:**     **DEFENDANT PRATER IS ENTITLED TO ELEVENTH AMENDMENT IMMUNITY.**

In Count I and Count III, Plaintiffs have sued "Defendant Prater in his official capacity for injunctive relief." [Doc. 39, ¶¶389, 415]. Yet, Plaintiffs claim for injunctive relief is barred because this Court lacks jurisdiction over Prater in his official capacity. It is clear that a suit against a state agency or a person in his or her official capacity is, in fact, a suit against the entity itself, which in turn is a suit against the state. *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985).

Under Oklahoma law, a district attorney is an arm of the State. *Arnold v. McClain*, 926 F.2d 963, 965–66 (10th Cir. 1991).

The Eleventh Amendment prohibits a federal court from exercising jurisdiction over either States or state officials sued in their official capacity, except in very limited situations. *See, e.g., Printz v. United States*, 521 U.S. 898 (1997) (Congress may not commandeer state officers); *Coyle v. Smith*, 221 U.S. 559, 579 (1911) (Congress may not dictate a State's capital). One of those limited situations allows a federal court to obtain jurisdiction over a state official sued in their official capacity pursuant the *Ex parte Young* doctrine[6]. Under *Ex parte Young*, a federal court may retain jurisdiction over a state official sued in their official capacity for the limited purpose of determining if that particular state official **is currently** violating a Plaintiff's U.S. Constitutional or federal right. *Ex parte Young*, 209 U.S., at 159-160. Even then, the federal court only possesses the limited authority to issue **prospective injunctive relief**. *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635 (2002). If a plaintiff's claim is tantamount to an award of damages or retroactive in nature, *irrespective of how it is pled*, the federal court lacks jurisdiction over that state official because of the official's sovereign immunity under the Eleventh Amendment. *Papasan v. Allain*, 478 U.S. 265 (1986).

It is unclear, whether Plaintiffs are seeking a preliminary (*aka*, temporary injunction) or a permanent injunction. Nevertheless, the elements of both are substantially the same. *Cf. Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818 (10th Cir. 2007) (permanent injunctions); *Westar Energy, Inc. v. Lake*, 552 F.3d 1215 (10th Cir. 2009) (preliminary injunctions).[7] Yet, irrespective

---

[6] *Ex parte Young*, 209 U.S. 123 (1909)

[7] The only remarkable difference between the two is that a permanent injunction requires actual success on the merits and a preliminary injunction requires a showing of substantial likelihood of success on the merits. *Prairie Band Potawatomi Nation*, 476 F.3d, at 822.

of which type of injunction Plaintiffs seek, *Ex Parte Young's* "prospective injunctive relief" requirement still applies. *Maryland, Inc.*, 535 U.S. 635.

An injunction is an "extraordinary equitable remedy designed to 'preserve the relative positions of the parties until a trial on the merits can be held.'" *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009). "It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed.1995)) (emphasis in original). Furthermore, it "should be granted only in cases where the necessity for it is clearly established." *United States v. Enterprise Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989).

In order to obtain preliminary injunctive relief, the moving party must establish that: (1) the movant will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the movant will succeed on the merits. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980). The Tenth Circuit has identified three types of disfavored preliminary injunctions. These include a preliminary injunction that (1)disturbs the *status quo*; (2)is mandatory rather than prohibitory; (3)affords the movant substantially all the relief that she would recover at the conclusion of a trial on the merits. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004). Where a movant seeks one of these disfavored preliminary injunctions, she must demonstrate that the four factors "weigh heavily and compellingly in [her] favor." *Id.*

Determining whether a request for injunctive relief is prospective, so as to fall within the *Ex Parte Young* exception, requires a straightforward inquiry into whether the complaint alleges an **ongoing** violation of federal law and seeks relief properly characterized as **prospective**. *Buchheit v. Green*, 705 F.3d 1157 (10th Cir. 2012) (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)). "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). Specifically, the plaintiff must show "susceptibility to continuing injury," or a "likelihood of substantial and immediate irreparable injury." *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (quoting *O'Shea*, 414 U.S. at 499); *Beattie v. United States*, 949 F.2d 1092, 1093 (10th Cir. 1991) ("[W]hile a plaintiff who has been constitutionally injured can bring a[n] . . . action to recover damages, that same plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future.") (omission and second alteration in original) (emphasis added); *see also Randolph v. Rodgers*, 170 F.3d 850, 856 (8th Cir. 1999) ("A claim for equitable relief is moot 'absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again.'") (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). *See also Ramirez v. Sanchez Ramos*, 438 F.3d 92 (1st Cir. 2006) (dismissing plaintiff's First Amendment retaliation claim because the criminal charges against the plaintiff had been dropped, and the plaintiff could not show that the charges would likely be brought again); *Mink v. Suthers*, 485 F.3d 1244, 1254–55 (10th Cir. 2007).

Here, Plaintiffs present no allegations that Prater has threatened to charge them with any crimes, or that the Plaintiffs intend to violate the law, in the future. Further, Defendant Prater

will be leaving office in January 2023. Hence, Plaintiffs fail to allege sufficient facts to show that they are susceptible to a continuing injury or a likelihood of substantial and immediate irreparable harm. Plaintiffs' mere subjective fear that they may be arrest in the future is not sufficient to bring a claim for prospective injunctive relief. More likely, Plaintiffs' First Amendment claim is a thinly veiled attempt seek retroactive remedy or an award of monetary damages. Regardless, this Court lacks jurisdiction over Count I and Count III insofar as they make claims against Prater in his official capacity.

## PROPOSITION II: DEFENDANT PRATER IS ENTITLED TO ABSOLUTE IMMUNITY.

"State prosecutors are entitled to absolute immunity against suits brought pursuant to § 1983 for activities intimately associated with the judicial process." *Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir. 1994) (emphasis, ellipsis, and internal quotation marks omitted). "Absolute immunity is necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Snell v. Tunnell*, 920 F.2d 673, 687 (10th Cir. 1990) (quoting *Butz v. Economou*, 438 U.S. 478, 512 (1978)) (quotation marks and ellipsis omitted). Prosecutors are, unfortunately, not blessed with benefit of foresight. Yet, they are required to make quick judgment calls and try a criminal case within a short period of time. Thus, to maintain a smooth functioning judicial process, a prosecutor should not be distracted by the threat of subsequent time-consuming and duplicative civil litigation. *Id.* (citing *Imbler v. Pachtman*, 424 U.S. 409, 424–26 (1976)).

"Attaining the [criminal justice] system's goal of accurately determining guilt or innocence requires that both the prosecution and the defense have wide discretion in the conduct of the trial and the presentation of evidence." *Imbler*, 424 U.S. at 426. "A prosecutor is

duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Id.* at 425. Hence, affording a prosecutor only qualified immunity would likely have serious adverse consequents on the criminal judicial system. *Id.* at 426.

To determine whether a prosecutor is entitled to absolute immunity, "the determinative factor is advocacy because that is the prosecutor's main function." *Id.* (internal quotation marks omitted). Absolute immunity may attach to even "administrative or investigative functions when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court." *Mink v. Suthers*, 482 F.3d 1244, 1261 (10th Cir. 2000) (quoting *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir. 1991)). The duties of a prosecutor and his role as an advocate likewise involves actions preliminary to the initiation of prosecution. *Imbler*, 424 Y.S. at 431. Hence, an action falls within advocacy, and therefore immunity, when (1)the action is closely associated with the judicial process, (2)it is a uniquely prosecutorial function, and (3)it requires the exercise of professional judgment. *Id.*

Here, Plaintiffs complain of Praters decision to charge them with felonies instead of misdemeanors and his request to the courts to set higher bonds than the Plaintiffs deem necessary. Such action, even if true, would fall within a prosecutor's advocacy function. *Kalina v. Fletcher*, 522 U.S. 118, 128–30 (1997) (A prosecutor is entitled to absolute immunity in preparing charging documents, deciding to file charges, and presenting information and motions to the court; such actions require that the prosecutor exercise a discretionary judgment based on the evidence before him or her.); *Kirby v. Dallas County Adult Probation Dep't*, 359 F.App'x 27, 30–31 (10th Cir. 2009) (unpublished) (Prosecutor was entitled to absolute

immunity from §1983 claims based on core prosecutorial functions such as a prosecutor's decision to prosecute and participation in bond proceedings).[8] Even conspiring, as alleged by the Plaintiffs, with others to bring such charges, secure the issuance of a warrant,[9] and set a high bond falls within the confines of absolute immunity. *Imbler*, 424 U.S. 409; *Kirby*, 359 F. App'x, at 32. Hence, Prater is absolute immune from Plaintiffs' claims.

**PROPOSITION III:     PLAINTIFFS HAVE FAILED TO SUFFICIENTLY ALLEGE A CLAIM FOR CONSPIRACY.**

As a general rule, "[i]ndividual liability under [42 U.S.C.] § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976) ("Personal participation is an essential allegation in a Section 1983 claim." (citations omitted)). A plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). In other words, there must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. *Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1151–52 (10th Cir. 2006).

To state a claim for civil conspiracy, Plaintiffs must plead facts showing: (1)two or more persons, (2)an object to be accomplished, (3)**a meeting of minds** on the object or course of action, (4)one or more **unlawful overt acts**, and (5)damages as a proximate result thereof. *Cherokee Nation v. McKesson Corp.*, 529 F.Supp.3d 1225, 1241 (E.D. Okla. 2021). "A statement of

---

[8] Insofar as Plaintiffs attempt to bring claims against Defendant Prater for alleged malicious prosecution in violation of the Fourth Amendment rights, Defendant Prater is likewise entitled to absolute immunity for such alleged conduct. *Imbler*, 424 U.S. 409.
[9] Plaintiffs do not allege that Prater acted as a fact witness in "conspiring" to issue warrants against the individuals. The only conduct complained of is that which would have required

parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a [conspiracy] claim; without that further circumstance pointing towards a meeting of minds, an account of a defendant's [sic] efforts stays in neutral territory." *Twombly*, 550 U.S. 544, 557 (2007) (discussion a claim under §1 of the Sherman Act). An allegation of parallel conduct is much like a naked assertion – it does not push the claim to the point of plausibility. *Id.*

> a.  **Plaintiffs failed to plausibly show a "meeting of minds."**

Aside from conclusory statements, Plaintiffs have not shown an agreement or meeting of minds between Defendant Prater and any Defendant VanNort. Plaintiffs' allegations that Prater conspired with VanNort to violate their First and Fourth Amendment rights by working together to secure the issuance of warrants, detention, jailing, and prosecution of Plaintiffs are wholly baseless. Plaintiff's generic and *assumptive* statements that the Defendants "worked together" are insufficient to plausibly show an agreement or meeting of minds. Specifically, Plaintiffs' allegation that affidavits "strongly suggest" that Prater advised VanNort, [Doc. 39, ¶175], offer no actual facts, but mere assumptions, or namely Plaintiffs' *hopes*, that Prater was in any way involved in drafting the affidavits.

> b.  **Plaintiffs failed to plausibly show that Prater and VanNort intended to commit illegal acts.**

Aside from conclusory statements, Plaintiffs have failed to show that Prater and VanNort conspired to commit "unlawful overt acts." Defendant Praters duties as the District Attorney include bringing criminal charges, requesting the appropriate bond for detainees, and relying on probable cause affidavits. Furthermore, Plaintiffs Terry, Hogsett, Baker, Nabors, and

---

Prater to use his discretion in his capacity as an advocate. All other allegations are conclusory

Webb plead guilty to the operable facts within the arrest warrants. [Doc. 39, ¶253 (Terry pled guilty); ¶262 (Hogsett pled guilty); ¶268 (Baker pled guilty); ¶281 (Nabors pled guilty); ¶290 (Webb pled guilty)]; [Doc. 32-6]. Plaintiffs' allegations show no more than Prater "planned" to act lawfully and within his duties to consider the allegations laid out by Defendant VanNort in the affidavits, bring the appropriate charges, and request an effective bond as he saw fit.

> **c.    Plaintiffs may not bypass *Imbler* and disguise a claim for malicious prosecution as a claim for conspiracy to violate their Fourth Amendment rights.**

Plaintiffs' claim that Prater "conspired" to violate their Fourth Amendment rights is not more than a thinly veiled attempt to circumvent Prater's absolute immunity. However, Prater's immunity reaches across to such conspiracy claims. *Imbler*, 424 U.S. 409; *Kirby*, 359 F.App'x, at 32. In Count VI, Plaintiffs fail to allege that Prater acted outside of his advocacy function, even in alleging that he conspired to do so. As such, Count VI must fail.

## PROPOSITION IV:   DEFENDANT PRATER IS ENTITLED TO QUALIFIED IMMUNITY.

Even if Prater's actions would fall outside his advocacy duties, he would still be entitled to qualified immunity. Qualified immunity shields government officials from civil liability so long as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Hernandez v. Mesa*, 173 S. Ct. 2003 (2017); *see also Kisela v. Hughes*, 138 S. Ct. 1148 (2018) (holding that the law enforcement officer's use of force did not violate clearly established law, and thus, officer was entitled to qualified immunity). The purpose of this immunity is to "protect the public from unwarranted timidity on the part of public officials," "to ensure that talented candidates are not deterred by the threat of damages suits

---

and should not be accepted as true. *Twombly*, 550 U.S. at 555.

from entering public service," and to reduce "the chance that lawsuits will distract from the performance of public duties." *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (internal quotation marks omitted) (quoting *Richardson v. McKnight*, 521 U.S. 399 (1997)); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

"Qualified immunity balances two important interests: (1) the need to hold public officials accountable when they exercise power irresponsibly, and (2) the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S., at 231. The purpose of the doctrine is to provide government officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). Courts presume that government officials are entitled to qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Pahls v. Thomas*, 718 F.3d 1210 (10th Cir. 2013) (finding that qualified immunity is the "norm").

Once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not apply. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). To overcome the presumption of qualified immunity, a plaintiff must demonstrate that: (1)the defendant violated one of his constitutional rights, and (2)the right in question was clearly established at the time of the allegedly unlawful activity such that "every reasonable official would have understood that what he [was] doing" violated the law. *Morris v. Noe,* 672 F.3d 1185, 1191 (10th Cir. 2012). Because it is the plaintiff's burden to satisfy this "strict two-part test," courts may grant qualified immunity if the plaintiff fails either prong. *Dodds*, 614 F.3d at 1191.

"The clearly established law must be '**particularized**' to the facts of the case" and may not be defined at a high level of generality. *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). It is the **plaintiff's burden** to produce case law in which "the facts of the existing case law must closely correspond to the contested action before the defendant official is subject to liability." *Gregorich v. Lund*, 54 F.3d 410, 415 (7th Cir. 1994); *District of Columbia v. Wesby*, 138 S.Ct. 577 (2018) (Courts have stressed **the need to identify a case** where an officer acting under similar circumstances was held to have violated federal law); *see also Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016). The failure to identify such a case is fatal to the claim. *Guterrez*, at 902; *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013).

Existing precedent must have placed the constitutional question **beyond debate**. *Ashcroft*, 563 U.S., at 741. Therefore, qualified immunity protects officials regardless of whether the official's error is a mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S., at 232. As a result, only those who are "incompetent" or those who "knowingly violate the law" can be held liable. *Ashcroft*, 563 U.S., at 743; *see also City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015). In sum, "[a] clearly established right is one that is sufficiently clear that **every reasonable official** would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (emphasis added, internal quotation marks omitted); *Wesby*, 183 S. Ct., at 590. The failure to identify such a case is fatal to the claim. *Guterrez*, 841 F.3d, at 902; *McCord*, 707 F.3d, at 1162.

a.    **Prater acted within the law when he relied on the probable cause affidavits, brought the charges against the Plaintiffs, and requested the bail amount for each Plaintiff.**

Based on the alleged facts in the Amended Complaint, this Court must grant Defendant Prater qualified immunity and dismiss him from this lawsuit. Plaintiffs allege that Prater infringed on their First Amendment rights by bringing criminal charges against them and requesting high bail bonds, and that Prater conspired with others to do such in violation of Plaintiffs' First and Fourth Amendment rights. Yet, an individual is not above the law merely because he or she is exercising his or her First Amendment rights. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). In that same vein, the First Amendment does not protect speech which presents a clear and present danger. *Price v. State*, 1994 OK CR 26, 873 P.2d 1049, 1052. In this case, Prater did not violate any of Plaintiffs' constitutional rights in relying on the probable cause affidavits, bringing the charges, and requesting bail.

i.    **Prater reasonably and justifiably relied in good faith on the probable cause affidavits.**

Plaintiffs have not plausibly pled that Prater violated their Constitutional rights by relying on the charges set out in the probable cause affidavit. The probable cause affidavits contained sufficient information for their arrests. [Doc. 32-5] (attesting to a growing congregation of people, some of whom were inviting others to join the group, acting in concert, and making numerous vulgar and threatening statements to excite the crowd). The neutral and detached magistrate who issued the arrest warrants already affirmed that probable cause did exist. Hence, Prater's reliance on other's testimony as to the June 23, 2020 occurrence was reasonable.

As set out in proposition III *supra*, Plaintiffs have not shown that Prater personally engaged in the issuance of the probable cause affidavits, aside from accepting the charges. *Twombly*, 550 U.S. 544, 557 (2007) ("A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a [conspiracy] claim; without that further circumstance pointing towards a meeting of minds, an account of a defendant's [sic] efforts stays in neutral territory."). Plaintiffs' conclusory allegations and assumptions that Prater aided VanNort are not sufficient. *Id.* Defendant Prater may only be held liable for his own alleged conduct, not the conduct of others. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006).

> ii.    **Prater reasonably and in good faith when bringing the charges against Plaintiffs.**

District attorneys have the authority, and a duty, to prosecute those who violate the law. Based upon the probable cause affidavits and supporting documents, Prater was within the law and his duties to bring charges against the Plaintiffs. [Doc. 32-5] *Price*, 873 P.2d, at 1052 (To establish incitement of a riot, the prosecution must show: "(1) the defendant intended to cause, aid or abet a riot by coming an act or engaging in conduct that urged other persons to commit acts of unlawful force or violence or other enumerated unlawful acts and (2)such act or conduct created a clear and present danger of imminent unlawful action."); *see also* [Doc. 34] (filed conventionally); [Doc. 32-5] (attesting to a growing congregation of people, some of whom were inviting others to join the group, acting in concert, and making numerous vulgar and threatening statements to incite the crowd). Based on the evidence that Prater had at the time, it is clear that Plaintiffs attempted to provoke Sgt. Wald and excite those around them to escalate the situation into a riot, similar to so many protests before. Plaintiff Mack's claims must

likewise be dismissed based on Prater's qualified immunity as the charges were based on mere mistake of identity [Doc. 39, ¶298] and were subsequently dropped once the issue was resolved [Doc. 39, ¶¶298, 304]. *Pearson*, 555 U.S., at 232.

### iii.     Prater acted reasonably and justifiably when requesting bail.

Plaintiffs have not established that Prater clearly violated the Plaintiffs rights in requesting the bail bonds. When setting bail, courts consider the seriousness of the charge and the "flight-risk" of the named defendant. *Brill v. Gurich*, 1998 OK CR 49, ¶ 5, 965 P.2d 404 (citing *Petition of Humphrey*, 1979 OK CR 97, 601 P.2d 103). Here, all Plaintiffs were charged with a felony, and Plaintiffs Terry, Hogsett, Baker, Nabors, and Mack admits to attempting to evade arrest. [Doc. 39, ¶226 (felony charges as to all Plaintiffs), ¶247 (Terry fled to Texas); ¶254 (Hogsett fled to Kansas); ¶263 (Baker staying with friends and moving around a lot); ¶270 (Nabors staying at a friend's house); ¶247 (Mack fled to Texas)]. While it is the district attorney's duty to advocate for a bail amount, it is ultimately the judge or magistrate's job to determine the proper amount of bail. In this case, the magistrate found Prater's requested amounts to be proper.

### b.     Conclusion

Overall, Plaintiffs have failed to plausibly show that Defendant Prater violated any clearly established right. Prater acted justifiably and in good faith in carrying out his duties as Oklahoma County's District Attorney. As such, Plaintiffs' claims must be dismissed.

## PROPOSITION V:   PLAINTIFF'S CLAIMS ARE PRECLUDED UNDER *HECK v. HUMPHRY*.

Issue preclusion pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994) requires this Court to Dismiss Prater from this lawsuit. Plaintiffs Terry, Hogsett, Baker, Nabors, and Webb have all pled guilty to charges of "obstruction of an officer." [Doc. 39, ¶253 (Terry pled guilty); ¶262

(Hogsett pled guilty); ¶268 (Baker pled guilty); ¶281 (Nabors pled guilty); ¶290 (Webb pled guilty)]; [Doc. 32-6]. As such, pursuant to *Heck v. Humphrey*, Plaintiffs are estopped from suing Prater under §1983.

In *Heck*, the plaintiff (Roy Heck) had been convicted of voluntary manslaughter and was serving a 15-year sentence. While his post-conviction case was on appeal, he filed a §1983 case against the prosecutors and an investigator claiming that they "engaged in an 'unlawful, unreasonable, and arbitrary investigation' leading to [his] arrest; 'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [his] innocence' and caused 'an illegal and unlawful voice identification procedure' to be used at [his] trial." *Heck*, 512 U.S., at 479 (internal quotations omitted).  He did not seek injunctive relief nor release from custody; he only sought "compensatory and punitive monetary damages" pursuant to § 1983. *Id.*

In concluding that the plaintiff did not have any §1983 claims, the Court held that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* at 486. Common law has long followed that principle in "malicious prosecution" cases where, in order to avoid dismissal of the claim, a plaintiff had to allege and prove that the prior criminal proceeding was terminated in favor of the accused. *Id.* at 484 (citing *Carpenter v. Nutter*, 127 Cal. 61, 59 P. 301 (1899)). That requirement:

> [a]voids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transactions.

*Id.* The Court held that:

> [I]n order to recover damages for alleged unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by

23

> executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983. Thus, when a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 487 (emphasis added).

Plaintiffs First Amendment claim and Conspiracy claim (to violate of Plaintiffs' first and Fourth Amendment rights) against Prater are impermissible collateral attacks on their convictions. The crux of the two claims is that Prater retaliated against Plaintiffs for exercising their First Amendment rights, engaged in malicious prosecution against the Plaintiffs, and conspired with others to do so by securing arrest warrants for the individuals, prosecuting them for incitement of a riot, and requesting a high bond. Yet, this alleged conduct arose out of the same operable facts to which Plaintiffs pled guilty. [Doc. 32-6]. As pled, both causes require Plaintiffs to establish either a violation of the First Amendment or the Fourth Amendment.

As set out in *Heck*, Plaintiffs cannot bring a §1983 claim for alleged violations of their Fourth Amendment rights without showing that their convictions have already been invalidated. *Id.* Plaintiffs' assertions that Prater conspired to issue warrants for a felony charge, justify probable cause affidavits, and secure unreasonably high bail are impermissible collateral attacks on the Plaintiffs' convictions. *See Kirby v. Dallas County Adult Probation Dep't*, 359 F.App'x 27, 33 (10th Cir. 2009) (Under *Heck*, a person cannot recover damages for harm caused by an alleged conspiracy to file charges against him absent proof that his conviction had been overturned).

While the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech, a person is not immune from otherwise permissible government action simply because he or she engaged in protected conduct. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). To prevail on a First Amendment retaliation claim, the Plaintiffs must show that Prater acted with a "forbidden motive" and the "non-retaliatory grounds are in fact insufficient to provoke the adverse consequence." *Id.* (quotation marks omitted). It is not enough to show that Prater acted with a retaliatory motive; Plaintiffs must show that *but-for* the retaliatory motive, the adverse action would not have taken place. *Id.*

Such assertions are certainly a collateral attack on Plaintiffs' convictions and the cash bond that they already paid. Yet, Plaintiffs cannot show that their convictions have already been invalidated or that they challenged the cash bond. Hence, under *Heck*, Plaintiffs are estopped from bringing these §1983 claims.

## **CONCLUSION**

For the reasons set forth herein, Defendant David Prater respectfully requests this Court dismiss with prejudice Plaintiff's claims against him.

Respectfully submitted,

/s/ Jessica A. Wilkes
**JESSICA A. WILKES, OBA #34823**
**KEVIN L. MCCLURE, OBA #12767**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division -313 NE 21st Street
Oklahoma City, OK 73105
T: (405) 521-3921 F: (405) 521-4518
Email: jessica.wilkes@oag.ok.gov
Email: kevin.mcclure@oag.ok.gov
*Attorneys for Defendant David Prater*

25

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered user of record.

Dated: September 28, 2022

/s/ Jessica A. Wilkes
Jessica A. Wilkes