# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) SINCERE TERRY, (2) MIA HOGSETT, (3) TYREKE BAKER, (4) PRESTON NABORS, (5) TREVOUR WEBB, and (6) AUSTIN MACK,<br><br>        Plaintiffs,<br><br>v.<br><br>(1) CITY OF OKLAHOMA CITY, OKLAHOMA, a municipality, (2) THOMAS VANNORT, in his individual capacity, and (3) DAVID PRATER, in his individual and official capacities,<br><br>        Defendants. | No. 5:22-cv-522-C |

## PLAINTIFFS' CONSOLIDATED MEMORANDUM
## OF LAW IN OPPOSITION TO ALL DEFENDANTS' MOTIONS
## TO DISMISS THE AMENDED COMPLAINT

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES...........................................................................iii

PRELIMINARY STATEMENT ...................................................................... 1

LEGAL STANDARD ..................................................................................... 4

ARGUMENT.................................................................................................. 5

I.   Plaintiffs Have Sufficiently Pled First
     Amendment Violations by All Defendants. ........................................... 5

    A.   Plaintiffs plausibly alleged that they engaged in protected activity............. 6

    B.   Plaintiffs plausibly alleged that Defendants' actions chilled their speech.. 10

    C.   Plaintiffs plausibly alleged that Defendants'
          actions were motivated by their speech...................................................... 10

    D.   Plaintiffs plausibly alleged a violation of the right to petition................... 13

    E.   Plaintiffs plausibly alleged that Defendants retaliated against them
          because of Plaintiffs' viewpoint and the content of their speech............... 13

II.  Plaintiffs Have Stated a Claim for Fourth Amendment
     Violations Against the City and VanNort. ........................................... 17

    A.   Plaintiffs have stated a claim for false arrest............................................. 17

    B.   Plaintiffs have stated a claim for malicious prosecution............................ 20

III. The City's Argument That the Amended Complaint Does Not
     Comply With Rule 8 Ignores the Nature of Plaintiffs' Claims. ............ 26

    A.   The City's argument that the Amended Complaint
          is "overly long" and "conclusory" is meritless. ......................................... 27

    B.   The Amended Complaint complies with Rule 8
          because it provides ample notice of the nature and
          bases for Plaintiffs' claims against the City............................................... 30

    C.   The cases cited by the City are entirely distinguishable. ............................ 41

IV.  Plaintiffs Plausibly Alleged a Conspiracy Claim Against Prater and VanNort. .... 43

V.     Prater Is Not Entitled to Absolute Immunity for his
       Conduct During the OCPD's Investigation Into Plaintiffs................................48

       A.     The Amended Complaint plausibly alleges Prater's involvement
              in the preliminary criminal investigation against the Plaintiffs. ................49

       B.     Prater is not entitled to absolute immunity because he
              acted as an investigator, not an advocate, during the
              preliminary criminal investigation. ................................................49

VI.    Neither Prater Nor VanNort Is Entitled to Qualified Immunity.............................53

       A.     Neither Prater nor VanNort is entitled to qualified
              immunity on Plaintiffs' First Amendment claims.......................................54

       B.     VanNort is not entitled to qualified immunity
              on Plaintiffs' Fourth Amendment claims. ....................................................58

VII.   Plaintiff Mack Has Plausibly Alleged an
       Equal Protection Claim Against VanNort ..............................................................63

VIII.  *Heck v. Humphrey* Does Not Bar Plaintiffs' Claims.............................................67

IX.    Prater's Extra-Record Submissions Are Improper on a Motion to Dismiss. .........70

X.     Prater Is Not Entitled to Eleventh Amendment Immunity. ....................................73

       CONCLUSION ........................................................................................................75

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

**Cases**

*A.M. v. Holmes,*
  830 F.3d (10th Cir. 2016) ............................................................................. 58

*Abay v. City of Denver,*
  445 F. Supp. 3d 1286 (D. Colo. 2020) ................................................. 5, 6, 16

*Abdelsamed v. United States,*
  13 F. App'x 883 (10th Cir. 2001) ................................................................. 42

*Andersen v. City of Colo. Springs,*
  2021 WL 8444657 (D. Colo. Aug. 12, 2021) ............................................... 35

*Anti Police-Terror Project v. City of Oakland,*
  477 F. Supp. 3d 1066 (N.D. Cal. 2020) ........................................... 15, 33, 35

*Ashaheed v. Currington,*
  7 F.4th 1236 (10th Cir. 2021) ...................................................................... 54

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................... 27, 28

*Baptiste v. J.C. Penny Co.,*
  147 F.3d 1252 (10th Cir. 1998) ............................................................. 20, 61

*Barboza v. D'Agata,*
  676 F. App'x 9 (2d Cir. 2017) ...................................................................... 58

*Beattie v. United States,*
  949 F.2d 1092 (10th Cir. 1991) ................................................................... 74

*Beck v. City of Muskogee Police Dep't,*
  195 F.3d 553 (10th Cir. 1999) ..................................................................... 69

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................... 4, 27, 28

*Black Lives Matter Seattle-King Cnty.,*
  466 F. Supp. 3d 1206 (W.D. Wash. 2020) ............................................. 33, 35

*Blackmore v. Carlson,*
    574 F. Supp. 1012 (D. Utah. 2021) ............................................................71

*Bledsoe v. Jefferson Cnty., Kan.,*
    275 F. Supp. 3d 1240 (D. Kan. 2017) ...............................................44, 45, 46

*Bledsoe v. Vanderbilt,*
    934 F.3d 1112 (10th Cir. 2019) ..................................................................52

*Boos v. Barry,*
    485 U.S. 312 (1988) ......................................................................................6

*Brandenburg v. Ohio,*
    395 U.S. 444 (1969) .................................................................................8, 57

*Brandt v. City of Westminster,*
    300 F. Supp. 3d 1259 (D. Colo. 2018) ..................................................Passim

*Brooks v. Gaenzle,*
    614 F.3d 1213 (10th Cir. 2010) ..................................................................46

*Brown v. Montoya,*
    662 F.3d 1152 (10th Cir. 2011) ..................................................................73

*Bryson v. City of Okla. City,*
    627 F.3d 784 (10th Cir. 2010) ....................................................................30

*Buck v. City of Albuquerque,*
    549 F.3d 1269 (10th Cir. 2008) ..................................................................55

*Buck v. Rhoades,*
    2022 WL 1032785 (N.D. Okla. Apr. 6, 2022) ..................................6, 53, 55

*Buckley v. Fitzimmons,*
    509 U.S. 259 (1993) ...............................................................................50, 52

*Burns v. Reed,*
    500 U.S. 478 (1991) ....................................................................................51

*Butler v. Compton,*
    482 F.3d 1277 (10th Cir. 2007) ..............................................................68, 69

*Cannon v. City & Cnty. of Denver,*
    998 F.2d 867 (10th Cir. 1993) ............................................................Passim

*Carter v. Daniels*,
  81 F. App'x 83 (10th Cir. 2004) ................................................................. 70

*Church on the Rock v. City of Albuquerque*,
  84 F.3d 1273 (10th Cir. 1996) ................................................................. 55

*City of Canton, Ohio v. Harris*,
  489 U.S. 378 (1989) ................................................................................ 40

*City of Escondido, Cal. v. Emmons*,
  139 S. Ct. 500 (2019) .............................................................................. 53

*City of Houston v. Hill*,
  482 U.S. 451 (1987) ............................................................................. 6, 60

*Clema v. Colombe*,
  676 F. App'x 801 (10th Cir. 2017) ........................................................... 25

*Cohen v. Longshore*,
  621 F.3d 1311 (10th Cir. 2010) ............................................................... 67

*Conley v. Gibson*,
  355 U.S. 41 (1957) .................................................................................. 67

*Coosewoon v. United States*,
  2018 WL 1221396 (W.D. Okla. 2018) ...................................................... 42

*Cornelius v. N.A.A.C.P. Legal Defense and Educ. Fund.*,
  473 U.S. 788 (1985) ................................................................................ 55

*Craft v. White*,
  840 F. App'x 372 (10th Cir. 2021) ........................................................... 56

*D.L.S. v. Utah*,
  374 F.3d 971 (10th Cir. 2004) ................................................................. 75

*Daniels v. Williams*,
  474 U.S. 327 (1986) ................................................................................ 66

*DeLoach v. Bevers*,
  922 F.2d 618 (10th Cir. 1990) ....................................................... 19, 55, 59

*Demster v. City of Lenexa, Kan.*,
  352 F. Supp. 2d 1165 (D. Kan. 2005) ...................................................... 17

*Diallo v. Milligan*,
　2019 WL 3302166 (D. Colo. July 23, 2019) ................................................. 66

*Dixon v. Lawton*,
　898 F.2d 1443 (10th Cir. 1990) ................................................................... 47

*Dodds v. Richardson*,
　614 F.3d 1185 (10th Cir. 2010) ................................................................... 57

*Don't Shoot Portland v. City of Portland*,
　465 F. Supp. 3d 1150 (D. Or. 2020) ....................................................... 33, 35

*Dopp v. Jones*,
　2013 WL 1181482 (W.D. Okla. Mar. 20, 2013) ........................................... 42

*Douglass v. Garden City Cmty. Coll.*,
　2021 WL 1978677 (D. Kan. May 18, 2021) .......................................... Passim

*Elbrader v. Blevins*,
　757 F. Supp. 1174 (D. Kan. 1991) ............................................................... 25

*Esparza v. Bowman*,
　523 F. App'x 530 (10th Cir. 2013) ..................................................... 7, 10, 12

*Est. of Burnett v. City of Colo. Springs*,
　2022 WL 2904705 (D. Colo. July 22, 2022) ................................................ 41

*Ex parte Young*,
　209 U.S. 123 (1908) ............................................................................... 73, 74

*Fisher v. Shamburg*,
　624 F.2d 156 (10th Cir. 1980) ..................................................................... 43

*Fogarty v. Gallegos*,
　523 F.3d 1147 (10th Cir. 2008) ................................................................... 20

*Franco v. City of Boulder, Colo.*,
　2022 WL 474699 (D. Colo. Feb. 16, 2022) ................................................. 40

*Franks v. Delaware*,
　438 U.S. 154 (1978) .................................................................................... 17

*Frasier v. Evans*,
　992 F.3d 1003 (10th Cir. 2021) ................................................................... 47

*Freeman v. Glanz*,
  2017 WL 2569602 ...................................................................................... 39

*Frey v. Town of Jackson*,
  41 F.4th 1223 (10th Cir. 2022) ................................................................ 56

*Gann v. Rinehart*,
  2008 WL 4646091 (W.D. Okla. Oct. 17, 2008) .......................................... 12

*Gee v. Pacheco*,
  627 F.3d 1178 (10th Cir. 2010) ................................................................ 10

*George v. Urban Settlement Services*,
  833 F.3d 1242 (10th Cir. 2016) ................................................................ 28

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
  130 F.3d 1381 (10th Cir. 1997) ................................................................ 72

*Goad v. Town of Meeker*,
  654 F. App'x 916 (10th Cir. 2016) ..................................................... 19, 31

*Gometz v. United States*,
  334 F. App'x 889 (10th Cir. 2009) ........................................................... 42

*Gonzalez v. Trevino*,
  42 F.4th 487, (10th Cir. 2022) ................................................................. 56

*Griego v. City of Albuquerque*,
  100 F. Supp. 3d 1192 (D.N.M. 2015) ....................................................... 32

*Guinn v. Unknown Lakewood Police Officers*,
  2010 WL 4740326 (D. Colo. Sept. 30, 2010) ............................................ 22

*Halik v Darbyshire*,
  2021 WL 4556188 (D. Colo. Aug. 23, 2021) ............................................ 22

*Halley v. Huckaby*,
  902 F.3d 1136 (10th Cir. 2018) ................................................................ 54

*Harte v. Bd. Of Comm'rs of Cnty. of Johnson, Kan.*,
  864 F.3d 1154 (10th Cir. 2017) ................................................................ 59

*Heck v. Humphrey*,
  512 U.S. 477 (1994) ....................................................................... 4, 67, 68

*Hess v. Indiana*,
  414 U.S. 105 (1973) ........................................................................................ 8

*Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*,
  962 F.3d 1204 (10th Cir. 2020) ..................................................................... 17

*Holmes v. Vill. of Hoffman Estates*,
  511 F.3d 673 (7th Cir. 2007) ......................................................................... 25

*Hunter v. Bryant*,
  502 U.S. 224 (1991) ...................................................................................... 58

*Imbler v. Patchman*,
  424 U.S. 409 (1976) ................................................................................. 49, 50

*In re Roberts*,
  2021 WL 4438744 (10th Cir. Sept. 28, 2021) .......................................... 27, 28

*Initiative & Referendum Inst. v. Walker*,
  450 F.3d 1082 (10th Cir. 2006) ..................................................................... 75

*Irizarry v. Yehia*,
  38 F.4th 1282 (10th Cir. 2022) ................................................................ 4, 5, 55

*Jacobsen v. Deseret Book Co.*,
  287 F.3d 936 (10th Cir. 2002) ................................................................... 47, 71

*Janetka v. Dabe*,
  892 F.2d 187 (2d Cir. 1989) .......................................................................... 23

*Jensen v. West Jordan City*,
  968 F.3d 1187 (10th Cir. 2020) ............................................................... Passim

*Johnson v. Knorr*,
  477 F.3d 75 (3d Cir. 2007) ............................................................................ 25

*Jordan v. Sosa*,
  654 F.3d 1012 (10th Cir. 2011) ..................................................................... 74

*Kalina v. Fletcher*,
  522 U.S. 118 (1997) ...................................................................................... 49

*Kansas Penn Gaming, LLC v. Collins*,
  656 F.3d 1210 (10th Cir. 2011) ..................................................................... 28

*Kellum v. Mares*,
   657 F. App'x 763 (10th Cir. 2016)...................................................29

*Kennedy v. Taylor*,
   2021 WL 6050279 (D. Colo. Dec. 21, 2021)..................................23

*Kentucky v. Graham*,
   473 U.S. 159 (1985).........................................................................74

*Khalik v. United Air Lines*,
   671 F.3d 1188 (10th Cir. 2012)......................................................28

*Klen v. City of Loveland*,
   661 F.3d 498 (10th Cir. 2011)........................................................67

*Koch v. City of Del City*,
   660 F.3d 1228 (10th Cir. 2011)......................................................58

*Lacey v. Maricopa Cnty.*,
   693 F.3d 896 (9th Cir. 2012)..........................................................47

*Lance v. Morris*,
   985 F.3d 787 (10th Cir. 2021)........................................................38

*Laurino v. Tate*,
   220 F.3d 1213 (10th Cir. 2000)......................................................69

*Lehmann v. Zehner*,
   2022 WL 11732949 (D. Colo. Oct. 20, 2022)...............................23

*Lewis v. City of Edmond*,
   48 F.4th 1193 (10th Cir. 2022)......................................................61

*Lingenfelter v. Bd. of Cnty. Comm'rs of Reno Cnty., Kan.*,
   359 F. Supp. 2d 1163 (D. Kan. 2005)............................................72

*Lozman v. City of Riviera Beach, Fla.*,
   138 S. Ct. 1945 (2018)...............................................................Passim

*Marshall v. Columbia Lea Reg'l Hosp.*,
   345 F.3d 1157 (10th Cir. 2003)......................................................65

*Martinez v. City of Albuquerque*,
   184 F.3d 1123 (10th Cir. 1999)................................................69, 70

*McCoy v. City of Indep.*,
2013 WL 4517535 (D. Kan. Aug. 26, 2013)................................................................66

*MCI Telecomms. Corp. v. Pub. Serv. Comm'n*,
216 F.3d 929 (10th Cir. 2000)....................................................................................73

*McNamara v. Brauchler*,
570 F. App'x 741 (10th Cir. 2014)..............................................................................41

*Medina v. Cram*,
252 F.3d 1124 (10th Cir. 2012)..................................................................................58

*Mendoza v. Bd. of County Comm'rs of Cnty. of Santa Fe*,
2003 WL 27385531 (D.N.M. Jan. 16, 2003) ........................................................16, 53

*Mesa v. White*,
197 F.3d 1041 (10th Cir. 1999)...........................................................................13, 16, 55

*Meyer v. Bd. of Cnty. Comm'rs of Harper Cnty., Okla.*,
482 F.3d 1232 (10th Cir. 2007).............................................................................13, 55

*Meyer v. Grant*,
486 U.S. 414 (1988) ......................................................................................................6

*Miller v. Spiers*,
339 F. App'x 862 (10th Cir. 2009).............................................................................22

*Mink v. Suthers*,
482 F.3d 1244 (10th Cir. 2007).......................................................................50, 51, 52

*Minter v. City of Aurora, Colorado*,
2022 WL 900158 (D. Colo. Mar. 28, 2022)..........................................................Passim

*Moeck v. City of Albuquerque*,
813 F.3d 912 (10th Cir. 2015)....................................................................................58

*Monell v. N.Y.C. Dept. of Social Servs.*,
436 U. S. 658 (1978) .............................................................................................28, 30

*Montoya v. City & Cnty. of Denver*,
2021 WL 1244264 (D. Colo. Mar. 4, 2021)...........................................22, 24, 25, 69

*Montoya v. City and Cnty. of Denver*,
2022 WL 1837828 (10th Cir. June 3, 2022)...............................................................46

*Montoya v. Vigil,*
   898 F.3d 1056 (10th Cir. 2018) ............................................................................. 21

*Morris v. Noe,*
   672 F.3d 1185 (10th Cir. 2012) ........................................................................ 57, 67

*Moser v. Oklahoma,*
   118 F. App'x 378 (10th Cir. 2004) ......................................................................... 42

*Muscogee (Creek) Nation v. Pruitt,*
   669 F.3d 1159 (10th Cir. 2012) .............................................................................. 73

*Myers v. Brewer,*
   773 F. App'x 1032 (10th Cir. 2019) ....................................................................... 71

*N.A.A.C.P. of San Jose/Silicon Valley v. City of San Jose,*
   562 F. Supp. 3d 382 (N.D. Cal. 2021) .................................................................... 15

*N.A.A.C.P. v. Claiborne Hardware Co.,*
   458 U.S. 886 (1982) ..................................................................................... Passim

*Najera v. Brookhouser,*
   2020 WL 4050383 (D.N.M. July 20, 2020) ............................................................ 62

*Naranjo v. Victor,*
   2022 WL 4008046 (D. Colo. Sept. 2, 2022) .......................................................... 40

*Newton v. City of Muskogee,*
   2007 WL 4150946 (E.D. Okla. Nov. 19, 2007) ...................................................... 12

*Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic, Kan.,*
   582 F.3d 1155 (10th Cir. 2009) ................................................................................ 9

*Nieves v. Bartlett,*
   139 S. Ct. 1715 (2019) .................................................................................... 23, 56

*Norton v. Liddel,*
   620 F.2d 1375 (1980) ............................................................................................. 48

*Olachea v. City of Farmington,*
   2015 WL 13662868 (D.N.M. June 29, 2015) .......................................................... 25

*O'Shea v. Littleton,*
   414 U.S. 488 (1974) ............................................................................................... 74

*Osterhout v. Timms*,
   2021 WL 640902 (E.D. Okla. Feb. 18, 2021) ............................................. 24

*Pace v. Swerdlow*,
   519 F.3d 1067 (10th Cir. 2008) ..................................................................... 47

*Pastore v. Bd. of Comm'rs for Cnty. of Catron*,
   572 F. Supp. 3d 1100 (D.N.M. 2021).................................................... 46, 47

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*,
   460 U.S. 37 (1983) ......................................................................................... 55

*Pierce v. Gilchrist*,
   359 F.3d 1279 (2004) ..................................................................................... 60

*Porter v. Dagget Cnty., Utah*,
   587 F. Supp. 3d 1105 (D. Utah 2022) ......................................................... 38

*Posr v. Doherty*,
   944 F.2d 91 (2d Cir. 1991) ............................................................................ 25

*Powell v. City & Cnty. of Denver, Colo.*,
   973 F. Supp. 1198 (D. Colo. 1997) ......................................................... 32, 35

*Prager v. LaFaver*,
   180 F.3d 1185 (10th Cir. 1999) ..................................................................... 72

*Price v. State*,
   1994 OK CR 26, 873 P.2d (Okla. Crim. App. 1994) ............................ Passim

*Puller v Baca*,
   781 F.3d 1190 (10th Cir. 2015) ..................................................................... 25

*Rios v. Dona Ana Cnty.*,
   2010 WL 11590924 (D.N.M. Sept. 8, 2010)................................................ 51

*Rosenberger v. Rector and Visitors of Univ. of Va.*,
   515 U.S. 819 (1995) ....................................................................................... 13

*Sanchez v. Hartley*,
   810 F.3d 750 (10th Cir. 2016) ....................................................................... 60

*Schupper v. Edie*,
   193 F. App'x 744 (10th Cir. 2006).............................................................. 42

*SCO Grp., Inc. v. Novell, Inc.*,
  578 F.3d 1201 (10th Cir. 2009) ...................................................31

*Sekerak v. City & Cnty. of Denver*,
  1 F. Supp. 2d 1191 (D. Colo. 1998) ............................................35

*Sexton v. City of Colo. Springs*,
  530 F. Supp. 3d 1044 (D. Colo. 2021) ....................................7, 10, 12, 14

*Sexton v. City of Colo. Springs*,
  2021 WL 2823244 (D. Colo. July 7, 2021) ..................................35

*Shimomura v. Carlson*,
  811 F.3d 349 (10th Cir. 2015) ...................................................58

*Shirazi v. Oweis*,
  2022 WL 445763 (N.D. Cal. Feb. 14, 2022) ................................35

*Silverman v. Prisoner Transp. Servs. of Am.*,
  2016 WL 3355334 (W.D. Okla. Apr. 26, 2016) ...........................31

*Snell v. Tunnell*,
  920 F.2d 673 (10th Cir. 1990) ...............................................43, 59

*Sodaro v. City & Cnty. of Denver*,
  2022 WL 4365983 (D. Colo. Sept. 21, 2022) ...........................12, 23

*Spencer v. Kemna*,
  523 U.S. 1 (1998) .......................................................................67

*Stewart v. Donges*,
  915 F.2d 572 (10th Cir. 1990) ...............................................17, 59

*Stonecipher v. Valles*,
  759 F.3d 1134 (10th Cir. 2014) .........................................17, 58, 59

*Swepi, LP v. Mora Cnty., N.M.*,
  81 F. Supp. 3d 1075 (D.N.M. 2015) ...........................................75

*Sylvia v. Wisler*,
  875 F.3d 1307 (10th Cir. 2017) .................................................28

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ..............................................................70, 71

*Texas v. Johnson*,
   491 U.S. 397 (1989) ........................................................................ 14, 55

*Thomas v. Kaven*,
   765 F.3d 1183 (10th Cir. 2014) .......................................................... 53

*Thompson v. Clark*,
   142 S. Ct. 1332 (2022) .................................................................... 20, 21

*Thompson v. Ragland*,
   23 F.4th 1252 (10th Cir. 2022) ........................................................ 54, 56

*Tillmon v. Douglas Cnty.*,
   817 F. App'x 586 (10th Cir. 2020) .................................................... 54

*Uboh v. Reno*,
   141 F.3d 1000 (11th Cir. 1998) ........................................................ 23

*United States v. Armstrong*,
   517 U.S. 456 (1996) ........................................................................ 65

*United States v. Bernard*,
   2010 WL 11619295 (D.N.M. July 19, 2010) .................................... 66

*United States v. Brignoni-Ponce*,
   422 U.S. 873 (1975) .................................................................... 63, 64

*United States v. Edmonson*,
   962 F.2d 1535 (10th Cir. 1992) ........................................................ 44

*United States v. Heineman*,
   767 F.3d 970 (10th Cir. 2014) ............................................................ 9

*United States v. McKinney*,
   9 F. App'x 887 (10th Cir. 2001) ........................................................ 7

*United States v. Mesa-Roche*,
   288 F. Supp. 2d 1172 (D. Kan. 2003) .............................................. 66

*Van de Weghe v. Chambers*,
   569 F. App'x 617 (10th Cir. 2014) .................................................... 62

*Van Deelen v. Johnson*,
   497 F.3d 1151 (10th Cir. 2007) ........................................................ 13

*VanDeelen v. City of Eudora*,
    53 F. Supp. 2d 1223 (D. Kan. 1999) ............................................................... 51

*Vill. of Arlington Heights v. Metropolitan Hous. Dev. Corp.*,
    429 U.S. 252 (1977) ....................................................................................... 65

*Villa v. Dona Ana Cnty.*,
    2010 WL 11619163 (D.N.M. Sept. 14, 2010) ................................................... 70

*Virginia v. Black*,
    538 U.S. 343 (2003) ......................................................................................... 9

*Waller v. City of Denver*,
    932 F.3d 1277 (10th Cir. 2019) ...................................................................... 30

*Ward v. Utah*,
    321 F.3d 1263 (10th Cir. 2003) ...................................................................... 74

*Watson v. Witmer*,
    183 F. Supp. 3d 607 (M.D. Pa. 2016) ............................................................ 64

*Watts v. United States*,
    394 U.S. 705 (1969) ....................................................................................... 10

*White v. Pauly*,
    580 U.S. 73 (2017) ......................................................................................... 61

*White v. Sacramento Police Dep't*,
    2022 WL 2052596 (E.D. Cal. June 7, 2022) .................................................. 16

*Whitehead v. Shafer*,
    295 F. App'x 906 (10th Cir. 2008) ................................................................ 42

*Whren v. United States*,
    517 U.S. 806 (1996) ....................................................................................... 63

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989) ......................................................................................... 74

*Williams v. Aguirre*,
    965 F.3d 1147 (11th Cir. 2020) ...................................................................... 24

*Wilson v. Dep't of Pub. Safety*,
    66 F. App'x 791 (10th Cir. 2003) .................................................................. 64

*Wolford v. Lasater,*
    78 F.3d 484 (10th Cir. 1996) ..........................................................................17

*Wynder v. McMahon,*
    360 F.3d 73 (2d Cir. 2004) ..............................................................................28

**Statutes**

21 Okl. St. Ann. § 540 .........................................................................................21

21 Okl. St. Ann. § 1320.2 .........................................................................17, 21, 23

Oklahoma City Municipal Code § 43-4(a)........................................................26, 36

**Rules**

Fed. R. Civ. P. 8................................................................................................Passim

Plaintiffs Sincere Terry, Mia Hogsett, Tyreke Baker, Preston Nabors, Trevour Webb, and Austin Mack ("Plaintiffs") submit this consolidated memorandum of law in opposition to Motions to Dismiss filed by defendants City of Oklahoma City, Oklahoma (ECF No. 41, the "City MTD"), David Prater (ECF No. 40, the "Prater MTD"), and Thomas VanNort (ECF No. 42, the "VanNort MTD").[1] For the reasons stated below, the Amended Complaint ("AC") should be sustained and Defendants' Motions denied.

## PRELIMINARY STATEMENT

In the wake of George Floyd's murder, Plaintiffs—six young activists—took to the Oklahoma City streets to protest racial injustice and police brutality, both locally and nationally. Plaintiffs participated in three days of mass protests from May 31–June 2, 2020, followed by nightly protests in front of police headquarters during which they specifically criticized the Oklahoma City Police Department ("OCPD"). Defendants met protestors, and particularly Plaintiffs, with unjustified tear gas, bean bag rounds, surveillance, harassment, and felony criminal charges based on false allegations.

On June 23, 2020, Plaintiffs (except for Austin Mack, who was not present) were part of a group painting a permitted mural in support of Black lives on the street in front of OCPD headquarters, when they encountered an OCPD officer, Master Sergeant Nicholas Wald ("Wald"). Wald, driving his police cruiser, attempted to move a barricade so that he could transport a witness to the station. Plaintiffs Terry, Hogsett, Nabors and Webb, believing themselves to be within the permitted area, blocked Wald's passage and

---

[1]     The City, VanNort, and Prater are referred to collectively as "Defendants."

insisted that he drive around the block instead of through the barricades. Plaintiff Baker filmed the encounter for his publication, *The Black Times*. During the encounter, Plaintiffs expressed criticism of the police, such as "a perfect example of a cop abusing his fucking power," "We have a permit!" and "Fuck the police!" Wald was initially aggressive, but after a few minutes, he backed up his cruiser and drove around the block to police headquarters.

The next day, June 24, Plaintiffs Terry, Hogsett, Baker, and another protestor visited police headquarters to file a complaint against Wald. OCPD officers refused to allow Plaintiffs inside the building or to take their complaint, in violation of their own rules. After about 30 minutes of waiting in the vestibule and urging their right to file a complaint while others were allowed into the station, the protestors and OCPD officers became agitated. OCPD officers arrested one of the protestors, and Plaintiff Hogsett muttered in frustration, "I'm going to burn this whole bitch to the fucking ground," though she lacked the means or intent to do so. Approximately 15 minutes later, OCPD officers arrested Terry and invited Hogsett and Baker to enter police headquarters, whereupon OCPD officers arrested them for disorderly conduct while other officers looked on and applauded.

Out of anger at Plaintiffs' protest messages and demands for reform, Defendants worked together to investigate, arrest, and prosecute Plaintiffs and other racial justice activists for crimes they did not commit as punishment for engaging in expressive activity and to silence their speech. Prater and VanNort developed and relied on false allegations to charge Plaintiffs with felony incitement to riot for their conduct during the

mural incident and sent the U.S. Marshal Service to effectuate the arrests. Prater branded Plaintiffs in the media as "terrorists" and sought bonds thirteen times higher than the Bail Schedule. Plaintiffs lost their jobs and their livelihoods. Defendants wanted to chill Plaintiffs' speech, and they succeeded. Plaintiffs largely stopped attending protests, and when they did, they did so quietly, hanging back or to the side instead of coming forward as leaders. Plaintiffs want to engage in more vocal protest activity, but they fear once again becoming targets of Prater and the OCPD.

To this day, OCPD officers continue to treat racial justice protestors in aggressive and threatening ways. Meanwhile, groups espousing different messages such as gun rights, abortion rights, or opposing vaccine mandates, engage in mass protest with no hindrance from the OCPD. No officer has ever been disciplined for violating the First and Fourth Amendment rights of racial justice protestors. To the contrary, Chief Gourley has defended and endorsed his officers' actions.

Plaintiffs filed this action to vindicate their First, Fourth, and Fourteenth Amendment rights. They allege that VanNort and Prater, individually and as part of a conspiracy, worked together to investigate, arrest, and prosecute them for unjustified felony charges as punishment for their viewpoints and their First Amendment-protected activity; that VanNort engaged in false arrest and malicious prosecution in doing so; that VanNort violated Plaintiff Mack's rights under the Equal Protection Clause by confusing him for Plaintiff Webb based on nothing more than his race; and that the City is liable because these and other actions took place pursuant to municipal policy, custom, or practice. They seek damages for their injuries and an injunction that will allow them to

protest without fear of retaliation. Plaintiffs have detailed specific facts in support of each of their claims.

Defendants' motions to dismiss mischaracterize Plaintiffs' claims in an attempt to assert defenses inapplicable to the relief requested. Plaintiffs have stated claims against each Defendant for the violations described above and in compliance with Rule 8 of the Federal Rules of Civil Procedure. Prater is not entitled to absolute immunity for his acts in support of VanNort's initial police investigation. Neither Prater nor VanNort is entitled to qualified immunity for intentionally or recklessly making false statements and material omissions to secure arrest warrants on felony offenses for which they lacked probable cause. *Heck v. Humphrey*, 512 U.S. 477 (1994), does not apply because the incitement charges were dismissed, and Plaintiffs do not contest their obstruction convictions. And the Eleventh Amendment does not prevent this Court from issuing an injunction against Prater in his official capacity. Finally, the City and VanNort failed to raise any arguments to counter several claims against them, thereby waiving defenses to those claims. This Court should deny Defendants' motions to dismiss.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint need only include a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing a motion to dismiss, the court must "accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff." *Irizarry v. Yehia*, 38 F.4th 1282,

1286 (10th Cir. 2022). There is no basis to grant Defendants' motions under the governing standard.

## **ARGUMENT**

### I. **Plaintiffs Have Sufficiently Pled First Amendment Violations by All Defendants.**

Plaintiffs have pled three separate First Amendment claims: retaliation for engaging in protected speech (Count I), violation of the right to petition (Count II), and viewpoint discrimination (Count III). Defendants' briefs fail to meaningfully oppose Plaintiffs' claims and simply misconstrue facts and the applicable legal standards.

The First Amendment "prohibits government officials from retaliating against individuals for engaging in protected speech." *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1949 (2018). "Citizens should never have to fear peaceful protest on the basis of police retaliation, especially not when protesting that very same police violence." *Abay v. City of Denver*, 445 F. Supp. 3d 1286, 1292 (D. Colo. 2020).

To state a First Amendment retaliation claim, a plaintiff must allege facts showing that: (1) the plaintiff engaged in constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially motivated as a response to the plaintiff's speech. *Irizarry*, 38 F.4th at 1288.

A.   <u>Plaintiffs plausibly alleged that they engaged in protected activity.</u>

Plaintiffs' marches, demonstrations, chants, signs, and statements criticizing the police all took place in streets, which are considered a "traditional public forum," and occupy a "special position in terms of the First Amendment," where the "government's ability to restrict expressive activity is very limited." *Boos v. Barry*, 485 U.S. 312, 318 (1988).[2] Under the First Amendment, "protected expression includes written and spoken words, as well as symbolism," *Buck v. Rhoades*, -- F.3d --, 2022 WL 1032785, at *3 (N.D. Okla. Apr. 6, 2022), including "verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). "Organized political protest is a form of 'classically political speech,'" *Abay*, 445 F. Supp. 3d at 1292, and thus "trenches upon an area in which the importance of First Amendment protections is at its zenith." *Meyer v. Grant*, 486 U.S. 414, 421–22, 425 (1988).

Plaintiffs led and engaged in peaceful protest, assembly, and speech highly critical of the police for 24 consecutive days from May 30–June 23, 2020. (AC § II.) Plaintiffs chanted "Racist cops have got to go," "defund the police," and "fuck the police." (AC ¶ 54.) They held signs with "Stop Killing Black People," and "Say Their Names." (AC ¶ 54.) They organized candlelight vigils and marches to oppose police violence. (AC ¶¶ 48, 53.) And as Defendants highlighted in their police reports, Plaintiffs frequently criticized OCPD and police on social media. (AC ¶¶ 59, 145, 170, 208.)

---

[2]    Unless otherwise indicated, citations, internal quotations, and alterations are omitted throughout.

On June 23, 2020, Plaintiffs attended a permitted mural painting event in front of police headquarters, where their activities similarly constituted protected First Amendment expression. (AC ¶ 87.) Plaintiffs worked on a mural celebrating Black lives (AC ¶¶ 73–80), engaged in expressive conduct critical of the OCPD, including raising their fists or middle finger (AC ¶¶ 83, 97, 102, 170), communicated with OCPD personnel (AC ¶ 84), and filmed police activity in public for journalistic purposes (AC ¶¶ 93, 105, 107). Plaintiffs' statements to Wald, including "a perfect example of a cop abusing his fucking power," and "Fuck the police!" are also protected. (AC ¶¶ 97–98.) *See, e.g.*, *United States v. McKinney*, 9 F. App'x 887 (10th Cir. 2001) (telling officer to "go f*** himself"); *Sexton v. City of Colo. Springs*, 530 F. Supp. 3d 1044, 1066 (D. Colo. 2021) (flipping off police officer); *Brandt v. City of Westminster*, 300 F. Supp. 3d 1259, 1264 (D. Colo. 2018) (displaying Styrofoam middle finger emblazoned with 'Fuck cops').

And the First Amendment speech and petition clauses squarely applied to Plaintiffs' attempt to file a complaint with the Mayor and then the OCPD about Wald's conduct. (AC ¶¶ 115–42.) *Esparza v. Bowman*, 523 F. App'x 530, 536 (10th Cir. 2013).

Prater wrongly implies that Plaintiffs' speech was not protected because it presented a "clear and present danger" to Wald during their encounter, citing *Price v. State*, 1994 OK CR 26, 873 P.2d 1052 (Okla. Crim. App. 1994), a case in which the Oklahoma Court of Criminal Appeals sought to conform Oklahoma's incitement to riot statute to the First Amendment. (Prater MTD at 20.) Incitement constitutes a narrow category of constitutionally proscribable speech that is (1) intended and (2) likely to

incite (3) imminent lawless action. *Brandenburg v. Ohio,* 395 U.S. 444, 445–46 (1969) (Ku Klux Klan leader's speech at a Klan rally about the possible need for "revengeance" for the "suppress[ion] of the white, Caucasian race" while standing beside burning crosses and "hooded figures, some of whom carried firearms" is not incitement because it did not advocate for specific acts of violence but only violence in the abstract); *Hess v. Indiana*, 414 U.S. 105, 107 (1973) (speech at anti–war demonstration advocating that people "take to the fucking street later" was not incitement because the action was not imminent); *N.A.A.C.P. v. Claiborne Hardware Co.,* 458 U.S. 886, 928–29 (1982) (calling for boycott of White merchants, which resulted in violence and property damage to White-owned businesses, was not incitement because lawless action was not a likely result of the speech).

None of the characteristics of proscribable incitement are present here. Plaintiffs' statements during the Wald encounter (including "a perfect example of a cop abusing his fucking power," "Fuck the police!", "Hit me if you want to!," "We have a permit!," and "This is a city ordinance!") do not approach the level of speech that is both intended and likely to result in lawlessness or violence such that the government has an interest in intervening. (AC ¶¶ 97–101.) Plaintiffs did not intend to direct or incite lawless action, and no evidence exists to suggest otherwise. In fact, Plaintiffs did not direct their conversation to anybody but Wald. (AC ¶¶ 109–113.) Lawlessness and violence were not a likely result of their statements, and, indeed, none occurred. (AC ¶¶ 101–108.) *See Claiborne*, 458 U.S. at 928 (courts look to the actual result of the speech to determine the likelihood that the speech result in imminent lawless action). Imminence is similarly

absent. *Id*. Rather, a small group of racial justice protesters expressed frustration to an OCPD officer while standing in front of his cruiser.

Similarly, none of Plaintiffs' statements during the Wald encounter remotely qualify as threats. (AC ¶¶ 97–101.) Constitutionally proscribable "true threats" are "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003) (plurality opinion). A true threat "convey[s] a gravity of purpose and likelihood of execution so as to constitute speech beyond the pale of protected vehement, caustic . . . unpleasantly sharp attacks on government and public officials." *Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic, Kan*., 582 F.3d 1155, 1168 (10th Cir. 2009). Thus, for a statement to constitute a true threat, a speaker must "intend[] to make the recipient feel threatened." *United States v. Heineman*, 767 F.3d 970, 978 (10th Cir. 2014).

Plaintiffs did not intend to make Wald feel threatened, and no evidence exists to suggest otherwise. Rather, their statements like, "Fuck the police!" are constitutionally protected political hyperbole used to express mounting frustration with police brutality, misconduct, and what Plaintiffs perceived as Wald's disregard for their permitted mural embodying solidarity with the movement for racial justice.

Nor did Plaintiff Hogsett's utterance that she would "burn this whole bitch to the fucking ground" (AC ¶ 133) meet the definition of a true threat. The Amended Complaint alleges that Hogsett spoke in a low voice, out of frustration, and not only lacked intent but was obviously incapable of burning anything down. (*Id.*) Her statement was political

hyperbole protected by the First Amendment, not a true threat. *Watts v. United States*, 394 U.S. 705 (1969).

  B. <u>Plaintiffs plausibly alleged that Defendants' actions chilled their speech.</u>

  In response to Plaintiffs' exercise of protected speech, Defendants arrested them without probable cause. (AC ¶¶ 143–149; 180.) The City disingenuously attempts to dismiss the impact of the arrests as "unremarkable" and "speculative." But this is exactly the kind of injury that courts in this Circuit have found would chill future First Amendment activity by a person of ordinary firmness. *Esparza*, 523 F. App'x at 536 ("[P]ursuit of an arrest without probable cause would chill a person of ordinary firmness from continuing to engage in protected activity."); *Sexton*, 530 F. Supp. 3d at 1066; *Brandt*, 300 F. Supp. 3d at 1281–82. Moreover, contrary to the City's counterfactual assertions, each individual Plaintiff has alleged the specific ways in which their continued protest activity has been chilled. (AC ¶¶ 305–354.)

  C. Plaintiffs plausibly alleged that Defendants'
    <u>actions were motivated by their speech. </u>

  Normally, questions of motivation or intent are questions of fact for the jury. *Brandt¸* 300 F. Supp. 3d at 1281. To evaluate whether a complaint states sufficient facts from which a jury could find a retaliatory motivation, the court looks at whether the defendants were allegedly aware of the plaintiffs' actions and whether the challenged act occurred in close temporal proximity to the protected conduct. *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010). Here, the Amended Complaint alleges numerous specific

facts from which a jury could conclude that Defendants had a retaliatory motivation when arresting Plaintiffs.

For example, in *Brandt*, the court held that a jury could find a retaliatory motivation based in part on the fact that the plaintiff was well-known to officers for his First Amendment expression for some time prior to his arrest. 300 F. Supp. 3d at 1281. Similarly, here, Plaintiffs alleged that in the days leading up their arrests, OCPD officers:

- Surveilled Plaintiffs on social media and in person, including recording their protest activity and following them from protests (AC ¶¶ 57–60, 69, 72);

- Posted Plaintiffs' photos on the wall of police headquarters and the FOP website (AC ¶ 63); and

- Verbally and physically harassed Plaintiffs, telling them "We know who you are," addressing them by name, visiting Plaintiff Terry at her place of business, and calling Plaintiff Mack a "shithead" and a "fucker." (AC ¶¶ 64–67, 137.)

Also important in *Brandt* was the fact that police reports and internal communications repeatedly referenced the plaintiff's First Amendment expression. 300 F. Supp. 3d at 1276, 1281. Here, Plaintiffs alleged that the OCPD police reports and affidavits referenced Plaintiffs as members of "The Movement" and documented Plaintiffs' expressive activity, including raising their fists and middle fingers, speaking out in criticism, and filming the police. (AC ¶¶ 144–46, 153–59, 164–65.) The Amended Complaint specifically recounts how VanNort's incident report and affidavits in support of the arrest warrant focused on Plaintiffs' protected speech. (AC ¶¶ 170, 186, 194, 199.)

Other allegations also support Defendants' retaliatory motive, such as that multiple OCPD officers applauded the arrest of Plaintiff Terry (AC ¶ 135) and that OCPD officers seized Plaintiffs' phones during the vestibule arrests and apparently

11

erased all footage of the incident from the devices (AC ¶ 139). As for Prater, the

Amended Complaint alleges that he admitted charging Plaintiffs with incitement because

he was "angry" and "pissed off" over the Wald incident and because he would not "put[]

up with this lawlessness." (AC ¶¶ 210–11.) Defendants' disproportionate pursuit of

plaintiffs for unjustified felony charges and excessive bonds also supports retaliatory

motive. *Minter v. City of Aurora, Colorado*, 2022 WL 900158, at *5 (D. Colo. Mar. 28,

2022).

      The temporal proximity factor also strongly favors Plaintiffs. *See, e.g., Esparza*,

523 F. App'x at 536; *Sexton*, 530 F. Supp. 3d at 1066–67; *Sodaro v. City & Cnty. of

Denver*, 2022 WL 4365983, at *6 (D. Colo. Sept. 21, 2022); *Gann v. Rinehart*, 2008 WL

4646091, at *3 (W.D. Okla. Oct. 17, 2008) (Cauthron, J.). For example, when Plaintiffs

attempted to file a complaint against Wald, Defendants not only refused to take their

complaint, but in less than an hour arrested Plaintiffs Terry and Baker for disorderly

conduct without probable cause. (AC ¶¶ 134, 146–49.) Moreover, Defendants initiated

their investigation into the Wald encounter *immediately after* arresting Plaintiffs for

disorderly conduct, signaling that their interest in punishing Plaintiffs for the Wald

incident arose *after* Plaintiffs exercised their petition rights. (AC ¶¶ 153–54.)

      Together, these facts provide sufficient allegations of retaliatory motivation to

state a claim on Count I of the Amended Complaint. *Id.*; *Newton v. City of Muskogee*,

2007 WL 4150946, at *2 (E.D. Okla. Nov. 19, 2007) (Cauthron, J.).

D.     Plaintiffs plausibly alleged a violation of the right to petition.

The Supreme Court has "recognized the right to petition as one of the most precious of the liberties safeguarded by the Bill of Rights." *Lozman*, 138 S. Ct. at 1954–55. The right to petition encompasses the filing of complaints to the police and other forms of complaints to public officials. *Meyer v. Bd. of Cnty. Comm'rs of Harper Cnty., Okla.*, 482 F.3d 1232, 1243 (10th Cir. 2007). Denying a citizen the ability to file a complaint "is an infringement of protected speech." *Id.* A plaintiff can state a claim under the petition clause by alleging that the defendant retaliated against them for their petitioning activity. *Id.; Van Deelen v. Johnson*, 497 F.3d 1151, 1155 (10th Cir. 2007). Here, as discussed, the Amended Complaint clearly alleges that VanNort and the City retaliated against Plaintiffs for attempting to file a complaint against Wald. (AC ¶¶ 115–42, 151–208, 226–304.) The Amended Complaint also alleges that Plaintiffs attempted to complain about Wald to the Mayor, but he declined to meet with them. (AC ¶ 115.) Accordingly, Plaintiffs have stated a claim on Count II of the Amended Complaint.

E.     Plaintiffs plausibly alleged that Defendants retaliated against them because of Plaintiffs' viewpoint and the content of their speech.

Viewpoint discrimination is an "egregious form of content discrimination" that is "presumptively unconstitutional," regardless of the forum. *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829–830 (1995). For this reason, restrictions on speech based on content or the speaker's viewpoint or content are "almost universally condemned and rarely pass constitutional scrutiny." *Mesa v. White*, 197 F.3d 1041, 1047 (10th Cir. 1999). To establish viewpoint or content discrimination, Plaintiffs must allege

they engaged in protected speech and that the government's restriction was motivated by disagreement with the message it conveys or that it was content-based; the burden is on the government to show that its restriction "is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Cannon v. City & Cnty. of Denver*, 998 F.2d 867, 871 (10th Cir. 1993); *Texas v. Johnson*, 491 U.S. 397, 411 (1989) (where political expression is restricted "because of the content of the message [] conveyed" state interest is subject to "the most exacting scrutiny"). Plaintiffs may maintain content or viewpoint discrimination claims independently of their retaliation claims, even though both arise out of the same incident. *Sexton*, 530 F. Supp. 3d at 1065–66; *Brandt*, 300 F. Supp. 3d at 1282.

*First,* the Amended Complaint plausibly alleges that Defendants arrested and prosecuted Plaintiffs because of their hostility towards Plaintiffs' views on policing and the content of Plaintiffs' speech. All of the facts discussed above in connection with the retaliation claim also support Plaintiffs' content and viewpoint claims. *See supra* §§ I.A–C. The Amended Complaint also sets forth the following additional facts in support of Plaintiffs' content and viewpoint discrimination claims:

- During the George Floyd protests from May 30–June 1, the City and OCPD consistently applied unjustified and excessive force to peaceful protestors, including driving towards them at high speeds with lights flashing; using tear gas, bean bag rounds, and pepper spray against peaceful protestors; and issuing a state of emergency without adequate notice or cause. (AC ¶¶ 33–43, 355–356.) OCPD continued these tactics against racial justice protestors at subsequent protests including as recently as June 3, 2022. (AC ¶ 369–80, 386–87.) OCPD did not use similar tactics when faced with other mass protests where the protestors offered different messages. (AC ¶¶ 381–385.)

- OCPD and Prater subjected at least 16 peaceful racial justice protestors, not including Plaintiffs, to unjustified arrests and detention. (AC ¶ 369–372.)

- OCPD officers made disparaging statements about protestors online. (AC ¶ 45.)

- During the exact period of time that OCPD denied Plaintiffs' access to police headquarters to file a complaint against Wald, OCPD allowed at least eight other members of the public inside the building for other purposes. (AC ¶ 122, 132.) (This also demonstrates that Plaintiffs did not, in fact, obstruct access to the building.)

- OCPD violated its own rules and policies by refusing to allow plaintiffs to file a complaint at police headquarters. (AC ¶ 117–18, 124, 126–27.)

- VanNort's police report specifically references Plaintiff Baker's role in *The Black Times*, his presence in a video calling for defunding the police, and that Plaintiffs Terry and Mack were in a photo together holding their fists up in front of the Black Liberation Flag. (AC ¶ 170.)

- The warrant application recounts that Plaintiffs Mack and Webb had their fists raised and that various Plaintiffs stated "Fuck the Police." (AC ¶¶ 186, 194, 199.)

- Prater called racial justice protestors "terrorists" and accused them of using "propaganda to disrupt societal and communal relationships." (AC ¶ 212.)

- Prater sought and obtained $200,000 bonds against Plaintiffs—13 times the amount set forth in the bail schedule.[3] (AC ¶¶ 231, 233.)

Courts have found that similar allegations adequately state a claim for content or

viewpoint discrimination. *See, e.g.*, *Minter*, 2022 WL 900158, at *5; *N.A.A.C.P. of San

Jose/Silicon Valley v. City of San Jose*, 562 F. Supp. 3d 382, 399–400 (N.D. Cal. 2021);

*Anti Police-Terror Project v. City of Oakland,* 477 F. Supp. 3d 1066, 1088 (N.D. Cal.

2020); *Abay*, 445 F. Supp. 3d at 1292; *Mesa*, 197 F.3d at 1047–48; *White v. Sacramento*

---

[3]     While Prater has absolute immunity for seeking and obtaining excessive bonds, the fact that he did so evidences his motivation to punish Plaintiffs for their political views.

*Police Dep't,* 2022 WL 2052596, at *5 (E.D. Cal. June 7, 2022); *Mendoza v. Bd. of County Comm'rs of Cnty. of Santa Fe*, 2003 WL 27385531, at *3 (D.N.M. Jan. 16, 2003).

*Second*, the Amended Complaint sufficiently alleges that, far from "narrowly tailored," Defendants responded to Plaintiffs' lawful protests, brief encounter with Wald, and attempt to complain about Wald's conduct in a wildly disproportionate manner. For example, Defendants had no cause (let alone probable cause) to charge Plaintiffs with felonies or seek such excessive bonds for the extremely minor Wald incident. Nor did OCPD have any good reason to refuse Plaintiffs access to police headquarters for 45 minutes while allowing others entry, causing both Plaintiffs and OCPD officers to become increasingly agitated, when OCPD could have sent an officer outside to take the complaint or simply provided complaint forms.

Nor was there any justification for Defendants to call in the U.S. Marshal Service, which provides assistance in locating the "most violent fugitives," to hunt Plaintiffs down and effectuate the arrests. (AC ¶¶ 239–241.) Plaintiffs never displayed any indication that they were violent or a threat to public safety. (AC ¶¶ 36–37, 50, 148, 202, 241, 325.) The Marshals surrounded Plaintiffs' homes with guns drawn, physically assaulted and/or interrogated Plaintiffs' friends and family members at gunpoint, shot a gun into the wall of Plaintiff Nabors' house, and made Plaintiff Webb get on his hands and knees and crawl out of his house. (AC ¶¶ 256, 264, 275, 284.)

In sum, this Court should find that Plaintiffs have stated a claim for content or viewpoint discrimination as set forth in Count III of the Amended Complaint.

## II.    Plaintiffs Have Stated a Claim for Fourth Amendment Violations Against the City and VanNort.

### A.    Plaintiffs have stated a claim for false arrest.

An arrest violates the Fourth Amendment (and gives rise to a § 1983 claim) when made without probable cause. *Demster v. City of Lenexa, Kan.*, 352 F. Supp. 2d 1165, 1171 (D. Kan. 2005). When the arrest occurs pursuant to a warrant, the plaintiff may state a Fourth Amendment claim by showing that the affiant "knowingly, or with reckless disregard for the truth" included false statements in the affidavit or omitted from the affidavit "information which, if included, would have vitiated probable cause." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978) and *Stewart v. Donges*, 915 F.2d 572, 582 (10th Cir. 1990)). The court "may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations." *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014). The court must determine the existence of probable cause by excluding the false statements and including the omitted information and then asking whether "the affidavit would still have given rise to probable cause for the warrant." *Wolford*, 78 F.3d at 489.

In the Tenth Circuit, probable cause must exist for each element of an offense. *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1224 (10th Cir. 2020). The elements of incitement to riot are: (1) acting with the intent to cause the initiation of a "riot" by (2) "urg[ing] other persons to commit acts of unlawful force or violence, or the unlawful burning or destroying of property, or the unlawful interference with a police officer . . . officially assigned to riot duty in the lawful performance of his duty." 21 Okl.

St. Ann. § 1320.2. Here, the affidavits admitted that "[t]here were no police employees assigned to protest/riot related duties." (AC ¶ 182.) Accordingly, to support an incitement to riot charge, Defendants needed to show that the Plaintiffs urged others to commit unlawful force, violence, or destruction of property. Furthermore, the Oklahoma Court of Criminal Appeals has long held that people engaged in First Amendment expression cannot be charged with incitement to riot unless their speech creates a "clear and present danger" of imminent unlawful action and the speaker intends to create such a danger. *Price v. State*, 873 P.2d 1049 (1994). As discussed in section I.A, this is consistent with the Supreme Court's requirement that an incitement charge requires intent to create, and the creation, of likely and imminent lawless action. *Claiborne*, 458 U.S. at 928.

The Amended Complaint pleads in detail that VanNort's affidavits contained false statements and material omissions that, when taken into account, vitiate probable cause for incitement. Specifically, video evidence clearly shows that: (a) Plaintiffs Baker and Nabors never called others to join the scene, rendering the allegation that they "escalated the situation by calling others" false; (b) Wald's vehicle was never "completely confined from moving in any direction, including backwards"; (c) people who gathered to watch the encounter stood at a distance recording the incident on their phones and did not begin to riot or block Wald's movement; and (d) throughout the encounter, Plaintiffs spoke only to Wald, not to others in the crowd. (AC ¶ 207.) When combined with the Affidavit's admission that throughout the incident the "remainder of the peaceful protestors . . . continued their peaceful painting" (AC ¶ 202), there is simply no possibility that a truthful affidavit could have provided probable cause to arrest Plaintiffs

for incitement to riot. (AC ¶ 208.) Plaintiffs said nothing to persuade or provoke others to join them or to threaten or cause violence to anyone, nor did any spectator react in any loud or violent manner. (AC ¶¶ 106–113, 202.) *Compare Claiborne*, 458 U.S. at 927–28 ("When such appeals do not incite lawless action, they must be regarded as protected speech.").

Furthermore, the Amended Complaint alleges that VanNort knowingly—that is, intentionally—included these "fabricated" statements and material omissions in the affidavits "in order to procure unjustified warrants." (AC ¶ 46.) Certainly, a reasonable jury could infer VanNort's bad faith and intentional misconduct from the facts alleged. (AC ¶¶ 153–208.) At the very least, the Amended Complaint alleges that VanNort included the fabricated statements with a reckless disregard for the truth. Deliberate misrepresentations and omissions, or those made with reckless disregard, violate the Fourth Amendment regardless of VanNort's misplaced argument at the motion to dismiss stage that "probable cause is not a high bar." (VanNort MTD at 8.) *See DeLoach v. Bevers*, 922 F.2d 618, 623 (10th Cir. 1990) (material misstatements and omissions in probable cause affidavit created question of fact for jury).

VanNort's argument that Plaintiffs must demonstrate a violation of the Reasonableness Clause, not the Warrant Clause (VanNort MTD at 9), based on *Goad v. Town of Meeker*, 654 F. App'x 916, 922 (10th Cir. 2016), fails for multiple reasons. First, arresting Plaintiffs for incitement to riot was objectively unreasonable because the elements of the charge clearly were not met and VanNort intentionally included false statements and made material omissions in his affidavit. Second, VanNort does not

19

identify (nor could he) any facts outside the warrant that could cure the lack of probable

cause; *Goad* is therefore readily distinguishable from the facts as alleged by Plaintiffs.

Finally, *Goad* was decided on a motion for summary judgment and is therefore not the

appropriate legal standard on the present motion to dismiss.

   Finally, Plaintiffs Baker, Terry, and Hogsett have stated a Fourth Amendment

claim against the City based upon their warrantless arrests in retaliation for attempting to

lodge a complaint against Wald. On June 24, 2020, OCPD arrested and detained

Plaintiffs Terry, Baker, and Hogsett against their will. (AC ¶¶ 134–138.) Plaintiffs Baker

and Terry spent ten hours in jail, and Hogsett spent fifteen hours in jail. (AC ¶¶ 141–42.)

The propriety of a warrantless arrest is analyzed under the probable cause standard.

*Baptiste v. J.C. Penny Co.*, 147 F.3d 1252, 1256 (10th Cir. 1998). Here, Defendants

lacked probable cause to arrest Plaintiffs for disorderly conduct, when all they did was

ask to file a complaint and record the incident on their phones. (AC ¶¶ 115–150.) Even

the post-hoc justifications for the arrest did not contain any specific allegations against

Baker or Terry. (AC ¶ 146.) The Fourth Amendment requires probable cause to arrest

each Plaintiff "as an individual, not as a member of a large basket containing a few bad

eggs." *Fogarty v. Gallegos*, 523 F.3d 1147, 1158 (10th Cir. 2008).

   B.   <u>Plaintiffs have stated a claim for malicious prosecution.</u>

   "The gravamen of the Fourth Amendment claim for malicious prosecution, as this

Court has recognized it, is the wrongful initiation of charges without probable cause."

*Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022). To state a § 1983 claim for malicious

prosecution in violation of the Fourth Amendment, Plaintiffs must establish that:

(1) VanNort caused Plaintiffs' continued confinement or prosecution; (2) the original action(s) terminated in favor of Plaintiffs; (3) no probable cause supported the original arrest(s), continued confinement, or prosecution; (4) VanNort acted with malice; and (5) Plaintiffs sustained damages. *Montoya v. Vigil*, 898 F.3d 1056, 1066 (10th Cir. 2018). VanNort does not contest that Plaintiffs have satisfied elements (1), (4), and (5). (VanNort MTD at 14–19.)

With respect to element (2), Defendant VanNort wrongly argues that Plaintiffs cannot demonstrate a favorable termination because the "decision to plead guilty in exchange for deferred judgments . . . 'robbed' them of their malicious prosecution claims . . . ." (VanNort MTD at 16.) *Defendants dropped the felony incitement to riot charges*. (AC ¶ 436.) Plaintiffs pled guilty to misdemeanor charges based on entirely different operative facts.[4] The misdemeanor charges did not even appear in the original warrant application or indictment. (AC ¶¶ 226, 232.) That constitutes a favorable termination of the felony incitement to riot charges.

VanNort places too much reliance on the recent Supreme Court decision in *Thompson*, which held that to maintain a malicious prosecution claim, a plaintiff "need only show that his prosecution ended without a conviction." 142 S. Ct. at 1335.[5] VanNort argues that a prosecution ending in *any* conviction—even one entirely different from any

---

[4]     The elements for Incitement to Riot and Obstruction of Justice are wholly distinct and share no similar elements. *Compare* 21 Okl. St. Ann. § 540 *with* 21 Okl. St. Ann. § 1320.2.

[5]     *Thompson* abrogated Tenth Circuit precedent holding that a favorable termination required some affirmative indication of innocence.  *Thompson*, 142 S. Ct. at 1341.

offense charged—fails the favorable termination requirement. But *Thompson* says no such thing, nor does Tenth Circuit precedent support this expansive interpretation.

Rather, the Tenth Circuit has held that a conviction on one charge does *not* foreclose a malicious prosecution claim for failed prosecutions on other charges. In *Miller v. Spiers*, the plaintiff sued a prosecutor and police officers who allegedly conspired to prosecute him for murder and kidnapping without probable cause. 339 F. App'x 862, 866 (10th Cir. 2009). The prosecutor dropped the murder and kidnapping charges, but the plaintiff pled no contest to attempted tampering with evidence. *Id.* The Tenth Circuit allowed the plaintiff to proceed on his malicious prosecution claims despite his conviction for evidence tampering, reasoning: "Allowing Miller to attack only these charges in his malicious prosecution claim is entirely consistent with the common law of malicious prosecution, which allows a plaintiff to challenge prosecutions on a charge-by-charge basis." *Id.* at 868; *see also Montoya v. City & Cnty. of Denver*, 2021 WL 1244264, at *19 n.15 (D. Colo. Mar. 4, 2021), *aff'd*, 2022 WL 1837828 (10th Cir. June 3, 2022) (same).[6] As the Second Circuit observed, a contrary rule would incentivize officers to "add unsupported serious charges to legitimate minor charges with impunity"—which is

---

[6]   The two cases VanNort cites, *Halik v Darbyshire*, 2021 WL 4556188 (D. Colo. Aug. 23, 2021), and *Guinn v. Unknown Lakewood Police Officers*, 2010 WL 4740326 (D. Colo. Sept. 30, 2010), are not to the contrary; both of these cases concerned the favorable termination requirement in *Heck*, which is different. Nevertheless, the rule VanNort proposes—that the court should "consider as a total transaction whether the activity forming the basis for the arrest is the same as the activity to which the defendant pleaded guilty" (VanNort MTD at 15) actually favors Plaintiffs.  As explained *supra* and pled in the Amended Complaint (AC ¶¶ 181–208), Plaintiffs did not engage in or plead guilty to any conduct that could have supported the incitement to riot charges.

exactly what the Amended Complaint alleges Defendants did here. *See Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir. 1989) (favorable termination requirement met for malicious prosecution purposes when defendant was acquitted on some charges and convicted of others); *accord Uboh v. Reno*, 141 F.3d 1000, 1005 (11th Cir. 1998) (prosecutor's decision to dismiss one charge on multi-count indictment constituted favorable termination for purposes of a malicious prosecution claim), *abrogated on other grounds by Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019).

With respect to element (3), Plaintiffs have alleged that VanNort lacked probable cause for each element of 21 Okl. St. Ann. § 1320.2. (*See, e.g.*, AC ¶¶ 170–79, 203–08.) Given that this Court must take Plaintiffs' factual allegations as true and draw all inferences in Plaintiffs' favor, Plaintiffs have sufficiently alleged that Defendants lacked probable cause and have stated a claim for malicious prosecution. *See, e.g.*, *Lehmann v. Zehner*, 2022 WL 11732949, at *3 (D. Colo. Oct. 20, 2022) (denying motion to dismiss malicious prosecution claim where "the Complaint's well-pleaded allegations and the cell phone footage" sufficiently alleged "there was no objectively reasonable basis for believing probable cause existed to arrest [plaintiff]"); *Sodaro*, 2022 WL 4365983, at *8 (denying motion to dismiss where plaintiff alleged, inter alia, "that her prosecution was carried out based on [police officers'] misrepresentations and false statements" as retaliation for lawful protest and therefore lacked probable cause); *Kennedy v. Taylor*, 2021 WL 6050279, at *5 (D. Colo. Dec. 21, 2021) (denying motion to dismiss where plaintiff alleged that false statements made by police "led to her being charged with several crimes without probable cause"). VanNort's arguments regarding probable cause

"are more appropriately addressed at the summary judgment stage." *Osterhout v. Timms*, 2021 WL 640902, at *4 (E.D. Okla. Feb. 18, 2021).

VanNort, however, argues that Plaintiffs do not meet the probable cause requirement because he *could* have had probable cause to arrest Plaintiffs for obstructing an officer (the misdemeanor to which Plaintiffs ultimately pled guilty), even though VanNort did not seek or obtain a warrant for that charge. In other words, VanNort invites this court to apply the "any-crime" rule, which "demands only a showing that there was probable cause to arrest the suspect for some crime, not necessarily the specified crime." *Montoya*, 2021 WL 1244264, at *19 n.15. This is a radical position that the Tenth Circuit has never endorsed in any published decision. Indeed, VanNort himself characterizes the Tenth Circuit law on this question as unsettled. (VanNort MTD at 17–18.)

This Court should reject VanNort's argument. As the Eleventh Circuit recently held when rejecting the application of the any-crime rule to claims of malicious prosecution, "centuries of common-law doctrine urge a charge-specific approach, and bedrock Fourth Amendment principles support applying that approach in the context of the charges that justified a defendant's seizure." *Williams v. Aguirre*, 965 F.3d 1147, 1162 (11th Cir. 2020). The "any-crime" rule may be "practical" for warrantless arrests, but it is "much less so" for arrests made pursuant to warrants because "officers have a greater opportunity to investigate and consult with others," and is "even less justified in the § 1983 malicious prosecution context, since '[t]he charges that support a defendant's

pretrial detention—that is, the seizure pursuant to legal process—meaningfully affect the existence and duration of that seizure.'" *Montoya*, 2021 WL 1244264, at \*19 n.15.[7]

*None* of the cases VanNort cites support application of the any-crime rule in this case. In *Puller v Baca*, 781 F.3d 1190, 1200 (10th Cir. 2015), for example, the police obtained an arrest warrant for two charges, both of which the state court dismissed for lack of probable cause. In the subsequent federal suit, the Tenth Circuit found that one of the charges was supported by probable cause, and this precluded the Fourth Amendment claims. In *Olachea v. City of Farmington, N.Y.*, 2015 WL 13662868 (D.N.M. June 29, 2015), the court rejected a malicious prosecution claim where the plaintiff was charged with two offenses and pled guilty to one. And *Clema v. Colombe*, 676 F. App'x 801, 805 (10th Cir. 2017), concerned a warrantless arrest. VanNort has not identified a single case in the Tenth Circuit where the court held that a malicious prosecution claim is foreclosed by probable cause to believe the defendant committed a crime that *could* have been but was *not* charged, and Plaintiffs are unaware of any.

Because the Amended Complaint alleges a lack of probable cause for all the offenses charged, this Court should hold that Plaintiffs stated a claim for malicious prosecution.

---

[7]    *See also Johnson v. Knorr*, 477 F.3d 75, 83–84 (3d Cir. 2007) (any-crime rule does not apply to claims of malicious prosecution); *accord Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir. 1991); *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682–83 (7th Cir. 2007); *Elbrader v. Blevins*, 757 F. Supp. 1174, 1180 (D. Kan. 1991).

**III.**    **The City's Argument That the Amended Complaint Does Not Comply With Rule 8 Ignores the Nature of Plaintiffs' Claims.**

The City's argument that the Amended Complaint does not comply with Rule 8 of the Federal Rules of Civil Procedure disregards and distorts the express basis for Plaintiff's claims. The City argues, for example, that the Amended Complaint refers to George Floyd "16 times in the first ten pages" and asserts—nonsensically—that Plaintiffs "attribute [Floyd's killing] to the Oklahoma City Police Department." (City MTD at 2, 4.) Likewise, the City misses the point when it argues that the killing of Bennie Edwards and the trial of Julius Jones "have no relevance" to Plaintiffs' claims. (City MTD at 11.) The essence of Plaintiffs' claims against the City is that OCPD expressly targeted them for retaliation and wrongful arrest *because* of the *content* of their speech—i.e., pursuant to municipal policy, custom or practice, OCPD subjected Plaintiffs to surveillance, harassment, arrest, detention and other abusive tactics precisely because Plaintiffs were outspoken critics of police violence, including the killing of Floyd and others, and including in Oklahoma City.

The Amended Complaint makes this perfectly clear: it alleges that the OCPD—an agency of the City[8]—"adopted and continues to maintain a policy, practice and/or custom of arresting, prosecuting, and targeting racial justice protestors *based on their speech and the content of their speech . . . .*" (AC ¶ 355) (emphasis added). The Amended Complaint likewise states directly which claims are brought against the City (AC ¶¶ 389, 403, 415, 427, 433), and which are not. (*See, e.g.,* AC ¶¶ 442, 448.)

---

[8]    Oklahoma City Municipal Code, 2020, § 43-2.

As discussed in detail, the Amended Complaint is more than adequate to satisfy Rule 8.

A.    The City's argument that the Amended Complaint is "overly long" and "conclusory" is meritless.

The City's argument that the Amended Complaint should be dismissed under Rule 8 because it is "overly long" and "conclusory" should be rejected. (City MTD at 1, 12.)

In the first place, the length of the Amended Complaint simply does not provide a basis for dismissal. In *In re Roberts*, 2021 WL 4438744, at *3 (10th Cir. Sept. 28, 2021), the Tenth Circuit reversed the bankruptcy court's order dismissing a complaint with prejudice, stating: "While the length of a complaint can be problematic, length alone does not support dismissing a complaint with prejudice under Rule 8." The court held that despite the length of the complaint (and even though it contained allegations that were "repetitious and irrelevant"), the bankruptcy court's order granting defendants' motion to dismiss was an abuse of discretion because the complaint provided "fair notice of the claims against [defendants] and therefore complied with Rule 8." *Id.*, at *3; *see also Minter*, 2022 WL 900158, at *3.

Second, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp.*, 550 U.S. at 570 (2007). This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*; *see also Sylvia v. Wisler*, 875 F.3d 1307, 1313 (10th Cir. 2017). The purpose

of Rule 8 is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp.*, 550 U.S. at 555; *In re Roberts*, 2021 WL 4438744, at *1. Thus, dismissal under Rule 8 is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *In re Roberts* at * 4 (quoting *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004)). Here, as discussed in Part III(B) below, paragraphs 355 through 387 of the Amended Complaint set forth clearly the City's policies on which Plaintiffs' claims are based and specific factual assertions supporting their claims. Plaintiffs' claims against the City are hardly "disguised"—the City has more than ample notice of the claims and their grounds.

Third, determining whether a complaint states a plausible claim for relief is a "context-specific task." *Iqbal*, 556 U.S. at 679. Accordingly, "the nature and specificity of the allegations required to state a plausible claim" depend on the type of case. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011); *see also George v. Urban Settlement Services*, 833 F.3d 1242, 1247 (10th Cir. 2016); *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). Here, the Amended Complaint is not needlessly long: there are six individual plaintiffs and three separate defendants; Plaintiffs assert seven legal theories of liability and seek a variety of remedies, including declaratory, injunctive and monetary relief; Plaintiffs must establish that their rights under both the First and Fourth Amendments were violated; under *Monell v. N.Y.C. Dept. of Social Servs.*, 436 U. S. 658 (1978), Plaintiffs are precluded from recovering against the City on a theory of respondeat superior, but must establish the City's liability based

upon a municipal policy, custom or practice, or that the City acted with deliberate
indifference; Plaintiffs must also allege the reasons neither of the individual defendants is
entitled to immunity for their wrongful conduct; and that defendants' conduct is not an
isolated instance, but has been carried out over the course of more than two years. Given
the nature of Plaintiffs' claims, the length of the Amended Complaint comes as no
surprise.

Finally, the Amended Complaint is not, as the City says, "conclusory in nature."
(City MTD at 12.) An allegation is conclusory only if it "refers to the expression of 'a
factual inference without stating the underlying facts on which the inference is based.'"
*Kellum v. Mares*, 657 F. App'x 763, 770 (10th Cir. 2016) (quoting Black's Law
Dictionary (10th ed. 2014)) (emphasis added). Here, the City fails to identify even a
single allegation that it claims is conclusory. And, despite the City's contention that the
Amended Complaint is too long, one of the reasons the Amended Complaint is over 100
pages long is that it is *not* conclusory—the Amended Complaint sets forth specific factual
allegations that are more than sufficient to support a plausible inference that the City
adopted and maintains a policy, practice and custom of arresting, prosecuting, and
targeting racial justice protestors based on their speech and the content of their speech.

There is no merit to the City's argument that the Amended Complaint is too long
and that it is conclusory.

29

B.   The Amended Complaint complies with Rule 8 because it provides
ample notice of the nature and bases for Plaintiffs' claims against the City.

A city is subject to liability under §1983 when the harm that is claimed was caused
by the municipality's "policy or custom, whether made by its lawmakers or by those
whose edicts or acts may fairly be said to represent official policy . . . ." *Monell*, 436 U.S.
at 694; *see also Lozman*, 138 S. Ct. at 1952; *Jensen v. West Jordan City*, 968 F.3d 1187,
1204 (10th Cir. 2020) ("to establish municipal liability, a plaintiff must show 1) the
existence of a municipal policy or custom, and 2) that there is a direct causal link
between the policy or custom and the injury alleged."). As the Tenth Circuit has
recognized, a municipal policy or custom sufficient to impose liability under § 1983 can
take various forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a
> widespread practice that, although not authorized by written law or express
> municipal policy, is so permanent and well settled as to constitute a custom or
> usage with the force of law; (3) the decisions of employees with final
> policymaking authority; (4) the ratification by such final policymakers of the
> decisions—and the basis for them—of subordinates to whom authority was
> delegated subject to these policymakers' review and approval; or (5) the failure to
> adequately train or supervise employees, so long as that failure results from
> deliberate indifference to the injuries that may be caused.

*Waller v. City of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Bryson v. City of
Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)).

Here, the City does not argue, even in passing, that the Amended Complaint does
not set forth allegations sufficient to satisfy *Monell*. Instead, the City professes an
inability to assess the allegations against it and to prepare a "meaningful response,"
purportedly because the Amended Complaint does not make clear "what the City, as a

Defendant, allegedly did via a policy, practice or custom, to violate anyone's constitutional rights." (City MTD at 5, 7.) By failing to address the sufficiency of Plaintiffs' allegations under *Monell* at all, the City has waived any argument that the complaint fails to allege sufficient facts to establish municipal liability based on the City's policy, custom and practice. *SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1226 (10th Cir. 2009) ("[a]n issue or argument insufficiently raised in a party's opening brief is deemed waived") (internal citation omitted); *Goad*, 654 F. App'x at 920 ("even for claims raised in the district court, a party waives a claim if he does not raise it in his opening brief—even if he later raises it in his reply brief."); *Silverman v. Prisoner Transp. Servs. of Am.*, 2016 WL 3355334, at *3 (W.D. Okla. Apr. 26, 2016) (declining to consider grounds for dismissal raised for first time on reply).[9]

Moreover, contrary to the City's argument, the Amended Complaint provides notice to the City of Plaintiffs' claims (and also sets forth facts necessary to plausibly allege municipal liability), as set forth in more detail below.

      1.    *The Amended Complaint alleges a custom of viewpoint discrimination, retaliation, and Fourth Amendment violations against racial justice protesters who express messages critical of police.*

Municipal liability under § 1983 can be based on an informal custom that amounts to a widespread practice that is so permanent and well settled as to constitute a "custom or usage" with the force of law. *Cannon*, 998 F.2d at 877. At the pleading stage, Plaintiffs

---

[9]    For the same reasons, the City has also waived any argument that Plaintiffs have failed adequately to allege claims for injunctive relief, or for failure to train and supervise.

may establish a custom by alleging "a series of decisions by a subordinate official . . . of which the supervisor must have been aware." *Jensen*, 968 F.3d at 1205. Plaintiffs may also allege "a pattern of multiple similar instances of misconduct." or "a police officer's statements attesting to the policy's existence." *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1213 (D.N.M. 2015). While there is "no set number" required to constitute a pattern, Plaintiffs must plead enough similar instances to create a plausible inference that the custom exists. *Id.*

In *Cannon*, the plaintiffs—anti-abortion protestors—alleged that the City violated the First Amendment by targeting them for their speech critical of abortion rights. The Tenth Circuit reversed the District Court's decision granting summary judgment for the City based on an assortment of incidents of police harassment of anti-abortion protestors, including threats, use of force, and other abuse from which a municipal policy directed at antiabortion protestors could be inferred. *Id.* at 877–78; *see also Brandt*, 300 F. Supp. 3d at 1280–81 (reasonable jury could infer custom of First Amendment retaliation and viewpoint discrimination where plaintiff was harassed, cited, and arrested multiple times for speech critical of police)*; Powell v. City & Cnty. of Denver, Colo*., 973 F. Supp. 1198, 1204 (D. Colo. 1997) (reasonable jury could infer custom where plaintiff presented "several alleged instances of unconstitutional arrests").

Here, the Amended Complaint alleges that during the George Floyd protests in 2020, the City adopted, and continues to maintain, a custom of targeting protestors who criticize the police with harassment, use of force, wrongful arrest, traffic stops, and other

unreasonable restrictions *because of* the content of the protestors' speech.[10] (AC ¶ 355.) It alleges, moreover, that the OCPD's conduct towards Plaintiffs was specifically based upon its custom aimed at racial justice protestors. *Id.*

In addition, the Amended Complaint alleges numerous specific actions by the OCPD that together evidence the custom, including:

- investigating and arresting protestors in retaliation for their First Amendment activity critical of the police (AC ¶¶ 44, 356, 369–372);

- imposing a curfew without accommodating the right to peaceful assembly and protest (AC ¶¶ 38, 49, 356);

- declaring unlawful assemblies without adequate notice, means and opportunity for plaintiffs and protestors to disperse before taking aggressive police action, including the use of tear gas, bean bag rounds, mace, and other unreasonable and excessive force (AC ¶¶ 34–42, 356, 376–380);

- seeking to intimidate Plaintiffs and protestors, by driving towards them at high speeds (AC ¶¶ 41, 56, 356);

---

[10]    Though not specifically addressing whether such acts form part of a municipal custom, courts around the country have found that similar tactics directed against Black Lives Matter protestors likely violate the First Amendment. *See, e.g.*, *Black Lives Matter Seattle-King Cnty.*, 466 F. Supp. 3d 1206, 1214 (W.D. Wash. 2020) ("The use of indiscriminate weapons against all protestors—not just the violent ones—supports the inference that SPD's actions were substantially motivated by the plaintiffs' protected First Amendment activity."); *Don't Shoot Portland v. City of Portland*, 465 F. Supp. 3d 1150, 1155–56 (D. Or. 2020) (because "officers indiscriminately used force against peaceful protestors on multiple occasions," including "continu[ing] to fire tear gas canisters as people attempted to leave the protest area," preventing criminal activity "was not the sole purpose of [officers'] use of force," and that they instead "may have been substantially motivated by an intent to interfere with plaintiffs' constitutionally protected expression"); *Anti Police-Terror Project v. City of Oakland*, 477 F. Supp. 3d at 1088("[A]ggressive conduct" by officers, "such as shooting a reporter with a rubber bullet even though it does not appear she was engaged in illegal activity or posed a threat of any kind, raises a serious question as to whether some of the uses of force described in those declarations was in reaction to the anti-police message of the protests and aimed at intimidating protestors to deter such speech.").

- failing to provide medical aid or decontamination to persons who had been teargassed (AC ¶ 356);

- surveilling, following, photographing, and videotaping Plaintiffs and other protestors during protests and as they go about their daily lives (AC ¶¶ 56–58, 60, 70–72, 368);

- posting photos of Plaintiffs and protestors at police headquarters and on the FOP website (AC ¶¶ 61–64, 368);

- harassing and threatening Plaintiffs and protestors and calling to them by name on the street in threatening and menacing ways, and calling them derogatory names (AC ¶¶ 56, 58, 61–66, 368, 374);

- targeting plaintiffs through traffic stops because of their criticism of the police and involvement in racial justice protests (AC ¶ 373);

- refusing to accept Plaintiffs' complaint about Wald's conduct (AC ¶ 368);

- arresting and detaining Plaintiffs without probable cause (AC ¶¶ 134, 138, 226–232, 368);

- arresting and detaining without probable cause several *other* racial justice protestors who spoke out against the OCPD and expressed viewpoints with which OCPD officers disagreed (AC ¶¶ 55, 369–372); and

- failing to include any guidance or prohibitions against retaliation or viewpoint discrimination in the OCPD Manual (AC ¶ 357) or enact rules to prohibit viewpoint discrimination, retaliation, or unjustified arrest of protestors critical of police (AC ¶ 357–358).

Far from constituting irrelevant rambles (City MTD at 5), Plaintiffs' allegations concerning the OCPD's treatment of them and other racial justice protestors, both at and after the George Floyd protests, directly support the City's *Monell* liability on the First and Fourth Amendment claims. *See, e.g., Cannon*, 998 F.2d at 877 (retaliation and viewpoint discrimination); *Andersen v. City of Colo. Springs*, 2021 WL 8444657, at *4

(D. Colo. Aug. 12, 2021) (eight incidents of arrests without probable cause between 2009 and 2018 sufficient to allege custom).[11] The City attempts to justify its excessive use of force, bean bag rounds, chemical weapons, and indiscriminate arrests against Plaintiffs and other peaceful racial justice protestors by imputing the acts of a few protestors to Plaintiffs and, shockingly, suggesting Plaintiffs were guilty of criminal riot during the protests (City MTD at 8–10), which is contrary to the allegations of the Amended Complaint. (AC ¶¶ 36, 37, 50.) The City's preposterous argument not only flouts the Fourth Amendment's fundamental requirement of individualized suspicion, but is itself evidence of unconstitutional motive to target *all* racial justice protestors for violent retribution.[12] The OCPD's violent and retaliatory actions against Plaintiffs *and* others in the aftermath of George Floyd's killing is emblematic of its custom and policy aimed at protestors who speak out against police violence.[13] From a *Monell* perspective, the City's Rule 8 argument crumbles. *Minter*, 2022 WL 900158, at *3.

---

[11]    *See also Sexton v. City of Colo. Springs*, 2021 WL 2823244, at *5 (D. Colo. July 7, 2021); *Powell*, 973 F. Supp. at 1204; *Sekerak v. City & Cnty. of Denver*, 1 F. Supp. 2d 1191, 1199 (D. Colo. 1998).

[12]    *Minter*, 2022 WL 900158, at *7; *Black Lives Matter Seattle-King Cnty.,* 466 F. Supp. 3d at 1214; *Anti Police-Terror Project*, 477 F. Supp. 3d at 1088; *Don't Shoot Portland*, 465 F. Supp. 3d at 1156; *Shirazi v. Oweis*, 2022 WL 445763, at *6 (N.D. Cal. Feb. 14, 2022). *See also Claiborne.*, 458 U.S. at 908 ("[t]he right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected").

[13]    The City's comment that—except for their arrests on June 23, 2020—"all events of [Plaintiffs'] protest are beyond the applicable two (2) year statute of limitations" (City MTD at 2) does not alter this analysis, as courts routinely consider pre-limitations events to decide whether a City has engaged in an unconstitutional custom. *Powell*, 973 F. Supp. at 1205 ("evidence of events prior to [the statute of limitations] may be relevant to

2.     *The Amended Complaint alleges that Chief Gourley,*
*a* Monell *policymaker, ratified the OCPD's actions.*

The Amended Complaint also alleges municipal liability based upon the decisions made by its Chief of Police, Wade Gourley, who ratified the OCPD's complained-of actions. *See*, *e.g.*, *Jensen,* 968 F.3d at 1205. Ratification occurs when a municipality's authorized policymaker reviews and approves a subordinate's decision, rendering the policymaker's approval "chargeable to the municipality." *Id.* (internal citation omitted).

The Amended Complaint alleges that Gourley was and is the City's chief policymaking official with final decision-making authority over the policies, practices, customs, conduct, supervision, and training of the OCPD.[14] (AC ¶ 18; *see also* Oklahoma City Municipal Code § 43-4(a) ("The Chief of Police shall be the chief administrative office for the Police Department . . . .")) The Amended Complaint alleges multiple instances of Gourley's ratification of OCPD officers' actions, both against racial justice protestors generally and the Plaintiffs specifically.

For example, in May 2020, human rights advocate Sara Bana specifically asked Gourley to direct his officers to refrain from indiscriminate arrests and the use of force

---

plaintiffs' claims that the City followed a policy or custom resulting in the violation of their constitutional rights"). *See also Lozman*, 138 S. Ct. at 1954*; Cannon*, 998 F.2d at 877–78. The City's comment is also factually incorrect, as the Amended Complaint sets forth numerous allegations of additional retaliatory actions by OCPD against Plaintiffs and others, *after* their arrests. *See, e.g.*, AC ¶¶ 313, 315–317, 324, 326, 345–350, 356, 376–380, 386.

[14]     Mayor David Holt was also specifically aware of the OCPD's violent and unlawful actions against the protestors, but claimed he had "no power" to change the actions of the OCPD. Amended Complaint ¶ 49.

against racial justice protestors to suppress their speech. (AC ¶ 361.) Gourley refused. Instead, he endorsed the OCPD's actions, stating "Oklahoma City is not Seattle," that he "stood by" his officers, and that he would let OCPD officers "do what they needed to do in their professional judgment." (AC ¶ 361.)

Similarly, Gourley attended a June 2, 2020 City Council meeting at which numerous citizens complained that the OCPD used excessive force against the protestors and engaged in unlawful arrests. (AC ¶ 362.) When asked to apologize for his officer's misconduct, Gourley refused, stating that he did not think he had anything to apologize for. (AC ¶ 363.)

And when questioned specifically about the constitutionality of arresting, detaining and charging Plaintiffs, Gourley responded: "[T]here were events that occurred that I feel like justice needs to be served." (AC ¶ 213.) *Jensen,* 968 F.3d at 1204–05. Moreover, it is inconceivable that OCPD officers could have engaged in the widespread acts targeting Plaintiffs alleged in the Amended Complaint, including surveilling them, posting their photos on the wall of police headquarters, and arresting them without probable cause when they attempted to complain over the mural incident and again for incitement to riot, without Chief Gourley's knowledge and approval. (AC ¶ 213.)

While discovery may uncover yet more evidence of Gourley's ratification of the OCPDs unconstitutional conduct, the facts pled in the Amended Complaint are specific and certainly sufficient to withstand a motion to dismiss under Tenth Circuit case law. *See, e.g.*, *id.* at 1205 (taking evidence in light most favourable to plaintiff, jury could reasonably have found that policymakers ratified their subordinates' actions).

3.   *The Amended Complaint alleges the City's deliberate indifference to Constitutional violations by failing to train and supervise OCPD officers.*

The Amended Complaint alleges an additional way in which the City caused Plaintiffs' harm: that is, the City was aware of, but failed adequately to train and supervise its police officers to prevent the constitutional violations that injured Plaintiffs. *See, e.g.*, *Lance v. Morris*, 985 F.3d 787, 800 (10th Cir. 2021); *Porter v. Dagget Cnty., Utah*, 587 F. Supp. 3d 1105 (D. Utah 2022).

Here, the Amended Complaint again gives the City clear notice of the basis of this claim: "The City, through its final policymakers, has failed to train, supervise, monitor, and discipline OCPD officers engaged in retaliatory conduct." (AC ¶ 396; see also ¶¶ 407, 421, 428, 437.) Throughout June 2020, racial justice advocates repeatedly raised to Mayor Holt and OCPD Chief Gourley the need for training with regard to viewpoint discrimination, retaliation, and protection of First and Fourth Amendment rights. (AC ¶¶ 46, 49, 361–364.) Nevertheless:

- the OCPD Manual contains no guidance or prohibition against retaliation or viewpoint discrimination;

- neither the City nor Gourley have enacted rules to prohibit viewpoint discrimination, retaliation, or unjustified arrest of protestors critical of police;

- the OCPD has not implemented any additional training or supervision to prevent further First and Fourth Amendment violations after the George Floyd protests made the risk of such violations obvious;

- the OCPD Operations Manual contains no guidance or prohibition on using material misrepresentations or omissions to justify arrests, and fails to

instruct that a probable cause affidavit must disclose all material
information, including exculpatory material information.

(AC ¶¶ 357–360.)

Indeed, rather than properly supervising members of the OCPD, Gourley endorsed

the actions of OCPD officers taken against racial justice protestors and has failed to

acknowledge, much less train, supervise, or discipline any officers for, First and Fourth

Amendment violations. (AC ¶¶ 359, 361, 363, 367.)[15] When Plaintiffs attempted to

complain to the Mayor about OCPD's unconstitutional actions, the Mayor refused to take

their complaints or said there was nothing he could do. (AC ¶¶ 46, 49, 68, 115.)

These allegations are all clearly spelled out in the Amended Complaint, yet the

City's brief fails to argue that Plaintiffs do not adequately allege municipal liability based

on deliberate indifference, failure to train, or failure to supervise. As the City has now

waived this argument, this Court should allow these claims to proceed to discovery.

4.    *The Amended Complaint adequately alleges that City
      policy was the moving force behind Plaintiffs' injuries.*

In order to state a constitutional claim under a municipal liability theory of

recovery, a plaintiff must allege that a municipal policy of custom was the "moving force

behind the constitutional deprivation." *Freeman v. Glanz*, 2017 WL 2569602, at*6 (N.D.

Okla. Jun. 13, 2017) (finding that plaintiff alleged "a direct causal link" between state

actor's policy and constitutional violations "sufficient to state a claim for municipal

---

[15]    Indeed, since Plaintiffs retaliatory viewpoint-based arrests, OCPD has continued
to target, harass, stop, and use unjustified force against them and other racial justice
activists for their protected conduct, while treating other protestors engaging in similar
conduct differently. *Compare* AC ¶¶ 373–380 *with* 381–387.

liability"). For failure to train, the "deficiency in the city's training program must be closely related to the ultimate injury," such that "the deficiency in training actually caused the police officers' indifference." *Franco v. City of Boulder, Colo.*, 2022 WL 474699, at *6 (D. Colo. Feb. 16, 2022), *appeal dismissed*, 2022 WL 4124608 (10th Cir. July 20, 2022) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989)). In assessing causation, courts in the Tenth Circuit look to "whether 'the injury [would] have been avoided had the employee been trained under a program that was not deficient in the identified respect,'" or "'how a hypothetically well-trained officer would have acted' if properly trained." *Id.*

Here, the Amended Complaint clearly alleges that the City failed to train, supervise, monitor, and discipline OCPD officers engaged in retaliatory conduct. (AC ¶¶ 396, 407, 421, 428, 437.) The Amended Complaint also alleges that Defendants' acts and omissions, including the City's failure to train OCPD officers, directly and proximately caused the violation of Plaintiffs' First and Fourth Amendment rights. (AC ¶¶ 397, 408, 422.) Plaintiffs have therefore adequately alleged that the deficiency in training caused the Defendants' indifference.[16]

---

[16]    *See Naranjo v. Victor*, 2022 WL 4008046, at *6 (D. Colo. Sept. 2, 2022) (allegations that defendant's actions were "the result of being untrained" and that the municipality's "failure to properly train and discipline [defendant] was the 'moving force' behind the incident" held sufficient).

Plaintiffs' allegations that Defendants acted pursuant to an official policy, custom and in accordance with their training (AC ¶¶ 395–400, 407, 421) are sufficient to establish causation at the motion to dismiss stage.[17]

C.    The cases cited by the City are entirely distinguishable.

Finally, none of the cases cited by the City support dismissal of the Amended Complaint for failing to comply with Rule 8. *McNamara v. Brauchler*, 570 F. App'x 741 (10th Cir. 2014), for example, involved a claim by a disbarred attorney who had been disciplined for failure to pay court-ordered spousal and child support. He brought an action in federal court against numerous state officials alleging violations of his constitutional rights, but his complaint covered "a wide range of subjects" that were obviously far afield—including "an alleged conspiracy among Colorado judges and district attorneys to prevent litigants from obtaining discoverable material, complaints about the prosecution and adjudication of his traffic tickets, and allegations that he was being improperly investigated and prosecuted by the state bar's Attorney Regulation Counsel." *Id*. at 742. To make matters worse, the plaintiff was instructed by the magistrate judge to file an amended complaint and to "state separately each claim, identify the defendant against whom the claim is brought, and avoid conclusory allegations, irrelevant statements, and *ad hominem* attacks," but his amended complaint was "riddled with the same problems." *Id*. The amended complaint was dismissed for

---

[17]    *Est. of Burnett v. City of Colo. Springs*, 2022 WL 2904705, at *13 (D. Colo. July 22, 2022) (allegations that officers were inadequately trained and "acted in accordance with their training" held sufficient); *Minter*, 2022 WL 900158, at *3.

failure to comply with Rule 8 *and* as a sanction for plaintiff's failure to follow the court's orders. That is far different from this case, in which the Amended Complaint devotes an entire section specifically to the City's liability and sets forth legal claims against the City that are clearly labelled.

Similarly, in *Gometz v. United States*, 334 F. App'x 889 (10th Cir. 2009), a pro se prisoner alleged numerous violations of his rights under the Fifth and Eighth Amendments but failed to explain how each defendant participated in the alleged constitutional violations and also failed timely to file a second amended complaint as directed by the court. Here, in contrast, Plaintiffs' Amended Complaint explains that the City is liable because its agency, the OCPD, has adopted a policy, practice and custom of arresting, prosecuting, and targeting racial justice protestors based on their speech and the content of their speech. (*See*, *e.g.*, AC ¶ 355.) The remaining cases cited by the City under Rule 8 are likewise distinguishable from this case—they are a collection of cases brought by pro se litigants whose pleadings were described as, among other things, "incomprehensible," "unintelligible," and "nonsensical."[18] They differ greatly from the Plaintiffs' clear and specific allegations against the City in this case.

---

[18]   *See Whitehead v. Shafer*, 295 F. App'x 906 (10th Cir. 2008) (pro se complaint recited "an array of statutory and common-law causes of action with little, if any, connection to the factual allegations," and was so "confusing" and "disjointed" that the legal claims were "incomprehensible"); *Schupper v. Edie*, 193 F. App'x 744 (10th Cir. 2006) (pro se complaint was "overly long, prolix, vague and confusing and sometimes unintelligible"); *Moser v. Oklahoma*, 118 F. App'x 378 (10th Cir. 2004) (pro se plaintiff asserted a "conglomeration" of allegations that were vague, conclusory and incomprehensible, against county sheriff, state court judges, and assistant district attorneys); *Abdelsamed v. United States*, 13 F. App'x 883 (10th Cir. 2001) (pro se

**IV.**    **Plaintiffs Plausibly Alleged a Conspiracy Claim Against Prater and VanNort.**

To establish a claim for conspiracy under Section 1983, Plaintiffs need only allege

(1) specific facts that show an agreement and concerted action among defendants, and (2)

an actual deprivation of a constitutional right.[19] *Douglass v. Garden City Cmty. Coll.*,

2021 WL 1978677, at *5 (D. Kan. May 18, 2021). Notably, direct evidence of a

conspiracy is rarely available, and "the existence of a conspiracy must usually be inferred

from the circumstances." *Fisher v. Shamburg*, 624 F.2d 156, 162 (10th Cir. 1980). "Proof

of agreement to deprive often will require examination of conduct occurring prior to

deprivation." *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990). "[A]n express

agreement among all the conspirators is not a necessary element of a civil conspiracy."

*Id.*  Because direct evidence of agreement is rare, "a defendant's assent can be inferred

from acts furthering the conspiracy's purpose." *Bledsoe v. Jefferson Cnty., Kan.*, 275 F.

---

complaint was a "prolix of vague allegations and conclusory statements," many of which
were "nonsensical", the amended complaint was also "incomprehensible", and plaintiff
had been admonished in prior litigation for filing "colossal" and "incomprehensible"
pleadings); *Coosewoon v. United States*, 2018 U.S. Dist. LEXIS 38135, 2018 WL
1221396 (W.D. Okla. 2018) (pro se complaint asserted "a host of allegations" seeking
"some sort of relief" against the United States of America and numerous federal officials,
including the Secretary of Interior and the Attorney General, as well as members of the
Comanche Nation Children's Court and other tribal officials, covering "a host" of
"disjointed matters" that had "no apparent bearing on the purported defendants" and was
so "rambling, prolix, and unintelligible" that its "true substance" was "well disguised");
*Dopp v. Jones*, 2013 WL 1181482 (W.D. Okla. Mar. 20, 2013) (pro se inmate, subject to
filing restrictions under 28 U.S.C. § 1915(g), asserted a "combination of prolix and
confusing allegations coupled with conclusory legal assertions", addressing a "broad
array of issues and claims", including against supervisory officials with no apparent
personal involvement in the claims).

[19]      As discussed in § I, *supra*, the Amended Complaint plausibly alleges a deprivation
of Plaintiffs' First and Fourth Amendment rights.

Supp. 3d 1240, 1252 (D. Kan. 2017) (citing *United States v. Edmonson*, 962 F.2d 1535, 1548 (10th Cir. 1992)).

Here, the Amended Complaint is replete with circumstantial evidence that Prater and VanNort agreed to deprive Plaintiffs of their First and Fourth Amendment rights by pursuing unjustified felony charges against them in retaliation for their speech critical of OCPD and Wald. The mural incident with Wald occurred on June 23, 2020. (AC ¶¶ 87–114.) Wald and Officer Long both wrote police reports the following day, June 24, 2020. (AC ¶¶ 158, 163.) In the reports, they did not report that Wald's car was surrounded or that Wald could not back up his vehicle. (AC ¶¶ 160-65.) They did not report anyone attempting to urge others to use force or violence. (AC ¶¶ 160-65.)

But then VanNort and Prater became involved. On June 25, 2020, VanNort met with Prater regarding the charges to be filed against Plaintiffs. (AC ¶ 166.) While the content of their conversation is unknown at this stage of the proceedings, the circumstances surrounding this meeting indicate Prater made clear he wanted to charge Plaintiffs with something serious—specifically, incitement to riot. Prater later told the media that he wanted to deter other protestors by using a "get tough" approach. (AC ¶ 211.) He publicly branded Plaintiffs as "terrorists." (AC ¶ 212.) And he later admitted that he was angry over the Wald incident. (AC ¶ 294.)

On June 26, 2020, after meeting with Prater the previous day, VanNort wrote an Incident Report about the mural incident. (AC ¶¶ 166–67.) Unlike the original reports of the incident written by Wald and Long, suddenly, for the first time in any report about the incident, VanNort referred to the protestors as "rioters." (AC ¶ 169.) VanNort's report

differs from his colleagues' reports in other important ways: it fabricates evidence against Plaintiffs by asserting, for the first time, that the police vehicle was "completely confined" while Plaintiffs "escalated the situation by calling others" and that Plaintiffs intended to "get the crowd worked up." (AC ¶ 171.) This language is identical to the subsequent language VanNort used in the Affidavits and Applications for Arrest Warrants. (AC ¶ 172.) And while Plaintiffs each pleaded guilty to a lesser offense involving facts contained within Wald and Long's reports, *not a single defendant was found guilty of the additional facts in VanNort's doctored report.* This further demonstrates that the contrived assertions in VanNort's report did not accurately reflect the incident as it occurred.

The facts alleged in the Amended Complaint are not conclusory, as Prater argues. As in *Bledsoe*, Plaintiffs have not pled "the kind of labels, conclusions, or formulaic recitations that *Iqbal* deems insufficient." 275 F. Supp. 3d at 1253 (denying motion to dismiss § 1983 conspiracy claim). "Unresolved evidentiary uncertainty" at the pleading stage does not change that the Amended Complaint contains "allegations of fact—not just conclusions." *Id.*

Here, the Amended Complaint contains specific facts from which—viewing the allegations in the light most favorable to Plaintiffs—this court can plausibly infer "a meeting of the minds, an agreement among the defendants, or a general conspiratorial

objective."[20] Indeed, Plaintiffs alleged both a meeting between the conspirators, followed by acts in furtherance of the conspiracy. Courts in the Tenth Circuit have found similar allegations sufficient to state a conspiracy claim at the pleading stage. *See, e.g.*, *Montoya v. City and Cnty. of Denver*, 2022 WL 1837828, at *8 (10th Cir. June 3, 2022) (complaint sufficiently alleged conspiracy against officers who "implicitly agreed to use false information supporting a warrant to arrest" the plaintiff); *Pastore*, 572 F. Supp. 3d at 1117–18 (D.N.M. 2021) (defendants' motion for judgment on the pleadings failed where facts alleged supported inference of conspiracy even though they did "not paint a complete picture of the alleged conspiracy"); *Douglass*, 2021 WL 1978677, at *5 (plaintiff sufficiently put defendants on notice of claims by pleading facts creating inference of meeting of the minds and endorsement of conspiracy-related behavior); *Bledsoe*, 275 F. Supp. 3d at 1253, 1259–60 (plaintiff sufficiently alleged a conspiracy by alleging specific facts that, if proven, support both an agreement and concerted action).

VanNort advances a different interpretation of the pleaded facts—that he simply sought legal advice from Prater and did not share Prater's "improper or retaliatory motives." (VanNort MTD at 29–30.) But while VanNort characterizes his actions as "simply engaging in what he believed to be lawful investigative activities," *id.* at 30, and Prater argues that he relied in good faith on VanNort's probable cause affidavits (Prater MTD at 20), Plaintiffs have alleged that VanNort and Prater formed an agreement to

---

[20]    *Pastore v. Bd. of Comm'rs for Cnty. of Catron*, 572 F. Supp. 3d 1100, 1117 (D.N.M. 2021) (quoting *Brooks v. Gaenzle*, 614 F.3d 1213, 1228 (10th Cir. 2010) (abrogated on other grounds by *Torres v. Madrid*, 141 S. Ct. 989 (2021)).

punish Plaintiffs for expressing views critical of the OCPD by pursuing unjustified felony charges, backed by falsified reports and affidavits that they concocted to fit the crime they wanted to charge. In other words, Plaintiffs have alleged that VanNort and Prater conspired to deprive Plaintiffs of their federally protected rights, as required by *Frasier v. Evans*, 992 F.3d 1003, 1025 (10th Cir. 2021). Plaintiffs and Defendants disagree as to the basic facts. But when ruling on a 12(b)(6) motion, the court does not weigh potential evidence that the parties may present at trial, nor does it resolve factual disputes. *Douglass*, 2021 WL 1978677, at *5 (citing *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). Rather, the Court must accept the well-pleaded allegations as true and view them in the light most favorable to Plaintiffs. *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008).

Finally, Defendant Prater argues that he has absolute immunity from the conspiracy claim. This argument fails for the reasons expressed in § V, *infra*. Furthermore, "a conspiracy claim allows for imputed liability provided there is an underlying constitutional deprivation." *Pastore*, 572 F. Supp. 3d at 1118 (citing *Dixon v. Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990). Plaintiffs may hold Prater liable for actions VanNort took in furtherance of the conspiracy to which absolute immunity does not attach, such as fabricating statements to obtain arrest warrants. *Id.*; *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 937 (9th Cir. 2012) (prosecutor "may forfeit his absolute immunity" by conspiring in "conduct that was not prosecutorial in nature"). And— because VanNort is not entitled to absolute immunity—Plaintiffs may hold VanNort liable for Prater's actions in bringing the felony charges.

Even if Prater had absolute immunity, which he does not, VanNort is still liable for conspiring to deprive Plaintiffs of their rights. In *Norton v. Liddel*, 620 F.2d 1375 (1980), the Tenth Circuit considered claims that a sheriff and district attorney conspired to cause a false information to issue, charging the plaintiff with incitement to riot as punishment for his exercise of his constitutional rights. Not only did the Tenth Circuit allow the conspiracy claims to proceed to trial, but the Court specifically held that the sheriff could be liable for the initiation of criminal charges even though the prosecutor was absolutely immune for this conduct. *Id.* at 1379. The Court explained that when an individual conspires with an immune state official, "the fact that the State official is immune from suit in damages should not provide a windfall defense" to the non-immune conspirator. *Id.* There is no reasonable basis to distinguish this case from *Norton*. This Court should hold that Plaintiffs have adequately stated conspiracy claims against both Prater and VanNort.

### V.     Prater Is Not Entitled to Absolute Immunity for his Conduct During the OCPD's Investigation Into Plaintiffs

Plaintiffs do not sue Prater for his charging decisions, as he wrongly assumes. (Prater MTD at 14.)[21] Rather, Plaintiffs challenge Prater's conduct during OCPD's criminal investigation into the Plaintiffs. Prater is not entitled to absolute immunity for his actions during this preliminary investigative stage.

---

[21]     Plaintiffs concede that Prater is entitled to absolute immunity for filing the incitement charges and seeking excessive bonds, even if such conduct was unlawful.

A.      The Amended Complaint plausibly alleges Prater's involvement
        in the preliminary criminal investigation against the Plaintiffs.

Contrary to Prater's argument (Prater MTD at 16–17, n.9), Plaintiffs do not rely on conclusory allegations to establish his role in the preliminary criminal investigation against the Plaintiffs, and therefore his lack of absolute immunity. Plaintiffs allege that on June 25, prior to VanNort even drafting his incident report, VanNort and Prater spoke regarding the investigation. (AC ¶ 166–67.) VanNort then inserted new facts into the evidentiary record, creating an incident report that described Plaintiffs as "rioters" and falsely stated that Wald's "vehicle was completely confined from moving in any direction" and that Plaintiffs "escalated the situation by calling others." (AC ¶ 169, 171.) These concrete and specific factual allegations create the plausible inference that Prater coached VanNort as to the elements of a more serious charge—incitement to riot—and instructed VanNort to include statements supporting those elements in his report and subsequent affidavits. Plaintiffs further alleged that Prater acted out of a motivation to punish Plaintiffs for their First Amendment activity and views critical of police and to suppress their speech. (AC ¶ 151, 210–12.)

B.      Prater is not entitled to absolute immunity because he
        acted as an investigator, not an advocate, during the
        preliminary criminal investigation.

The absolute immunity extended to prosecutors "is not grounded in any special esteem for those who perform these functions . . . but because any lesser degree of immunity could impair the judicial process itself." *Kalina v. Fletcher*, 522 U.S. 118, 124 (1997)). As first established in *Imbler v. Patchman*, 424 U.S. 409 (1976), it is "the nature

of the function being performed and not the mere identity of the person as a prosecutor that determines whether absolute immunity exists." *Id.*

In *Mink v. Suthers*, 482 F.3d 1244 (10th Cir. 2007), the Tenth Circuit established a three-part test to assist courts in evaluating absolute immunity claims. Absolute immunity applies only to "those actions that cast [the prosecutor] in the role of an advocate initiating and presenting the government's case." *Id.* at 1261. It does not extend to "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of an advocate." *Id.* (quoting *Imbler*, 424 U.S. at 430–431). While "there is no bright line between advocacy and investigation," the three *Mink* factors consider: (1) whether the prosecutor's action is closely associated with the judicial process; (2) whether it is a uniquely prosecutorial function; and (3) whether it requires the exercise of professional judgment." *Id*. Applying *Mink* to the facts alleged in the Amended Complaint, Prater acted as an investigator, not an advocate, when advising VanNort during the preliminary police investigation.

*First*, Prater's advice to VanNort was not closely associated with the judicial process. There is "a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that give him probable cause to recommend that a suspect be arrested, on the other hand." *Buckley v. Fitzimmons*, 509 U.S. 259, 273 (1993). The former is "intimately involved in a judicial proceeding" and the prosecutor's role as an advocate, while the latter involves "actions that are investigative or administrative in nature," and therefore removed from the judicial process. *Mink*, 482

F.3d at 1262. The "more distant a function is from the judicial process, the less likely absolute immunity will attach." *Id.* at 1261.

In *VanDeelen v. City of Eudora*, 53 F. Supp. 2d 1223 (D. Kan. 1999), the court distinguished between these two functions as applied to a prosecutor's advice to police. The court found that a prosecutor who advised police that no further investigation was needed "only after the police had completed their investigation and turned over all the reports to his office" had done nothing more than review the reports and determine that probable cause existed. *Id.* at 1232. Such conduct is closely associated with the judicial process and the decision to prosecute. *Id.* On the other hand, a prosecutor who advises police during their investigation "is not performing a function closely associated with the judicial process and is protected only by qualified immunity." *Id.* at 1228 (citing *Burns*, 500 U.S. at 492–96). Here, the Amended Complaint alleges that at the time Prater advised VanNort, VanNort had not yet begun drafting his police report, and the OCPD was still developing the facts of the case (AC ¶ 166–168.)

*Second*, Prater's advice to VanNort during the ongoing investigation was not a uniquely prosecutorial function. *Burns v. Reed*, 500 U.S. 478, 496 (1991) (prosecutor not entitled to absolute immunity for providing legal advice to police); *Mink*, 482 F.3d at 162 ("[A] legal review for the sufficiency of the evidence to support probable cause is not sufficient to confer absolute immunity."); *Rios v. Dona Ana Cnty.*, 2010 WL 11590924, at *3–4 (D.N.M. Sept. 8, 2010) (denying absolute immunity to prosecutor who advised officers that the facts of the case warranted specific charges). "The 'premise of *Burns* was that, in providing advice to the police, the prosecutor acted to guide the police, not to

prepare his own case." *Mink*, 482 F.3d at 1263 (quoting *Buckley*, 509 U.S. at 285) (Kennedy, J., concurring)). Here, the Amended Complaint makes clear that at the time he advised VanNort, Prater was not preparing for a judicial proceeding. Therefore, his "function was not that of an advocate" but "to provide legal advice outside the courtroom to aid a nascent investigation." *Id.*

Moreover, the Amended Complaint creates the plausible inference that Prater coached VanNort to falsify evidence of probable cause to support incitement to riot charges. "Absolute immunity does not protect the act of fabricating evidence during the prelimary investigation into a crime." *Bledsoe v. Vanderbilt*, 934 F.3d 1112, 1118 (10th Cir. 2019). Such conduct is "more akin to the detective's role in searching for"—or, as the Amended Complaint alleges, creating—"the clues and corroboration that might give him probable cause to recommend that a suspect be arrested." *Id.* In *Bledsoe*, the Tenth Circuit denied absolute immunity to a prosecutor who met with officers to devise a false narrative that implicated the plaintiff as a murderer. Here, Plaintiffs allege facts from which the court can plausibly infer that during the preliminary investigation, Prater met with VanNort to develop false facts implicating Plaintiffs in an incitement to riot. Absolute immunity does not protect such conduct.

*Finally*, Prater's advice did not require the exercise of prosecutorial judgment, as defined by *Mink*. To avoid over-protecting prosecutors from legitimate lawsuits, the Tenth Circuit again looks "to which role the prosecutor is performing—advocate or investigator." 482 F.3d at 1262. Prosecutorial judgment involves "preparing, analyzing and presenting pleadings to a court," not "investigatory legal advice." *Id.* Here, at the

time Prater advised VanNort, VanNort had not even drafted a police report. Prater did not

present his warrant application to the court until the following day. (AC ¶ 226.) Prater

advised VanNort on an ongoing investigation as a lawyer, but not as an advocate.

For all of the above reasons, this Court should deny absolute immunity to Prater

for his role in OCPD's preliminary police investigation.

## VI.  <u>Neither Prater Nor VanNort Is Entitled to Qualified Immunity.</u>

"When a defendant requests qualified immunity at the motion-to-dismiss stage, the

Court must determine whether the complaint alleges facts sufficient to show two things:

(1) [plaintiffs'] constitutional rights were violated; and (2) those rights were clearly

established at the time of the violation." *Mendoza*, 2003 WL 27385531, at *3. A

constitutional right is clearly established when "the right's contours were sufficiently

definite that any reasonable official in the defendant's shoes would have understood that

he was violating it." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019).

"While there does not have to be a case directly on point, existing precedent must place

the lawfulness of the particular action beyond debate." *Id.* at 504. Still, "there can be the

rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear

even though existing precedent does not address similar circumstances." *Id.*

At the motion to dismiss stage, "'asserting a qualified immunity defense . . .

subjects the defendant to a more challenging standard of review than would apply on

summary judgment.'" *Buck*, 2022 WL 1032785, at *8 (quoting *Thomas v. Kaven*, 765

F.3d 1183, 1194 (10th Cir. 2014)). "'On a motion to dismiss, it is the defendant's conduct

*as alleged in the complaint* that is scrutinized for constitutionality.'") *Id*. (quoting

*Thompson v. Ragland*, 23 F.4th 1252, 1254 (10th Cir. 2022) (emphasis in original)).

"'General statements of the law can clearly establish a right for qualified immunity

purposes if they apply with obvious clarity to the specific conduct in question.'"

*Ashaheed v. Currington*, 7 F.4th 1236, 1247 (10th Cir. 2021) (quoting *Halley v. Huckaby*,

902 F.3d 1136, 1149 (10th Cir. 2018)).

A.   Neither Prater nor VanNort is entitled to qualified
     immunity on Plaintiffs' First Amendment claims.

Prater and VanNort assert qualified immunity only as to Plaintiffs' First

Amendment retaliation claims. VanNort specifically disclaims any qualified immunity

argument with respect to Plaintiffs' petition and viewpoint discrimination claims, while

Prater simply fails to address them. (VanNort MTD at 23; Prater MTD at 17–22.) This

Court should find that VanNort and Prater have forfeited their qualified immunity

defenses as to Plaintiffs' petition and viewpoint discrimination claims at this motion to

dismiss stage. *See Tillmon v. Douglas Cnty.*, 817 F. App'x 586, 589–90 (10th Cir. 2020)

(declining to reach merits of qualified immunity defense where analysis of issue in

motion to dismiss below "was cursory at best" until motion for reconsideration).

Even if Prater and VanNort have properly asserted qualified immunity, neither is

entitled to its benefits. As discussed *supra* § I, Plaintiffs have stated viable claims for

First Amendment retaliation, violation of the right to petition, and content or viewpoint

discrimination. All three of these rights are clearly established.

*First,* the Supreme Court and Tenth Circuit clearly established long ago that

retaliatory arrest and action as retribution for the exercise of First Amendment rights is

prohibited. *See Lozman*, 138 S. Ct. at 1949; *Irizarry*, 38 F.4th at 1288 n.6 ("An arrest in retaliation for the exercise of protected speech constitutes an injury cognizable under our First Amendment jurisprudence"); *Buck v. City of Albuquerque*, 549 F.3d 1269, 1292 (10th Cir. 2008) ("It has long been clearly established that the First Amendment bars retaliation for protected speech and association"). It is also well established in the Tenth Circuit that "[a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990).

*Second*, clearly established law has long held that the First Amendment protects the right to petition and lodge complaints against government officials. *Lozman*, 138 S. Ct. at 1954–55; *Meyer v. Bd. of Cnty. Comm'rs of Harper Cnty., Okla.*, 482 F.3d 1232, 1243 (10th Cir. 2007).

*Third*, as recognized in *Buck v. Rhoades*, 2022 WL 1032785 (N.D. Okla. Apr. 6, 2022), by June 2020, a reasonable officer would have known it was clearly established by Supreme Court and Tenth Circuit precedent that viewpoint discrimination and content-based restriction of protected speech is "sharply circumscribed" with narrow exceptions (quoting *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37 (1983)). *See also Texas v. Johnson*, 491 U.S. 397, 414 (1989); *Cornelius v. N.A.A.C.P. Legal Defense and Educ. Fund.*, 473 U.S. 788, 806 (1985); *Cannon*, 998 F.2d at 871–73; *Mesa*, 197 F.3d at 1047; *Church on the Rock v. City of Albuquerque*, 84 F.3d 1273, 1279 (10th Cir. 1996).

While Prater and VanNort may dispute the facts as alleged, that renders the question of qualified immunity one to be addressed after discovery, on a fully developed

factual record. *See Thompson*, 23 F.4th at 1256) ("Because they turn on a fact-bound inquiry, qualified immunity defenses are typically resolved at the summary judgment stage rather than on a motion to dismiss.")

Nor are any of the cases cited by Prater or VanNort in connection with their arguments for qualified immunity relevant to Plaintiffs' specific allegations in the Amended Complaint. *First*, *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019) and its progeny are inapposite here. Probable cause did not exist for any of Plaintiffs' felony arrests and was allegedly fabricated. Even assuming for purposes of argument that it did, the rationale of *Nieves* was based in part on concerns about officers making snap judgments in "policing certain events like an unruly protest." *Id.* at 1725. Here, the complained-of retaliation was not in the heat of the moment, but rather involved calculated specific falsehoods developed to justify the retaliatory arrests days after the mural encounter with Wald. VanNort's other authorities similarly do not involve *post hoc* invented falsehoods without which probable cause could not have been established.[22]

*Second*, Prater and VanNort offer cases that do not concern qualified immunity, such as *Price*, 873 P.2d at 1052. In *Price*, the defendant explicitly requested that a crowd engage police officers, and the Court reversed because the state did not establish that defendants' speech presented a "clear and present danger." *Id.* at 1051 (defendant asked

---

[22]      *See Frey v. Town of Jackson*, 41 F.4th 1223, 1233–34 (10th Cir. 2022) (plaintiff pleaded that officer specifically witnessed conduct that violated municipal code concerning airport security and arrested on the spot); *Craft v. White*, 840 F. App'x 372, 378 (10th Cir. 2021) ("Even without the allegedly false statements and omissions, probable cause would have existed for both crimes."); *Gonzalez v. Trevino*, 42 F.4th 487, (10th Cir. 2022) (plaintiff did not dispute the existence of probable cause).

crowd to "get them off me"). But here, as VanNort expressly acknowledges (VanNort

MTD at 13), there was no evidence that Plaintiffs intended to create or created any kind

of danger; Plaintiffs' relevant statements were directed to the officer, not to any other

plaintiff or bystander, and no one else at the protest moved closer to Wald or touched

him. *Compare id.* (describing how defendant yelled "Help me. Stop them." and "[t]he

crowd moved close enough to touch the officers, and one person may have struck an

officer.") Here, Plaintiffs neither urged anyone to take action nor advocated violence, and

none occurred. *See also Brandenburg,* 395 U.S. at 445; *Claiborne*, 458 U.S. at 927–29.

Nor did *Price* involve an arrest made after the fact, based on fabricated premises. In fact,

Price actually supports Plaintiffs' arguments.  *Price* stands for the proposition that the

Oklahoma Incitement to Riot statute must include a "clear and present danger" element to

be constitutional. *Id.* at 1052. No such "danger," let alone a "clear" one, was "present" in

the instant case.  *See* § VI.A, *infra*.

> *Third*, Prater and VanNort offer cases where qualified immunity was denied.[23]

> *Fourth*, Prater and VanNort offer cases where specific factual information was

known or reasonably believed by the officer and not where, as here, the Amended

---

[23]     *See Dodds v. Richardson*, 614 F.3d 1185, 1206–1208 (10th Cir. 2010) (affirming
denial of immunity at summary judgment stage); *Morris v. Noe*, 672 F.3d 1185 (10th Cir.
2012) (qualified immunity denied because the facts at the time of arrest did not support
probable cause for any offenses).

Complaint contains specific allegations of demonstrably untrue factual claims made by defendants to justify probable cause.[24]

*Fifth*, Prater and VanNort offer cases where qualified immunity turned on the vagueness of a law in question or lack of clarity in interpretation of a law by prior precedent, and not on, as here, specific allegations of demonstrably untrue factual claims made by defendants to justify probable cause.[25]

    B.    VanNort is not entitled to qualified immunity
             on Plaintiffs' Fourth Amendment claims.

VanNort is not entitled to qualified immunity on Plaintiffs' Fourth Amendment claims for false arrest and malicious prosecution. Here, the Amended Complaint clearly alleges that VanNort violated Plaintiffs' Fourth Amendment rights, *see supra* § II. And, those rights were "clearly established" at the time of the violations.

"In the context of a qualified immunity defense on an unlawful search or arrest claim" the Tenth Circuit asks "whether there was arguable probable cause for the

---

[24]    *See Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Medina v. Cram*, 252 F.3d 1124 (10th Cir. 2012); *Shimomura v. Carlson*, 811 F.3d 349, 353–56 (10th Cir. 2015) (case at summary judgment stage).

[25]    *See Koch v. City of Del City*, 660 F.3d 1228, 1241–46 (10th Cir. 2011) (granting qualified immunity at summary judgment stage where question of reasonable interpretation of law was at issue); *A.M. v. Holmes*, 830 F.3d 123, 1139–45 (10th Cir. 2016) (same); *Moeck v. City of Albuquerque*, 813 F.3d 912, 927–28 (10th Cir. 2015) (case turned on "reasonable mistake" in interpreting criminal statute based on law that was "not entirely clear"); *Barboza v. D'Agata*, 676 F. App'x 9, 15 (2d Cir. 2017) (mistake was "a matter of constitutional law"). In addition, Prater and VanNort offer a case that makes clear that a warrant issued by a magistrate will not protect an officer "who misrepresent[s] or omit[s] material facts to the magistrate judge." *Stonecipher*, 759 F.3d at 1141–42.

challenged conduct." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014).

VanNort argues that he is entitled to qualified immunity based on "an objectively

reasonable, even if mistaken, belief that probable cause existed." (VanNort MTD at 9.)

However, the Amended Complaint alleges that VanNort did *not* have an objectively

reasonable belief that probable cause for incitement to riot existed and that he knowingly

made factual misrepresentations and material omissions in the affidavits for Plaintiffs'

arrests. (AC ¶¶ 161–179.) Defendant VanNort ignores these allegations and instead relies

on caselaw finding qualified immunity for officers who reasonably misinterpreted a

criminal statute, (VanNort MTD at 10), which Plaintiffs do not allege occurred.

    In the Tenth Circuit, it has long been clearly established that a warrant does not

protect officers from unlawful arrest claims when plaintiffs "'make a substantial showing

of deliberate falsehood or reckless disregard for truth' by the officer seeking the warrant."

*Stonecipher*, 759 F.3d at 1142 (quoting *Snell v. Tunnell*, 920 F.2d 673, 698 (10th Cir.

1990)); *see also Stewart v. Donges*, 915 F.2d 572, 582–83 (10th Cir. 1990) ("[T]o

knowingly or recklessly omit from an arrest affidavit information which, if included,

would have vitiated probable cause" is a clearly established Fourth Amendment

violation); *DeLoach*, 922 F.2d at 619–622 ("Where the judicial finding of probable cause

is based solely on information the officer knew to be false or would have known to be

false had he not recklessly disregarded the truth, not only does the arrest violate the

fourth amendment, but the officer will not be entitled to good faith immunity under §

1983."); *Harte v. Bd. Of Comm'rs of Cnty. of Johnson, Kan.*, 864 F.3d 1154, 1163 (10th

Cir. 2017) ("The evidence presented thus gives rise to a classic *Franks* violation, a law

that was clearly established at the time of the officers' conduct in this case."); *Sanchez v. Hartley*, 810 F.3d 750, 754 (10th Cir. 2016) ("[T]he Constitution is violated when an officer knowingly or recklessly uses false information to institute legal process."); *Pierce v. Gilchrist*, 359 F.3d 1279 (2004) ("No one could doubt that the prohibition on falsification or omission of evidence, knowingly or with reckless disregard for the truth, was firmly established as of 1986, in the context of information supplied to support a warrant for arrest."). Together, these cases establish precedent that is beyond dispute: an officer does not act with arguable probable cause when he knowingly, or with reckless disregard for the truth, includes false statements in his affidavit for probable cause, and without those statements the warrant obviously lacks probable cause.

Moreover, VanNort is not entitled to qualified immunity because at the time of the arrests, no "reasonable officer could have believed that probable cause existed" to arrest Plaintiffs for Incitement to Riot. *Stonecipher*, F.3d at 1141. At the time of Plaintiffs' arrests, Oklahoma's Incitement to Riot law was clearly established and criminalized only speech that creates a clear and present danger of imminent unlawful action. *See* § I.1; *see also Price*, 873 P.2d at 1052; *Claiborne*, 458 U.S. at 928 ("When such appeals do not incite lawless action, they must be regarded as protected speech."); *Houston v. Hill*, 482 U.S. 451, 461 (1987) ("Speech is often provocative and challenging . . . . [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest").

Here, Plaintiffs allege VanNort reviewed video footage that clearly showed Plaintiffs did not pose a clear and present danger to Sgt. Wald. (AC ¶ 207); *see Baptiste*, 147 F.3d at 1256–57 (officers could not rely on security guards' allegations when officers had seen video footage of the incident, which made clear there were no "reasonable grounds" for arrest). Moreover, the police reports from Officers Long and Wald, who actually witnessed the incident, do not provide any evidence that Plaintiffs presented a clear and present danger. (AC ¶¶160–165.) A reasonable officer could not have found clear and present danger of imminent unlawful action, and thus probable cause, under these circumstances.

With respect to Plaintiffs' malicious prosecution claim, VanNort gets the legal standard wrong. VanNort argues that at the time he presented the unlawful affidavits, there was no clearly established law that a malicious prosecution claim can lie when probable cause is lacking for the charged offense but exists for a lesser, uncharged offense. (VanNort MTD at 17–18.) But the qualified immunity determination does not turn on whether a plaintiff may bring a certain cause of action; instead, it asks whether existing law gives "fair and clear warning to officers" that their conduct violates a constitutional right. *White v. Pauly*, 580 U.S. 73, 79 (2017). In other words, immunity is lacking when "the law at the time of the incident" provided "fair warning to a reasonable officer that his conduct was unconstitutional." *Lewis v. City of Edmond*, 48 F.4th 1193,

1197 (10th Cir. 2022).[26] As discussed above, Plaintiffs allege that VanNort intentionally falsified his probable cause affidavits, and in June 2020 any reasonable officer would have known that this kind of deception violates clearly established Fourth Amendment law.

Similarly, VanNort's argument that there was at least arguable probable cause to support his affidavits, based on *Price vs. State*, 873 P.2d 1049 (1994), fails for three reasons. First, it is objectively unreasonable to describe a person taking a photo for six seconds as possibly involved in a riot; taking a photo cannot be compared to striking an officer. Second, VanNort repeats his attempt to sidestep Plaintiffs' allegations that he intentionally made false statements in his affidavits. Finally, VanNort again reframes Plaintiffs' factual allegations to be read in his favor and pleads new facts, disregarding the proper legal standard at the motion to dismiss stage. (VanNort MTD at 12–13.)

As for VanNort's argument that he reasonably relied on advice from the District Attorney (VanNort MTD at 11), that is for the jury to decide. Plaintiffs have alleged that VanNort and Prater conspired to violate Plaintiffs' First and Fourth Amendment rights by fabricating a probable cause that did not exist to suppress Plaintiffs' speech and deter

---

[26]    VanNort supports his argument with unreported cases that are not analogous. *Najera v. Brookhouser*, 2020 WL 4050383, at *8 (D.N.M. July 20, 2020), involved a warrant with multiple charges including the lesser offense. *Van de Weghe v. Chambers*, 569 F. App'x 617, 620 (10th Cir. 2014), did not even mention a warrant. Both of these cases describe the probable cause standard in a way that conflicts with recent Supreme Court and Tenth Circuit case law, which has clarified that the qualified immunity analysis focuses on the objective reasonableness of the officer's conduct.

future protest. Plaintiffs are entitled to discovery and trial on these claims. If the jury

sides with Plaintiffs, qualified immunity will not shield VanNort.

Given the allegations of the Amended Complaint, this Court should reject

VanNort's qualified immunity defense.

## VII.    Plaintiff Mack Has Plausibly Alleged an Equal Protection Claim Against VanNort

Defendant VanNort contends that Plaintiff Mack fails to state an equal protection

claim because he has not alleged "that similarly-situated individuals of a different race

were not prosecuted." (VanNort MTD at 20.) Defendant VanNort's motion to dismiss

misses the mark. At issue here is whether the Equal Protection Clause provides a remedy

when law-enforcement officials intentionally disregard every aspect of the description of

a suspect except for his gender and race.

The Supreme Court has held definitively that "the Constitution prohibits selective

enforcement of the law based on considerations such as race." *Whren v. United States*,

517 U.S. 806, 813 (1996). In the context of addressing the unconstitutionality of law-

enforcement stops based on national origin, in *United States v. Brignoni-Ponce*, 422 U.S.

873 (1975), the Court held that national origin alone cannot provide a basis for even the

minimal reasonable suspicion necessary to effect a vehicular stop of individuals driving

in a car near a border to determine whether those individuals were undocumented. The

Court found that: "the officers relied on a single factor to justify stopping respondent's

car: the apparent Mexican ancestry of the occupants," and thus "[w]e cannot conclude

that this furnished grounds to believe that the three occupants were aliens." 422 U.S. at 885–86 (footnote omitted).

Mack's Equal Protection claim centers on misidentification and the indicia of animus underlying Defendant's misrepresentations throughout his pursuit of plaintiffs. As the Amended Complaint alleges, Mack was not present at the mural incident. (AC ¶ 295.) VanNort stated that he mistakenly confused Mack for Webb because the two men bore a "striking resemblance." (AC ¶ 298.) But—aside from the fact that both are Black men—the two men's physical features are nothing alike. (AC ¶ 299.) Mack stands at 6'1", while Webb stands at 5'8." *Id.* Mack has a darker skin tone and more muscular build than Webb. (AC ¶ 299.) In other words, the only "striking resemblance" between the two men is their race—nothing more. Courts have found similar misrepresentation claims, founded in an absence of probable cause for an arrest, to state an Equal Protection claim at the motion to dismiss stage. *See, e.g.*, *Wilson v. Dep't of Pub. Safety*, 66 F. App'x 791, 796 (10th Cir. 2003) (allegation that plaintiff had committed no traffic violation and "the real reason for the stop was that [he] was a black male in a predominantly non-minority area during late night"); *Watson v. Witmer*, 183 F. Supp. 3d 607 (M.D. Pa. 2016) (allegation that officer was motivated by race in improperly arresting plaintiff, who "could not reasonably have been confused" with perpetrator).

VanNort had another reason to target Mack: he knew Mack was a leader at the George Floyd protests, and he found a photo in which Mack appeared with Plaintiff

Terry, both raising their fists in front of the Black Liberation flag.[27] (AC ¶ 300.) The mistaken presumptions that VanNort drew from Mack's leadership in the protests and association with Black Liberation and Terry give rise to the inference that VanNort was "acting on the basis of stereotype or prejudice rather than evidence." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1170 (10th Cir. 2003).

Contrary to VanNort's argument, Mack need not identify a specific, similarly situated comparator to survive a motion to dismiss. Mack need only allege facts giving rise to the plausible inference that VanNort's action had a discriminatory effect and was motivated at least in part by a discriminatory purpose. *Marshall*, 345 F.3d at 1168; *Vill. of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977). While a statistical showing may be required to establish selective enforcement in defense to a criminal prosecution, *United States v. Armstrong*, 517 U.S. 456, 465 (1996), in a civil context Mack may rely on "traditional modes of proof before a jury." *Marshall*, 345 F.3d at 1168. This includes direct evidence of VanNort's behavior, VanNort's own statements and testimony, and VanNort's record of racially selective law enforcement under similar circumstances. *Id.*

Furthermore, even when selective prosecution is raised as a defense to criminal charges, courts have allowed discovery before disposing of the defense, recognizing the

---

[27]     The raised fist "has been an emblem of the racial justice movement signifying power, pride, perseverance, and solidarity" since the 1960s. (AC ¶ 102.)

inherent difficulty of requiring Plaintiffs to meet a similarly-situated requirement without

access to law enforcement records.[28]

In response to VanNort's contention that he had nondiscriminatory reasons to

issue the false arrest warrant against Mack, the Court should not consider VanNort's

defenses at the motion to dismiss stage.[29] Under Rule 12(b)(6), all factual allegations are

to be taken as true and reasonable inferences are to be drawn in favor of the plaintiff. *See,*

*e.g.*, *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). The contention that Mack was

---

[28]     *See, e.g. United States v. Bernard*, 2010 WL 11619295, at *6–7 (D.N.M. July 19,
2010) ("It is difficult to fathom how a defendant could ever show discriminatory effect in
the context of a regulatory truck inspection."); *United States v. Mesa-Roche*, 288 F. Supp.
2d 1172, 1186–88 (D. Kan. 2003) (discussing the difficulty of showing that "a similarly
situated individual was not stopped" even with discovery). Mack was *the only person*
falsely accused of being present at the Mural Incident. Therefore, VanNort's argument
that Mack should offer comparators of "similarly-situated individuals of a different race
who were not accused of or arrested for incitement to riot" makes no sense. If necessary,
however, Mack offers as potential comparators Hispanic men who were active at the
George Floyd protests, not present at the mural incident, and not falsely issued a warrant
for incitement to riot (in other words, not mistaken for Preston Nabors); and white
women who were active at the George Floyd protests, not present at the mural incident,
and not falsely issued a warrant for incitement to riot (in other words, not mistaken for
Mia Hogsett).

[29]     Indeed, the cases cited by VanNort are inapposite for various reasons, including
the fact that they all arose from traffic stops. In *McCoy v. City of Indep.*, the court held on
summary judgment that there was no genuine issue of material fact as to the equal
protection claim. 2013 WL 4517535, at *7 (D. Kan. Aug. 26, 2013). In *Diallo v.
Milligan*, the court considered allegations that police officers had planted drugs in
plaintiff's vehicle and held that the plaintiff had not sufficiently pled an equal protection
claim because there were no allegations that the police pretextually pulled plaintiff or
exhibited racially discriminatory behavior during the stop. 2019 WL 3302166, at *10 (D.
Colo. July 23, 2019). In contrast, plaintiff Mack has pled that VanNort's issuance of a
warrant against Mack was racially motivated in that he identified Mack based entirely on
his race, ignoring Mack's other identifying features. Finally, the Supreme Court dealt
with an incarcerated plaintiff and did not discuss equal protection claims in *Daniels v.
Williams*, 474 U.S. 327 (1986).

targeted solely on the basis of his race and to the exclusion of all other nonracial

descriptive information is the express, core, and oft-repeated factual contention of the

complaint. (*See, e.g.*, AC ¶¶ 299–300.)

Based on these allegations, the court may plausibly infer that VanNort issued a

false warrant against Mack at least in part because of the color of his skin. This Court

should deny VanNort's motion to dismiss the Equal Protection claims.

## VIII.   *Heck v. Humphrey* Does Not Bar Plaintiffs' Claims.

Defendants incorrectly contend that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars

the claims of Plaintiffs Terry, Hogsett, Baker, Nabors, and Webb because they pled guilty

to obstructing an officer under 21 O.S. § 450. *Heck* prohibits plaintiffs from recovering

damages in § 1983 actions that would "necessarily imply the invalidity" of their criminal

convictions. *Id*. at 487. Defendants' *Heck* arguments fail for three reasons.

*First*, "the Heck bar does not apply to plaintiffs who have no available habeas

corpus remedy." *Morris v. Noe*, 672 F.3d 1185, 1193 n.2 (10th Cir. 2012).[30] Here,

Plaintiffs are not in custody, and their deferred judgments[31] do not restrain their liberty

sufficiently to permit them to invoke habeas corpus. *Klen v. City of Loveland*, 661 F.3d

---

[30]    *Accord Cohen v. Longshore*, 621 F.3d 1311, 1317 (10th Cir. 2010) ("[A] petitioner who has no available remedy in habeas, through no lack of diligence on his part, is not barred by Heck from pursuing a § 1983 claim"), citing *Spencer v. Kemna*, 523 U.S. 1 (1998) (plurality opinion; five justices agreed that *Heck* does not apply if no habeas remedy is available).

[31]    *See* AC ¶¶ 253, 262, 268, 281, 290 (describing plea agreements).

498, 515–16 (10th Cir. 2011).  Because Plaintiffs have no access to habeas corpus proceedings, *Heck* does not bar their § 1983 claims.

*Second*, even if the lack of a habeas corpus remedy did not dispose of the issue, *Heck* still would not apply because Plaintiffs' claims, even if successful, would not invalidate their obstruction convictions. This litigation challenges Defendants' conduct in arresting and prosecuting Plaintiffs for incitement to riot under 21 O.S. § 1320.2—entirely separate charges that Defendant Prater ultimately dismissed. (AC ¶¶ 253, 262, 268, 281, 290.) Plaintiffs Terry and Baker also bring claims arising out of their arrest and detention for disorderly conduct—an additional set of charges that Defendants never pursued to conviction. (AC ¶ 152.) Under *Heck*¸ if "the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Heck*, 512 U.S. at 487.

*Butler v. Compton*, 482 F.3d 1277 (10th Cir. 2007), supplies the governing rule. In that case, the plaintiff had sued an officer for an allegedly false arrest that culminated in a burglary charge. *Id*. at 1280. That charge was later dismissed as part of a plea agreement in which the plaintiff pled guilty to three unrelated burglary charges. *Id*. The district court initially applied *Heck* to the plaintiff's § 1983 claims, reasoning that since all the charges were part of the same plea agreement, a challenge to one impugned the validity of all. *Id*. The Tenth Circuit reversed, holding that *Heck* only applies to convictions "actually related to the conduct alleged in the § 1983 action." *Id*. Thus:

> Mr. Butler's § 1983 action seeks compensatory and punitive damages based on conduct that occurred during an arrest by Officer Compton that resulted in two burglary charges. Mr.

> Butler was not convicted on those charges because they were
> dismissed as part of a plea agreement. There is no related
> underlying conviction therefore that could be invalidated by
> Mr. Butler's § 1983 action.

*Id.* So too here. Plaintiffs may challenge their arrest and detention for incitement to riot

without disturbing their guilty pleas to obstruction.

*Heck* does not bar Plaintiffs' claims because a judgment in their favor in this

action "would not necessarily imply the invalidity" of their obstruction convictions.

*Martinez v. City of Albuquerque*, 184 F.3d 1123, 1125 (10th Cir. 1999); *Montoya*, 2021

WL 1244264, at *24–26. As described in section II.A, Plaintiffs have pled in detail all the

ways in which Defendants attempted to manufacture a probable cause that did not exist

(AC ¶¶ 185–208), and the harms they suffered (AC ¶¶ 305–354). But a complete victory

on Plaintiffs' claims will establish only that Defendants acted unlawfully in pursuing the

incitement arrests and charges. Plaintiffs' convictions for obstructing an officer will

remain intact, as there is no overlap between the obstruction charges and the dismissed

incitement charges giving rise to Plaintiffs' federal claims. *See supra* n.4.

*Finally*, the Tenth Circuit has held repeatedly that Heck does not apply to Fourth

Amendment claims, including claims for unlawful arrest or detention. *See, e.g.*, *Laurino*

*v. Tate*, 220 F.3d 1213, 1217 (10th Cir. 2000) ("[A] suspect's proof that police lacked

probable cause to arrest him does not necessarily imply the invalidity or unlawfulness of

his conviction for the underlying offense."); *Beck v. City of Muskogee Police Dep't*, 195

F.3d 553, 558 (10th Cir. 1999) (*Heck* did not bar plaintiff's § 1983 claim for illegal arrest

and one of his claims for malicious prosecution where neither claim implicated the

validity of his probation revocation); *Martinez*, 184 F.3d at 1125–26 (finding that *Heck* did not bar a § 1983 claim for excessive force under the 4th Amendment where plaintiff did not challenge the lawfulness of his conviction for resisting arrest, but rather alleged that defendants "effectuated a lawful arrest in an unlawful manner"). As a New Mexico district court explained, "ultimate success on such a claim does not necessarily question the validity of an underlying conviction, due to doctrines such as independent source, inevitable discovery, and harmless error." *Villa v. Dona Ana Cnty.*, 2010 WL 11619163, at *6 (D.N.M. Sept. 14, 2010). There is a narrow exception for circumstances where success on the Fourth Amendment claim necessarily negates the conviction, such as when the claim is for unlawful arrest and "the lawfulness of the arrest is a necessary element of the criminal offense charged." *Martinez*, 184 F.3d at 1125. But this narrow exception does not apply here.

For all of these reasons, *Heck* does not bar Plaintiffs' claims.

## IX.    Prater's Extra-Record Submissions Are Improper on a Motion to Dismiss.

In considering a Rule 12(b)(6) motion, the Court examines only the plaintiff's complaint and determines whether the complaint alone is sufficient to state a claim. *Carter v. Daniels*, 81 F. App'x 83 (10th Cir. 2004).  The Court should not consider evidence beyond the pleadings. *Douglass v. Garden City Cmty. Coll.*, 2021 WL 1978677 (D. Kan. May 18, 2021). Three limited exceptions exist to this general rule: (i) documents that the complaint incorporates by reference (*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007));  (ii) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents'

authenticity" (*Jacobson v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); and

(iii) "matters of which a court may take judicial notice" (*Tellabs*, 551 U.S. at 322).

In support of his Motion to Dismiss, Prater relies on an extraordinary array of extra-record multimedia exhibits, the written documents alone constituting hundreds of pages.  Prater seeks to have these exceptions swallow the general rule, asking the Court to make factual determinations, in a pre-answer motion, on allegations that Plaintiffs have not yet had the opportunity to develop through discovery. The Court should not review these extra-record materials.

For example, the photos of the mural event and the permit secured by Plaintiffs, while providing the context for the mural event, are not relevant to the Court's determination of whether Plaintiffs' constitutional rights were violated. None of Plaintiffs' claims rest on whether the City granted a permit, and Prater exhibits these materials simply to demonstrate that the Plaintiffs received a permit and that barricades were moved northwards, neither of which Plaintiffs dispute.

This Court should similarly exclude the video evidence Prater submitted. While the Amended Complaint refers generally to videos taken at the mural event, Plaintiffs do not rely on the content of these videos to support their claims at the pleading stage. To the extent that the Court finds that the video evidence is central to Plaintiffs' claims, the Court should nonetheless confine its analysis to the Complaint as the video evidence does not clearly contradict the allegations in the Complaint. *See e.g.*, *Blackmore v. Carlson,* 574 F. Supp. 1012 (D. Utah. 2021); *Myers v. Brewer*, 773 F. App'x 1032 (10th Cir. 2019).

While Plaintiffs refer to police reports in the Complaint, Plaintiffs do not discuss these voluminous reports in detail. Defendant Prater should not, on a pre-answer motion, be entitled to provide a one-sided reading of these reports, particularly given Plaintiffs' contentions regarding the reports elaborated in the Complaint.

Ultimately, even if the evidence submitted by Defendant Prater falls into one of the limited exceptions to the general rule, the Court has discretion whether it should consider this extra-record evidence on a motion to dismiss. *See, e.g.*, *Prager v. LaFaver*, 180 F.3d 1185 (10th Cir. 1999); *Lingenfelter v. Bd. of Cnty. Comm'rs of Reno Cnty., Kan.*, 359 F. Supp. 2d 1163 (D. Kan. 2005). However, it is not the Court's role in a Rule 12(b)(6) motion to resolve factual disputes. *Douglass v. Garden City Cmty. Coll.*, 2021 WL 1978677 (D. Kan. May 18, 2021). Where the facts are heavily contested, and any reference in the Amended Complaint to the evidence submitted by Defendant Prater was tangential, the Court should exercise its discretion not to consider the extra-record materials on this Rule 12(b)(6) motion.

To the extent extra-record materials are considered other than in accordance with the limited exceptions to the general rule, the Court must convert the Rule 12(b)(6) motion into a motion for summary judgment. *GFF Corp. v. Associated Wholesale Grocers, Inc*., 130 F.3d 1381 (10th Cir. 1997). Failure to do so constitutes reversible error. *Id.* Given the contested issues of fact in this case, converting Defendant Prater's Motion to Dismiss into a summary judgment motion without affording Plaintiffs an opportunity to engage in discovery would cause substantial prejudice to Plaintiffs.

Prater seeks to simplify the factual issues involved in this case by creating a one-side, pre-answer factual record. But this Court should not permit Prater to tell his story as if it is the only one.  This Court should decline to consider Prater's extra-record evidence.

## X.    Prater Is Not Entitled to Eleventh Amendment Immunity.

Prater seeks to dismiss Plaintiffs' claims brought against him in his official capacity as barred by the Eleventh Amendment.[32] This argument fails because Plaintiffs allege ongoing violations and seek prospective relief. Furthermore, Plaintiffs do not seek to enjoin Prater as an individual but rather the District Attorney as an official. It does not matter whether Prater leaves office in January 2023 because his successor will be available to carry out the terms of the injunction, which would be against the office and not the individual.

As Prater concedes, a longstanding exception to states' sovereign immunity allows plaintiffs to "bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012); *see generally Ex parte Young*, 209 U.S. 123 (1908). *Ex parte Young* applies to claims for prospective injunctive and declaratory relief. *MCI Telecomms. Corp. v. Pub. Serv. Comm'n*, 216 F.3d 929, 935 (10th Cir. 2000). When a state official is sued in their official capacity for prospective relief, the state actor is a "person" subject to § 1983

---

[32]     Plaintiffs also sued Prater in his individual capacity for money damages, (AC ¶¶ 389, 415), but he did not seek dismissal of those claims under the Eleventh Amendment. Nor could he. *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011).

because "'official capacity actions for prospective relief are not treated as actions against the State.'" *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (quoting *Kentucky v. Graham*, 473 U.S. 159 n.14 (1985)); *Ex parte Young*, 209 U.S. 123, 159–60 (1908).

Plaintiffs' Amended Complaint clearly meets the *Ex parte Young* standard. Plaintiffs have sued Defendant Prater "in his official capacity for injunctive relief." AC ¶¶ 389, 415. Plaintiffs have requested a declaration that Defendants have violated their constitutional rights, and specifically seek to "enjoin the District Attorney from further prosecution against Plaintiffs or other racial justice protestors for engaging in First Amendment-protected speech." (AC at 102.) The final injunctive relief sought by Plaintiffs for violations of their First Amendment rights is entirely forward looking.[33]

Plaintiffs may seek this relief because they intend to continue protesting, which places them at risk of additional retaliatory prosecution in the future. (AC ¶¶ 310, 314, 327, 331, 336, 340, 334.) Plaintiffs have shown a "likelihood of substantial and immediate irreparable injury"[34] as Prater arrested and prosecuted them without probable cause in an effort to silence their constitutionally protected speech. And they suffer the "ongoing injury"[35] of chilled speech resulting from this prosecution. (AC ¶¶ 305–354.)

---

[33]    Plaintiffs have not moved for a preliminary injunction. For this reason, this Court need not address the arguments raised on pages 10–11 of Prater's brief.

[34]    *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974)); *Beattie v. United States*, 949 F.2d 1092, 1093 (10th Cir. 1991); ECF 40.

[35]    *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003).

Plaintiffs' choice not to engage in First Amendment protected protest activity is not mere "subjective chill," but an "objectively justified fear of real consequences." *Swepi, LP v. Mora Cnty., N.M.*, 81 F. Supp. 3d 1075, 1154–55 (D.N.M. 2015) (quoting *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1088 (10th Cir. 2006)); *see also D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004). Plaintiffs have all been criminally charged and prosecuted without probable cause for protected protest activity in which they plan to continue engaging. Moreover, Prater has given no indication that the office of the Oklahoma County District Attorney plans to alter its prosecution of racial justice protesters. Rather, Prater has signaled that he intends to continue charging protesters with the explicit intent of deterring their protest activities. (AC ¶ 211.) Plaintiffs' fear of additional prosecution by the Oklahoma County District Attorney is objectively credible and is the cause of their ongoing chilled speech, a constitutionally significant harm that this Court can remedy by enjoining Prater, in his official capacity, from prosecuting Plaintiffs or other racial justice protestors for engaging in First Amendment-protected speech in the future.

Thus, Plaintiffs' claims against Defendant Prater in his official capacity for prospective injunctive relief are not barred by the Eleventh Amendment.

## **CONCLUSION**

For the reasons set forth herein, Defendants' motions should be denied.

Respectfully submitted,

/s/ Megan Lambert
Megan Lambert
Johanna Roberts
AMERICAN CIVIL LIBERTIES UNION
    OF OKLAHOMA FOUNDATION
PO Box 13327
Oklahoma City, OK 73113
mlambert@acluok.org
hroberts@acluok.org

Anjana Malhotra*
Ranit Patel*
Karina Tefft*
Claudia Wilner*
NATIONAL CENTER FOR LAW AND
    ECONOMIC JUSTICE, INC.
50 Broadway, Suite 1500
New York, NY 10004
malhotra@nclej.org
patel@nclej.org
tefft@nclej.org
wilner@nclej.org

Thomas E. Riley*
Barron M. Flood*
HERBERT SMITH FREEHILLS NEW
    YORK LLP
450 Lexington Avenue
New York, NY 10017
thomas.riley@hsf.com
barron.flood@hsf.com

*Counsel for Plaintiffs*

*Admitted pro hac vice*

76

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2022, I electronically filed the foregoing brief with the Clerk of Court via the Court's CM/ECF system, which effects service upon all counsel of record.

Respectfully submitted,

*/s/* Megan Lambert
Megan Lambert
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF OKLAHOMA
P.O. Box 13327
Oklahoma City, OK 73113
Tel.: 405-524-8511
mlambert@acluok.org

*Counsel for Plaintiffs*