# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

SINCERE TERRY, *et al.,*

     Plaintiffs,

v.

                            **Case No. 22-cv-522-C**

CITY OF OKLAHOMA CITY, *et al.,*

     Defendants.

## DEFENDANT DAVID PRATER"S REPLY TO MOTION TO DISMISS

Defendant, David Prater files this Reply to Plaintiffs' Response to Motion to Dismiss. [Doc. 45]. In support, Prater shows this Court the following:

## GENERAL RESPONSE

Plaintiffs' Response [Doc. 45] to Prater's Motion to Dismiss [Doc. 40] rehashes their irrelevant background facts about protests across the country in response to George Floyd's death. Plaintiffs admit Prater is entitled to "absolute immunity" for his actions as a prosecutor[1], but then claim the Amended Complaint's conclusion of "giving advise" to VanNort in drafting the Arrest Affidavits is not covered by that immunity. Yet, Plaintiffs fail to allege **what facts** Prater advised VanNort to include in the Affidavits that Prater knew were false or not supported by Probable Cause. Plaintiffs allege Prater reviewed the videos, but then fail to admit those videos clearly established their guilt in "obstructing" Wald in his attempt to do his job, and for which Plaintiffs' pled guilty.[2]

Plaintiffs characterize their own overly generalized hate speech as protected under the constitution. While that may (or may not) be true, they demonstrate their own hypocrisy as others who claim "**all** BLM protestors" are guilty of rioting, looting, and destruction of property, because

---

[1]*See* Plaintiffs' footnotes 3 and 21. [Doc. 45].

[2]Further proof that this court can review the videos attached to Prater's motion to dismiss.

"**all** police officers" are not guilty of police brutality. Finally, police and prosecutors acting together in an investigation is not on its face a "conspiracy" to violate the constitution. One would hope that law enforcement and prosecutors do work together when gathering facts of criminal activity.[3] While Plaintiffs argue this Court should not review the videos, pictures and other documentation attached to Prater's Motion to Dismiss, this Court can (and must) review that documentation as Plaintiffs have alleged in their Amended Complaint the affidavits contained false information. [Doc. 39, ¶¶ 144–146 (The probable cause affidavits from the June 24, 2020 incident state that the encounter was live streamed and "contain numerous misrepresentations and material omissions."); ¶¶ 153–171 (claiming that Defendant VanNort must have conspired with Defendant Prater because his affidavits do not align with the prior written reports); ¶ 207 ("Fourth, video evidence clearly shows that" the statements made in the probable cause affidavits were false)]. However, when a Complaint challenges an Arrest Affidavit because it contains false information, then the Affidavits' supporting documentation should be incorporated into the Complaint, and if it clearly contradicts Plaintiffs' version of the facts pled, the Court should dismiss that claim. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322, 127 S. Ct. 2499 (2007)("courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Caldwell v. University of New Mexico Board of Regents*, 510 F.Supp.3d 982 (2020)(discussing the three instances when a Court can refer to attached documents when ruling on a motion to dismiss); *see also*, Fed. R. Civ. P. 11(factual contentions must have evidentiary support.) Prior to filing their Amended Complaint, Plaintiffs were provided the videos which dispute their version of the events; Plaintiffs clearly interfered with Wald, and escalated the Police Department foyer event by refusing

---

[3]Prater in no way admits to helping, assisting or advising VanNort in his investigation.

to leave when requested, and then advocating to burn down the station. The attachments referenced in Plaintiffs' Amended Complaint, are central to their claims, and they have not disputed their authenticity. Therefore, it is proper for this Court to consider the attachments when addressing Prater's Motion to Dismiss.

## QUALIFIED IMMUNITY

With Plaintiffs' admission that Prater is entitled to absolute prosecutorial immunity, pursuant to *Imbler* and its progeny, for all of the allegations in the Amended Compliant with the exception of giving VanNort "advice" in drafting the Arrest Affidavits, there still remains the question of whether Prater is entitled to ***qualified immunity***. Plaintiffs' (apparent) understanding of that important doctrine and how it interacts with *Twombly* is deficient, as a state official can only be held liable under § 1983 when the Probable Cause Affidavit contains false accusations not supported by probable cause. *Malley v. Briggs*, 475 U.S. 335, 345 (1986)(Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, will the shield of immunity be lost) ); *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997) ("We do not depart from our prior cases that have recognized that the prosecutor is fully protected by absolute immunity when performing the traditional functions of an advocate").

When addressing a Response to a Motion to Dismiss pursuant to *Twombly* when qualified immunity is claimed, the Court in *Ashcroft vs. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) held that "the sufficiency of [the] pleadings [are] both inextricably intertwined with, and directly implicated by the qualified immunity defense." (*Id.* at 673 [internal citations omitted]). This is especially true when the allegations against a Defendant relate to conspiracy to commit fraud in an arrest warrant. Fed. R. Civ. P. 9(b). "The requirements of Rule 9(b) must be read in conjunction with the principles of Rule 8, which calls for pleadings to be 'simple, concise, and direct … and to be construed as to do substantial justice.'" *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997);

*Scott v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000) ("[W]holly conclusory" allegations of conspiracy cannot survive dismissal). "At a minimum, Rule 9(b) requires a plaintiff [to] set forth the who, what, when, where, and how of the alleged fraud." *United States ex rel., Schwartz v. Coastal Healthcare Group, Inc.*, 232 F.3d 903 (10th Cir. 2000) (unpublished table decision). Allegation only a violation of abstract rights, without more, is insufficient because "general statement of law are inherently incapable of giving fair and clear warning" to a government actor. *White v. Pauly,* 580 U.S. 73 (2017). The Amended Complaint does not make any allegations of **fact** as to "who, what, when, where, and how" Prater's alleged "advice" was fraud or misrepresented the facts in the Affidavits, nor does the Amended Complaint allege factual allegations (other than conclusory statements and opinions) that qualify as constitutional violations to commit conspiracy. This pleading requirement corresponds with the well-established rule for pleading § 1983 claims in the Tenth Circuit. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (the complaint must allege specifically who, did what, to whom, in order to establish **personal participation** by each defendant).

Plaintiffs have not alleged sufficient facts to show this Court that Prater was even involved with VanNort in drafting the probable cause affidavits. *Alfaro-Huitron*, 982 F.3d, at 1262 (Mere speculation of an agreement will not do); Restatement (Third) of Torts: Liab. For Econ. Harm § 27 cmt. c. (2019) ("A conspiracy is not proven by showing a mere relationship or association between the accused parties, nor can a finding of conspiracy be based just on suspicion."). Prater and VanNort's conduct, as alleged in the Amended Complaint, is more appropriately classified as independent action. *Twombly*, 550 U.S., at 519 (A plaintiff "must include evidence tending to exclude the possibility of independent action.").

Furthermore, Plaintiffs' Response has failed to meet their burden under qualified immunity analysis by producing case law which would have alerted Prater that what he is alleged to have done would have violated Plaintiffs' "clearly established" rights. *Medina v. Cram*, 252 F.3d 1124, 1128

(10th Cir. 2001)(its Plaintiff's burden); *City of Tahlequah v. Bond*, 595 U.S. ___ (2021) ("It is not enough that a rule be suggested by then-existing precedent: the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted"); *District of Columbia v. Wesby*, 583 U.S. ___ (2018)(we have stressed the need to "identify a case where an officer acting under **similar circumstances** . . . was held to have violated [federal law]"); *see also*, *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016) (internal quotation marks omitted). Plaintiffs' Response does what the Supreme Court has continuously cautioned lower courts against— defining the "clearly established" prong of qualified analysis at a high level of generality. *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Even though Plaintiffs have not disputed they must produce case law that defines their "clearly established rights," they still have failed to show this Court any Tenth Circuit or Supreme Court case law that defines their claims (***with particularity***) through the lens of their Amended Complaint's factual allegations against Prater. *Ashcroft v. al–Kidd*, 563 U.S. at 741(In the final analysis, existing precedent must have placed the constitutional question beyond debate). The very fact that courts may disagree on the "contours of existing law" is enough to grant qualified immunity. *See City of Tahlequah, supra.*

The Amended Complaint lacks factual substance of any misrepresentations made by Prater. For instance, Plaintiffs allege the Affidavits' description of their encounter with Wald as "rioters" is (in their opinion) a "gross contrivance." [Doc. 39, ¶ 205]. However, Plaintiffs' opinions are irrelevant to qualified immunity analysis. The videos clearly show Plaintiffs' actions were threatening and any reasonable officer in Wald's position would have believed he was being threatened, especially under the circumstance that existed at that time, *i.e.,* the previous days and nights when **some** (not necessarily Plaintiffs) had rioted and looted in downtown Oklahoma City.

Plaintiffs also claim Nabors did not "hold up his AR-22 rifle in the air" claiming he merely showed it to Webb and then returned it to his car. [Doc. 39 ¶ 206]. Again, the way Nabors held his

rifle is an opinion, and the fact that Nabors admits to bringing an AR-22 rifle to an area where violent rioting had been occurring is suspicious. While one suspicious fact (in isolation) does not make probable cause, when combined with all other factors (*i.e.*, rioting the previous nights) such conduct can rise to the level of justifiable probable cause. *Illinois v. Gates*, 462 U.S. 213, 230–31, 103 S. Ct. 2317 (1983) (Probable cause is premised on the "totality of the circumstances" not any one isolated indicator).

Furthermore, Plaintiffs' allegation of "misrepresentations" in paragraph 207 ([Doc. 39]) are (again) "their opinion" and contrary to the facts clearly visible on the videos. That allegation is not relevant when determining qualified immunity. In determining whether to grant qualified immunity the relevant question is: Would a reasonable officer in VanNort's situation believe his actions would violate the constitution? *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018) ("The totality of the circumstances requires courts to consider the whole picture" and not to review the facts in isolation). More precisely as relevant to determining Prater's entitlement to qualified immunity is: Would Prater in giving VanNort (unspecified) "advice" in drafting the arrest affidavits, know that such (unknown) advice would violate Plaintiffs' constitutional rights? Plaintiffs' opinions and beliefs are irrelevant as to a Court's determination of probable cause and qualified immunity. *See Whren v. United States*, 517 U.S. 806 (subjective intentions play no role in ordinary, probable-cause Fourth Amendment Analysis). The "subjective good faith or bad faith of government actors is ordinarily irrelevant to the objective inquiry whether a reasonable officer would have realized that his conduct was unlawful." *Meyer v. Bd. of Cty. Comm'rs*, 482 F.3d 1232, 1242 (10th Cir. 2007). "Defendants' entitlement to qualified immunity[] turn[s] on an individual assessment of each defendant's conduct and culpability." *Pahls v. Thomas*, 718 F.3d 1210, 1233 (10th Cir. 2013). The standard is, would a reasonable Prosecutor in the same position as Prater, have known that his unspecified actions in "advising" VanNort would violate Plaintiffs' constitutional rights? The Amended Complaint does not

allege what assistance Prater gave VanNort in drafting the Affidavits. Therefore, Prater is entitled to qualified immunity.

Finally, Plaintiffs have not produced any case law that would have alerted Prater that his alleged actions in "advising" VanNort in drafting the Affidavits would violate Plaintiffs' constitutional rights. *District of Columbia v. Wesby*, 583 U.S. ____ (2018) (it's Plaintiffs' burden). The allegations must be particularized and specific. *Id*. They cite *Burns v. Reed*, 500 U.S. 478 (1991) with its **generalized** holding that "giving advise" is not covered in a prosecutor's "absolute immunity" defense, but instead covered by possible "qualified immunity" based on "clearly established law." That case involved a specific allegation that a prosecutor advising the police that a confession obtained through hypnosis was reasonable. The Court in *Burns* did not address whether the prosecutor was entitled to qualified immunity. It only held that a prosecutor's actions in "giving police advise" was not covered under *Imbler's* absolute immunity defense. That was only a generalized holding, and insufficient to comply with Plaintiffs' burden of producing a case on point. *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016).

Plaintiffs only other cases are district court cases, which cannot meet the "clearly established law" burden to overcome Prater's qualified immunity defense. The failure to identify such a case is fatal to Plaintiffs' claims. *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013); *Ashcroft v. al–Kidd*, 563 U.S. at 741(In the final analysis, existing precedent must have placed the constitutional question **beyond debate**). As such, Plaintiffs have failed to meet their burden of producing a case on-point that would have alerted Prater that his actions of giving unspecified advice would have violated "clearly established law." Therefore, Prater must be granted qualified immunity.

### *HECK v. HUMPHREY* DOES BAR PLAINTIFFS' CLAIMS

Plaintiffs' arguments against the application of *Heck* misses the point. It is Plaintiffs' **collateral attack** on their criminal "**conduct**" for which they pled guilty, that is the touchstone of

*Heck's* application. Plaintiffs' claim their "conduct" in obstructing Wald was protected by the "First Amendment" regardless of probable cause. Yet they pled guilty to "obstruction of an officer" for that very conduct. OKLA. STAT. tit. 21 § 540.[4]  If ***probable cause*** exists for a crime premised on that same "conduct", then *Heck* applies. *Nieves v. Bartlett*, 587 U.S. ___ (2019) (the presence of "probable cause" invalidates both First Amendment retaliatory arrest and prosecution claims).

It is Plaintiffs' "collateral attack" on their criminal conviction that is the cornerstone of *Heck v. Humphrey*. The Supreme Court in *Heck* made that point clear, when discussing the common law rule, that Courts should not allow a criminal conviction to be collaterally attacked in a civil proceeding seeking damages. *Heck* at 487. See *Carbajal v. Hotsenpiller*, 524 F. App'x 425, 428 (10th Cir. 2013) (unpublished) ("A plaintiff's inability to obtain habeas relief lifts the <u>Heck</u> bar only if that 'inability is not due to the petitioner's own lack of diligence.' "). In this case, Plaintiffs have not sought to invalidate their convictions for their "conduct" of obstruction of an officer by a **reversal, expungement, invalidation <u>or</u> through issuance of a writ of habeas corpus**. *Heck* at 487-488. "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Id*. It is not whether *habeas* is available or not that is the central issue under *Heck*, but instead whether the conviction has been invalidated, reversed, or expunged. Since Plaintiffs have not pled their convictions have been invalidated, *Heck* bars their § 1983 claims for damages.

---

[4]"Any person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his or her office, is guilty of a misdemeanor. Nothing in this section shall preclude a person from recording the activity of law enforcement in a public area, as long as the recording activity does not delay or obstruct the law enforcement agent in his or her duties."

## THIS COURT MUST DISMISS ALL CLAIMS AGAINST
## PRATER SUED IN HIS OFFICIAL CAPACITY

This Court must dismiss Plaintiffs' claims against Prater in his official capacity. Any claim seeking only damages against him in his "official capacity" should be dismissed not because of the Eleventh Amendment, but instead because he is not a "person" under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). If Plaintiffs are seeking only "prospective injunctive relief" pursuant to *Ex parte Young*, 209 U.S. 123 (1908) then they must allege (and eventually prove) they have Article III standing.

*Ex parte Young* reflects the Supreme Court's strict adherence with Article III's standing requirements. See *Ex parte Young*, 209 U.S. 123, 149-156 (1908)(requiring nexus between the injury and the alleged violator's conduct). Article III limits the judicial power of the United States to the resolution of "Cases" and "Controversies," and "'Article III standing ... enforces the Constitution's case-or-controversy requirement.' " *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 126 S. Ct. 1854 (2006) (quoting *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11, 124 S. Ct. 2301 (2004)). To establish Article III standing, a plaintiff must show: (1) "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) **actual or imminent, not conjectural or hypothetical"**; (2) "a causal connection between the injury and the conduct complained of—the injury has to be fairly ... traceable to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the court"; and (3) "it must be likely, as opposed to **merely speculative**, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130 (1992) (omissions in original) (internal quotation marks and citations omitted)[emphasis added]. *Hein v. Freedom From Religion Foundation, Inc*., 551 U.S. 587, 127 S. Ct. 2553 (2007) ("A plaintiff must allege personal injury fairly

traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.").

Plaintiffs have not alleged they are going to continue to protest **and** not violate the law by obstructing any law enforcement officer in violation of OKLA. STAT. tit. 21 § 540, or by not threatening to burn down the Police Station. Furthermore, they have not alleged that Prater or his successor has threatened them with future arrests if they simply peaceably protest. Without those allegations, they have no standing to sue Prater in his official capacity because their claims are not "actual or imminent" but instead are "conjectural or hypothetical." *Lujan*, 560-561. As such, this Court must dismiss Prater from this lawsuit for all claims against him in his official capacity as merely "speculative."

Respectfully submitted,


_/s/_ Kevin McClure
**KEVIN McCLURE, OBA#12767**
**JESSICA A. WILKES, OBA#34823**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st St.
Oklahoma City, OK 73105
Telephone:    405.521.3921
Facsimile:    405.521.4518
Email: kevin.mcclure@oag.ok.gov
        jessica.wilkes@oag.ok.gov
*Attorneys for David Prater*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of November 2017, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing. I further certify that a true and correct copy of the foregoing document was sent via the ECF System to all counsel of record who are ECF participants.

*/s/* Kevin McClure

Kevin McClure
