IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) SINCERE TERRY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. CIV-22-522-C |
| ) | |
| (1) CITY OF OKLAHOMA CITY, ) | |
| OKLAHOMA, a municipality, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT VANNORT'S REPLY TO PLAINTIFFS'
CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION
TO DISMISS THE AMENDED COMPLAINT**

Individual defendants named in a §1983 action may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law.  *Irizarry v. Yehia*, 38 F. 4th 1282, 1287 (10th Cir. 2022). When a defendant invokes qualified immunity, in order to overcome the defense, the plaintiff must show both that the defendant's actions violated a constitutional or statutory right and that the right was clearly established at the time of the defendant's conduct. *Id.*  It is somewhat surprising Plaintiffs choose to rely on *Irizarry*, which was decided in 2022, to define the right at issue because cases decided after the alleged constitutional violation are of no use in the inquiry into whether the law was clearly established.  *Lewis v. City of Edmond*, 48 F. 4th 1193, 1199 (10th Cir. 2022), quoting *City of Talequah v. Bond*, 142 S. Ct. 9, 211 L.Ed. 170 (2021).   A reasonable officer is not required to foresee judicial decisions that do not yet exist. *Lewis* at 1199, citing *Kisela v. Hughes*, 138 S. Ct. 1148, 1154, 200 L. Ed. 2d 449 (2018).

Assuming Detective VanNort could have foreseen the analysis of *Irizarry*, however, he would have learned that an individual has a First Amendment right to film the police performing their duties in public which is violated when a police officer physically interferes with the filming by shining a flashlight into the camera or directs violence at the individual by driving his police car directly at him. *Irizarry* at 1292-1293. VanNort did neither of those things; he was not present during the alleged filming. Moreover, the cases upon which *Irizarry* relies involve factual situations in which police officers obstructed an individual's ability to film police actions rather than the converse situation presented in this case in which the plaintiffs obstructed Sgt. Wald's discharge of his duties.[1]

Plaintiffs cannot defeat VanNort's qualified immunity defense by citing to precedents which may "suggest" his actions were unconstitutional. *Lewis* at 1198, citing *District of Columbia v. Wesby*, 138 S. Ct. 577, 590, 199 L. Ed. 2d 453 (2018). Instead, the clearly established standard requires that the legal principle the Plaintiffs seek to apply clearly prohibits VanNort's conduct *in the particular circumstances before him;* the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful *in the situation he confronted. Lewis* at 1198 (emphasis by Court). Neither *Irizarry* nor any of the other 193 cases Plaintiffs cite, address specific factual circumstances or legal principles similar enough to the allegations and issues of the instant case to place the alleged unconstitutionality of VanNort's actions "beyond debate." Plaintiffs' inability to find factually similar precedents mandates the conclusion that all of the claims against

---

[1] See, Plaintiffs' Consolidated Memorandum of Law (Doc. 45) at p. 4 ("Plaintiffs do not contest their obstruction convictions.")

VanNort should be dismissed on the grounds of qualified immunity. The specific argument and authority supporting dismissal of each claim against VanNort is discussed below.

## I.  FIRST AMENDMENT CLAIMS AGAINST VANNORT

The most recent, and controlling, Supreme Court case regarding the elements of a retaliatory arrest claim is *Nieves v. Bartlett,* 139 S. Ct. 1715, 1724, 204 L. Ed. 2d 1 (2019), which holds that "the presence of probable cause should generally defeat a First Amendment retaliatory arrest claim." *Nieves* at 1726. Absent a showing that there was no probable cause for arrest, a retaliatory arrest claim fails. *Id.* at 1725. Plaintiffs cursorily dismiss *Nieves* on the grounds it was "based in part on concerns about officers making snap judgments" in "the heat of the moment." Doc. 45, p. 56. While the arrest in *Nieves* was a warrantless arrest, the Supreme Court did not limit its analysis to warrantless arrests. Instead, *Nieves* adopted the no-probable-cause rule set out in *Hartman v. Moore*, 547 U.S. 250, 126 S. Ct. 1695, 164 L.Ed. 2d 441 (2006) in the context of retaliatory prosecutions. *Nieves* recognized that "retaliatory arrest claims involve causal complexities akin to those we identified in *Hartman*" and that "like retaliatory prosecution cases, evidence of the presence or absence of probable cause will be available in virtually every retaliatory arrest case." *Nieves* at 1723-1724. This connection should lead to the same solution: A plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause. *Id.* Because the Plaintiffs' guilty pleas make it impossible for them to plead or prove the absence of probable cause, VanNort is entitled to qualified immunity under *Nieves.*

Plaintiffs argue VanNort has forfeited his right to qualified immunity with respect to the First Amendment claims based on the right to petition and viewpoint discrimination.

3

See, Doc. 45, p. 54. However, what VanNort actually argued is that there are no allegations in the Amended Complaint setting out any actions he took which implicated the right to petition or viewpoint discrimination. See, Doc. 42, p. 23. This argument is consistent with *Sodaro v. City and County of Denver,* 2022 WL 436583 (D.Colo. Sept. 21, 2022) (See Exhibit 1), upon which Plaintiffs rely. *Sodaro* at *7 ("[C]onsidering that all of the Officers' actions occurred *in response* to the activities that Plaintiff contends were constitutionally protected, the Court is uncertain how it could analyze Plaintiff's claim as anything but a claim for retaliation.") In the instant case, as in *Sodaro*, all of the actions taken by VanNort occurred in response to the actions taken by the Plaintiffs during their encounter with Sgt. Wald. This case is a far cry from *Tillmon v. Douglas County*, 817 F. Appx. 586, 589-590 (10th Cir. 2020), in which the defendants' qualified immunity analysis consisted of a "single paragraph briefly discussing the law of qualified immunity."

     The cases cited by Plaintiffs to defeat qualified immunity, with the possible exception of *Buck v. Rhoades*, 2022 WL 1032785 (N.D. Okla. April 6, 2022) (See Exhibit 2), which was decided after the conduct at issue, are retaliation cases. This is simply the context in which the vast majority of First Amendment claims against police officers arise. Even at the motion to dismiss stage, however, the burden is on Plaintiffs to establish that the law is clearly established, which would require citation to cases where individual officers were found liable for First Amendment claims based on the right to petition or viewpoint discrimination. Plaintiffs have failed to meet this burden, and therefore Defendant VanNort is entitled to qualified immunity on all First Amendment claims.

In discussing *Price v. State,* 1994 OK CR 26, 873 P. 2d 1049, Plaintiffs completely ignore the difference between evidence sufficient to convict on the incitement charge and evidence sufficient to establish at least arguable probable cause for arrest. Contrary to Plaintiffs' argument, see Doc. 45, p. 57, VanNort did not "expressly acknowledge" there was "no evidence that Plaintiffs intended to create or created any kind of danger." VanNort's motion to dismiss specifically discusses the allegations that when Plaintiffs began yelling at Sgt. Wald, at least one other protestor moved behind the car and temporarily blocked Wald's ability to back up. See, Doc. 42, p. 13.

In considering a motion to dismiss, the Court must accept as true the factual allegations in the complaint, but is not required to accept legal conclusions framed as allegations. *Gonzales v. Trevino,* 42 F. 4th 487, 491 (10th Cir. 2022). Thus, the Court should accept as true the allegations that Plaintiffs stopped Wald's progress, yelled at him, yelled "hit me if you want to" and "Fuck the Police! We have a permit!" and that Wald's car was blocked on all sides for approximately six seconds. The Court is not required to accept the legal conclusion that the arrest of Plaintiffs was "based on fabricated premises" because no "danger, let alone a clear one, was present in the instant case." See, Doc. 45, p. 57. A plaintiff's subjective beliefs about why the government took action, without facts to back up those beliefs, are not sufficient to create a genuine issue of fact. *Nielander v. Board of County Commissioners*, 582 F. 3d 1155, 1165 (10th Cir. 2009).

Plaintiffs cite *Nielander* for the proposition that only statements which qualify as true threats may be constitutionally prescribed. Doc. 45, p. 9, citing *Nielander* at 1168. Even if statements "protested improper police conduct in vehement terms" and concerned

5

an event that garnered national attention and was part of a larger political debate" this context does not preclude the communications from being true threats. *United States v. Stevens*, 881 F. 3d 1249, 1256 (10th Cir. 2018). In the criminal context, the question of whether statements amount to true threats is a question best left for the jury. *Id.* at 1252. The analysis of *Stevens* is consistent with the *Price*, in which the Oklahoma Court of Criminal Appeals recognized that in a prosecution under 21 O.S. §1320.2, the element of clear and present danger should be determined by the jury. See, *Price* at 1052. In civil cases, when the defense of qualified immunity is raised, however, the question presented is whether a reasonable officer could have thought true threats had been made. *Nielander* at 1167. When it is debatable whether a reasonable officer could consider a particular statement to be a threat, the law is not clearly established that the officer acted unreasonably in preparing a probable cause determination. *Id.* at 1169.

## II. FOURTH AMENDMENT CLAIMS AGAINST VANNORT

In the criminal case, Plaintiffs Terry, Hogsett, Baker, Nabors and Webb had the option of allowing the jury to determine whether their actions in surrounding Sgt. Wald's car, combined with the statements made during the confrontation, constituted true threats. Apparently, they were not confident enough in the correctness of their legal position to take this risk, and chose to instead plead guilty to the lesser charge of obstruction in violation of 21 O.S. §540. This may have been an astute decision in terms of the criminal case, but the decision has consequences in subsequent civil litigation. As the Second Circuit recognized in *Rothstein v. Carriere*, 373 F. 3d 275, 287-288 (2nd Cir. 2004), a plaintiff who "bought his peace with the government" by accepting a compromise "may not thereafter

assert that the proceedings have terminated in his favor." *Rothstein* is consistent with *Lessard v. Cravitz*, 686 Fed. Appx. 581(10th Cir. 2017), which held a plaintiff's "decision to plead guilty in exchange for a deferred judgment may have robbed him of his malicious prosecution claim, but such trade-offs are a standard feature of malicious prosecution law." *Lessard* at 587, quoting *Cordova v. City of Albuquerque*, 816 F. 3d 645, 652 (10th Cir. 2016). See also, *Al-Anesi v. City of New York*, 2022 WL 1948879 (S.D.N.Y. June 6, 2022) (To demonstrate a favorable termination under *Thompson*, a plaintiff need only show that his prosecution ended without a conviction. However, it is well-settled that a guilty plea is not a termination in favor of the accused; this remains true even if the guilty plea was to a lesser charge or the result of an agreement between the defendant and the prosecution.) (See Exhibit 3).

Plaintiffs cite *Hinkle v. Beckham County Board of County Commissioners*, 962 F. 3d 1204, 1224 (10th Cir. 2020) for the proposition that probable cause must exist for each element of an offense, but ignore the outcome of *Hinkle.* Recognizing that "the probable cause inquiry is not restricted to a particular offense, but rather requires merely that officers had reason to believe that a crime—any crime—occurred," *Id.* at 1223, n. 12, the Tenth Circuit affirmed summary judgment for the defendant deputy on the Fourth Amendment false arrest claim, the First Amendment retaliation claim, and the conspiracy claim. *Hinkle* at 1225, 1229, 1231.  Thus, *Hinkle* supports dismissal of the claims against VanNort.

Similarly, neither *DeLoach v. Bevers*, 922 F. 2d 618 (10th Cir. 1990) nor *Goad v. Town of Meeker*, 654 F. Appx. 916 (10th Cir. 2016) support Plaintiffs' position.  While *DeLoach*, which was decided more than 30 years ago, did state that material misstatements

7

and omissions in a probable cause affidavit present a jury question, more recent Tenth Circuit cases make it clear that the question of whether an arrest warrant violates the Fourth Amendment can and should be determined by the Court. To make this determination, the Court measures probable cause by (1) removing any false information from the affidavit, (2) including any omitted material information, and then (3) inquiring whether the modified affidavit establishes probable cause for the warrant. *Puller v. Baca*, 781 F. 3d 1190, 1197 (10th Cir. 2015); *Kapinski v. City of Albuquerque*, 964 F. 3d 900, 905 (10th Cir. 2020), relying on *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed. 2d 589 (1991). Tenth Circuit precedents confirm that where a §1983 claim is premised on a violation of *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), courts may decide the probable cause question and indeed may do so without first characterizing ambiguous omitted material in a plaintiff's favor. *Kapinski* at 906, citing *Puller* at 1197-1198.

    *Goad* is applicable because the Amended Complaint specifically added new factual allegations recognizing that another individual present at the protest joined the Plaintiffs in surrounding Sgt. Wald's car and blocked his ability to back up, or move in any direction, for several seconds. These allegations contradict Plaintiffs' prior position that the statement in VanNort's affidavits that "Wald's vehicle was completely confined from moving in any direction, including backwards" was false. Compare, Doc. 1, ¶108 with Doc. 39, ¶¶96-100 and ¶106. Plaintiffs' attempt to distinguish *Goad* on the grounds it was decided on a motion for summary judgment rather than a motion to dismiss is of no avail because VanNort's Motion to Dismiss did not ask the Court to modify the affidavit under the process described

8

above. It is unnecessary for the Court to do so, because Plaintiffs' decision to plead guilty to obstruction foreclosed any false arrest or malicious prosecution claim.

Plaintiffs are incorrect in stating that neither *Thompson v. Clark*, 142 S. Ct. 1332 (2022) nor "Tenth Circuit precedent" support the conclusion that a plea bargain to a lesser charge fails the favorable termination requirement. In *Miller v. Spiers*, 339 F. Appx. 866 (10th Cir. 2009), the plaintiff was arrested on charges of murder, kidnapping, and conspiracy pursuant to an arrest warrant. While in police custody following arrest, he tried to destroy evidence by eating business cards he had hidden in his sock. *Id.* at 864-865. As a result of his in-custody actions, Miller was also indicted on several charges of tampering with evidence. *Id.* In this context, the Tenth Circuit held it might be reasonable to allow the plaintiff to challenge the first set of charges even though he was convicted of the tampering charges. *Id.* at 867-868. The Tenth Circuit then remanded the case for further consideration of whether Miller's attempted tampering bore upon the prosecutor's decision to dismiss the murder, kidnapping, and conspiracy charges. On remand, in *Miller v. Spiers*, 2010 WL 11618927 (D.N.M. December 20, 2010)(See Exhibit 4), the district court held the plaintiff could pursue a malicious prosecution claim on the original charges after the grand jury failed to return an indictment. *Id.* at *3. The plaintiff could not, however, pursue a malicious prosecution claim for two tampering charges which were dismissed as part of a plea bargain in which he entered no-contest pleas to three other counts of tampering. *Id.*

Similarly, in *Elbrader v. Blevins*, 757 F. Supp. 1174 (10th Cir. 1991), the Tenth Circuit noted that the charge of obstructing legal process was related to plaintiff's comments prior to the time he was arrested, while the officers were speaking to another

9

individual. The resisting arrest charge was based on conduct after the plaintiff was arrested. *Id.* at 1180. Because the charges were separate and distinct, the Court declined to grant summary judgment regarding the malicious prosecution claims based on the charges for which the plaintiff was not convicted. *Id.*

The cases from other Circuits cited by Plaintiffs also fail to support a malicious prosecution claim in the circumstances of this case. In *Uboh v. Reno,* 141 F. 3d 1000 (11th Cir. 1998), the indictment included both drug counts and counts of credit card fraud. *Id.* at 1001. After the drug charges were severed for purposes of trial, and the plaintiff was convicted of credit card fraud, the AUSA unilaterally dismissed the drug charges. *Id.* at 1005. The Court specifically noted that the involved charges "were not dismissed pursuant to any agreement." *Id.* at 1006. In *Janetka v. Dabe*, 892 F. 2d 187 (2nd Cir. 1989), the plaintiff was charged with "two distinct offenses involving distinct allegations" in which the plaintiff's actions were directed at different people. *Id.* at 190. More importantly, the favorable termination on the more serious charge was the result of an acquittal, rather than a plea bargain. See, *Janetka* at 190.

In *Kossler v. Cristanti,* 564 F. 3d 181, 191 (3rd Cir. 2009), abrogated on other grounds by *Thompson v. Clark*, the plaintiff was involved in an altercation with the defendant officer and was charged with a felony for aggravated assault and the summary offenses of disorderly conduct and public intoxication. *Id.* at 184. He was convicted of disorderly conduct but was found not guilty on the charges of aggravated assault and public intoxication. The Third Circuit held that acquittal on one charge does not constitute a favorable termination when the plaintiff was convicted of a different charge arising out of

the same act during the same criminal prosecution. *Kossler* at 188.  To determine whether a party has received a favorable termination in the underlying case, a court should court considered the judgment as a whole. *Id.*

The Plaintiffs in the instant case, like the plaintiff in *Janetka,* could have pursued a malicious prosecution claim on the incitement charge had they gone to trial and been acquitted.  However, they chose not to risk the chance of a conviction on the felony charge and instead plead guilty to a less serious charge arising out of the same act. As in *Kossler,* the statutory elements of incitement may be different than the statutory elements of obstruction.  However, the two charges were predicated on the same factual basis, which was the Plaintiffs' surrounding Sgt. Wald's vehicle and obstructing his progress, while yelling obscenities and provocative statements like "hit me if you want to."  Thus, as in *Kossler*, the Court should conclude the criminal proceeding did not end in Plaintiffs' favor.

Plaintiffs argue that VanNort is asking the Court to apply the "any-crime" rule, which they characterize as "a radical position that the Tenth Circuit has never endorsed." Doc. 45, p. 24.  However, in the context of qualified immunity for malicious prosecution, VanNort is not required to establish that the Tenth Circuit has adopted the rule.  Instead, in order to state a claim for malicious prosecution in a case in which they plead guilty to one crime in order to avoid trial on another, Plaintiffs bear the burden of establishing that the any-crime rule is not a valid defense.  In *Williams v. Aguirre*, 993 F. 3d 1147 (11th Cir. 2020), which Plaintiffs cite, the Eleventh Circuit recognized that "whether the any-crime rule extends to malicious prosecution is unsettled" due to a split between the circuits. *Id.* at 1159.

In *Bickford v. Hensley*, 832 Fed. Appx. 549 (10th Cir. 2020), which Plaintiffs choose to ignore, the Tenth Circuit specifically declined to decide "whether an officer who knowingly or recklessly included false statements on a warrant affidavit can be liable for false arrest despite having had probable cause to arrest Plaintiff without a warrant for a different offense not identified in the affidavit." *Bickford* at 556, n. 5.  See also, *Najera v. Brookhouser*, 2020 WL 4050383 at *8 (D.N.M July 20, 2020) ("Unfortunately for Plaintiff, there is currently no clearly established law in the Tenth Circuit suggesting that a claim for malicious prosecution lies when one charge is supported by probable cause but other simultaneous charges arising from the same set of facts are not.") (See Exhibit 5).  While an unpublished opinion "provides little support for the notion that the law is clearly established" on a point, unpublished opinions can be "quite relevant in showing that the law was *not* clearly established." *Grissom v. Roberts*, 902 F. 3d 1162 (10th Cir. 2018).  Thus, even if the allegations of Plaintiffs' Amended Complaint could support a conclusion that VanNort "knowingly or recklessly included false statements" in his affidavits, he is still entitled to qualified immunity because Plaintiffs' obstruction convictions establish that probable cause existed for a different offense.

### III.  EQUAL PROTECTION CLAIM AGAINST VANNORT

Plaintiff Mack is incorrect that he has no obligation to identify similarly-situated individuals at this stage of proceedings.  As *Marshall* recognizes, a plaintiff is not entitled to discovery on a selective prosecution claim "unless he can show that similarly situated individuals of a different race were not prosecuted." *Marshall* at 1167-1168.  Additionally, Plaintiff Mack's equal protection claim is based on the inherently

conflicting argument that 1) VanNort misidentified Mack solely because of his race, yet 2) improperly targeted Mack because he was a leader in the local protest movement. Doc. 45, pp. 64-65. With respect to the former basis for identification, when one person is mistaken for another, that is not a case of selective enforcement or prosecution; it is simply a case of mistaken identity governed by traditional Fourth Amendment standards. See, *United States v. Cruz-Mendez*, 467 F. 3d 1260, 1269 (10th Cir. 2006), quoting *Hill v. California*, 401 U.S. 797, 802, 91 S. Ct. 1106, 28 L.Ed. 484 (1971) ("When the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest.")

With respect to the latter basis for identification, Mack argues that "the mistaken presumptions that VanNort drew from Mack's leadership in the protests" creates an inference that VanNort was "acting on the basis of stereotype or prejudice," quoting *Marshall v. Columbia Lea Regional Hospital*, 345 F. 3d 1157, 1170 (10th Cir. 2003). But this alleged "stereotype or prejudice" would be based on Mack's actions rather than his race. The Constitution prohibits selective enforcement on the grounds of race, religion or other arbitrary classifications. *United States v. Griffith*, 928 F. 3d 855, 866 (10th Cir. 2019). Mack has not identified any Supreme Court or Tenth Circuit precedent extending the protection against selective enforcement beyond these parameters. Therefore, VanNort is entitled to qualified immunity on the equal protection claim.

## IV.  CONSPIRACY CLAIM

Police and prosecutors are expected to work together in investigating crimes and procuring arrest warrants. Therefore, Plaintiffs must allege more than "specific facts that

13

show and agreement and concerted action" between Defendants Prater and VanNort to establish a claim for conspiracy. As *Frasier v. Evans,* 992 F. 3d 1003, 1025 (10th Cir. 2021) recognizes, the agreement must be illegal to support a conspiracy claim. *Id.* at 1025. Proof that defendants formed an agreement or conspired to engage in lawful activities—including lawful investigative activities—is inadequate to support a conspiracy claim. *Id.* Plaintiffs spend several pages arguing that Defendant Prater is not entitled to absolute immunity for providing legal advice to VanNort. Doc. 45, pp. 47-53. However, they ignore the relevant case law discussing when a police officer is entitled to qualified immunity for relying on the legal advice provided. See, for example, *Hollingsworth v. Hill*, 110 F.3d 733, 741 (10th Cir. 1997); *Brooks v. Hinzman*, 2015 WL 4041708, *8 (D. Kan. July 1, 2015) (See Exhibit 6); and *Fitzgerald v. Board of County Commissioners of Pottawatomie County,* 2010 WL 141097 (W.D. Okla. April 2, 2010) (See Exhibit 7).

In *Fitzgerald*, this Court held that even if an officer's actions violated clearly established law, he may be entitled to qualified immunity if he can demonstrate that extraordinary circumstances, such as reliance on the advice of counsel, prevented him from knowing his actions were unconstitutional. *Id.* at *8. In making this determination, courts should consider "how unequivocal, and specifically tailored to the facts giving rise to the controversy" the advice was, whether complete information had been provided to the advising attorney, the prominence and competence of the attorney, and how soon after the advice was given the disputed action was taken. *Id.,* citing *V-1 Oil Co. v. State of Wyoming Dept. of Environmental Quality*, 902 F. 2d 1482, 1489 (10th Cir. 1990). In the instant case, based on the allegations of the Amended Complaint, these factors support

14

qualified immunity. The second factor is consistent with *Stonecipher v. Valles*, 759 F. 3d 1134, 1141 (10th Cir. 2014), which held the defendant officer "did not act in reckless disregard of the truth when he not only sought legal advice from an AUSA, but also provided the AUSA with all the materials he used to make his assessment."

Plaintiffs argue that "VanNort advances a different interpretation of the pleaded facts", i.e. that he simply sought legal advice from Prater but did not share Prater's allegedly improper or retaliatory motives. Under *Gonzales*, The Court is not required to accept the Plaintiffs' legal conclusions regarding any party's motives. Instead, the Court should focus on the factual allegations. As *Stonecipher* and *Fitzgerald* implicitly recognize, in order to state a claim against VanNort for malicious prosecution, and by extension conspiracy, Plaintiffs would have to identify some piece of evidence that VanNort failed to provide to Prater in the course of seeking legal advice. Instead, Plaintiffs allege Prater and VanNort worked together to gather the evidence. See, Doc. 39, p. 44. In the absence of any allegation VanNort concealed evidence from Prater, VanNort is entitled to qualified immunity on the conspiracy claim.

## CONCLUSION

Plaintiffs Terry, Hogsett, Baker, Nabors and Webb willingly bought their peace by pleading guilty to a lesser charge. The price of this peace included the loss of any subsequent civil action for malicious prosecution. With the benefit of hindsight, Plaintiffs may be second-guessing this choice, but "such trade-offs are a standard feature of malicious prosecution law." Consistent with the authority cited above, the Court should dismiss all of Plaintiffs' claims against Defendant VanNort.

        Respectfully submitted,

        s/ Stacey Haws Felkner
        Chris J. Collins, OBA No. 1800
        Stacey Haws Felkner, OBA No. 14737
        COLLINS, ZORN & WAGNER, PLLC
        429 N.E. 50th Street, 2nd Floor
        Oklahoma City, OK 73105-1815
        Telephone:  (405) 524-2070
        E-mail: cjc@czwlaw.com
         shf@czwlaw.com

        ATTORNEYS FOR DEFENDANT THOMAS VANNORT

## CERTIFICATE OF SERVICE

      I hereby certify that on November 17, 2022, I electronically transmitted this filing to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Megan Lambert, email: mlambert@acluok.org
AMERICAN CIVIL LIBERTIES UNION
 OF OKLAHOMA FOUNDATION
P.O. Box 13327
Oklahoma City, OK 73113

Anjana Malhotra, email: malhotra@nclej.org
Ranit Patel, email: patel@nclej.org
Karina Tefft, email: tefft@nclej.org
Claudia Wilner, email: wilner@nclej.org
NATIONAL CENTER FOR LAW
 AND ECONOMIC JUSTICE, INC.
50 Broadway, Suite 1500
New York, NY 10004

Thomas E. Riley, email: Thomas.riley@hsf.com
Barron M. Flood, email: Barron.flood@hsf.com
HERBERT SMITH FREEHILLS NEW YORK, LLP
450 Lexington Avenue
New York, NY 10017
***Attorneys for Plaintiffs***

16

Richard N. Mann, email: Richard.mann@okc.gov
Katie Goff, email at: Katie.goff@okc.gov
Assistant Municipal Counselor
City of Oklahoma City
200 N. Walker Avenue, Suite 400
Oklahoma City OK 73102
***Attorneys for Defendant City of Oklahoma City***

Kevin L. McClure, email at: kevin.mcclure@oag.ok.gov
Jessica Wilkes, email at: jessica.wilkes@oag.ok.gov
Litigation Division
Assistant Attorney General
Oklahoma Attorney General's Office
313 N.E. 21st Street
Oklahoma City, OK 73105-4398
***Attorney for Defendant David Prater***

                                              s/ Stacey Haws Felkner
                                              Stacey Haws Felkner