2022 WL 4365983
Only the Westlaw citation is currently available.
United States District Court, D. Colorado.

Caryn Marie SODARO, Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipality, Ken Chavez, in his individual and official capacities, Jacob Vaporis, in his individual and official capacities, Robert Foster, in his individual and official capacities, Joseph Heckenkamp, in his individual and official capacities, and Fernando Benavides III, in his individual and official capacities, Defendant.

Civil Action No. 21-cv-1879-WJM-STV
|
Signed September 21, 2022

**Attorneys and Law Firms**

Kenneth Mark Burton, Mark Burton, PC, Denver, CO, for Plaintiff.

Emily N. Dreiling, Conor Daniel Farley, Jeremy Christopher Tyrrell, Denver City and County Attorney's Office, Denver, CO, for Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

William J. Martinez, United States District Judge

 **\*1**  This matter is before the Court on two motions: (1) Defendants Ken Chavez, Jacob Vaporis, Robert Foster, Joseph Heckenkamp, and Fernando Benavides III's (collectively, "Officers") Motion to Dismiss ("Officers' Motion") (ECF No. 55); and (2) Defendant City and County of Denver's ("City") Motion to Dismiss ("City's Motion") (ECF No. 54). For the following reasons, the City's Motion is granted, and the Officers' Motion is granted in part and denied in part.

**I. BACKGROUND**

The following factual summary is drawn from Plaintiff's Amended Complaint. (ECF No. 52.) The Court assumes the allegations contained in the Amended Complaint are true for the purpose of this Order. *See Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007).

On July 15, 2019, Plaintiff attended the inauguration ceremony of Denver's mayor, Michael Hancock, on the east steps of Denver's City and County Building. (ECF No. 52 ¶¶ 19, 20.) Members of the public were seated facing the steps in an area that was partially surrounded by a temporary fence. (*Id.*) Members of the public who did not have seats were standing behind the temporary fence. (*Id.*)

During the ceremony, there were various speeches, and members of the public were clapping and shouting in support of the speeches. (*Id.* ¶ 21.) When Mayor Hancock took the podium, Plaintiff approached the temporary fence and "expressed her disagreement with the mayor on his treatment of the homeless," stating, "stop harassing the homeless." (*Id.* ¶ 22.) Plaintiff

EXHIBIT 1
Page 1 of 12

was immediately arrested by Defendants Chavez and Vaporis, who escorted her away from the inauguration to a nearby park. (*Id.* ¶¶ 22, 23.)

Defendants Heckenkamp and Benavides joined Defendants Chavez and Vaporis at the park, and all four officers discussed Plaintiff's actions; they decided to charge Plaintiff with disrupting a lawful assembly in violation of Denver Revised Municipal Code § 38-87, which provides:

> It shall be unlawful for any person, with the intent to prevent or disrupt any lawful meeting, procession, parade, or gathering, to significantly obstruct or interfere with the meeting, procession, parade or gathering by physical action, verbal utterance, or any other means.

(*Id.* ¶¶ 25, 26.)

From the park, Defendants Benavides and Heckenkamp took Plaintiff to the Van-Cise Simonet Detention Center in Denver, Colorado, where Plaintiff was booked on a charge of disrupting a lawful assembly. (*Id.* ¶ 27.) The City Attorney filed charges against her but moved to dismiss the charges after determining that there was "no reasonable likelihood of conviction." (*Id.* ¶¶ 28, 29; ECF No. 52-1.)

Plaintiff alleges that her actions at the inauguration did not cause a disruption, and there was not probable cause to arrest her. (ECF No. 52 ¶ 22.) She alleges that Defendants Chavez and Vaporis's actual motive for arresting her was to stop her from expressing her point of view. (*Id.* ¶ 24.) Further, she alleges that although Defendants Heckenkamp and Benavides knew that she had broken no law and that she was arrested in retaliation for expressing her opinion, they continued her arrest and took her to the Van-Cise Simonet Detention Center. (*Id.* ¶ 26.)

**\*2** Plaintiff also alleges that the Officers made false statements, which led to her prosecution. She alleges that Defendants Chavez, Vaporis, Heckenkamp, and Benavides worked together in a joint effort to conceal evidence of Plaintiff's lawful protest by misrepresenting the nature of her protest and falsely representing that she had disrupted a lawful assembly. (*Id.* ¶ 30.) More specifically, she alleges Defendant Benavides falsely claimed in a probable cause statement that Plaintiff "began yelling from behind seated patrons and disrupting the event." (*Id.* ¶ 35.) And she alleges that Defendants Foster, Vaporis, and Heckenkamp contributed to her wrongful prosecution by submitting statements that were designed to corroborate Defendants Benavides's distorted narrative. (*Id.* ¶ 33.)

Plaintiff initiated this action on July 12, 2021, asserting the following claims pursuant to 42 U.S.C. § 1983: (1) First Amendment free speech violation against all Defendants ("Claim One"); (2) First Amendment retaliation against all Defendants ("Claim Two"); (3) Fourth Amendment unreasonable seizure against all Defendants ("Claim Three"); and (4) Fourth Amendment malicious prosecution against all Defendants ("Claim Four"). (*Id.* ¶¶ 22–26.)

On December 17, 2021, the Officers filed their Motion, in which they seek dismissal of all claims against them, arguing that they are entitled to qualified immunity. (ECF No. 54.) On the same day, the City filed its Motion, seeking dismissal of all claims against it for failure to state a claim of municipal liability. (ECF No. 55.) Plaintiff responded to each motion (ECF Nos. 67, 66), and the Officers and the City replied (ECF Nos. 76, 77).

## II. LEGAL STANDARDS

### A. Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk,* 493 F.3d at 1177. In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief

EXHIBIT 1
Page 2 of 12

that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.' " *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

## B. Qualified Immunity

"Officers named in a § 1983 action may raise a defense of qualified immunity, which shields public officials ... from damages actions unless their conduct was unreasonable in light of clearly established law." *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016) (internal quotation marks omitted). "Once the qualified immunity defense is asserted," as the Defendants have done here, "the plaintiff bears a heavy two-part burden to show, first, the defendant[s'] actions violated a constitutional or statutory right, and, second, that the right was clearly established at the time of the conduct at issue." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted). "If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017), *cert. denied*, ––– U.S. ––––, 138 S. Ct. 211, 199 L.Ed.2d 118 (2017).

**\*3** "In this circuit, to show that a right is clearly established, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Gutierrez*, 841 F.3d at 900 (internal quotation marks omitted). "A plaintiff need not show the very act in question previously was held unlawful in order to establish an absence of qualified immunity." *Id.* (internal quotation marks omitted). But "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it." *City and Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 1774, 191 L.Ed.2d 856 (2015) (internal quotation marks omitted).

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Id.* (internal quotation marks omitted). "At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Id.*

## III. ANALYSIS

### A. Video Evidence

Attached to the Officers' Motion is body-worn camera ("BWC") footage showing a portion of the events at issue in this case. (ECF No. 57.) The Officers argue the Court may consider the video without converting their Motion to a motion for summary judgment because the video "clearly contradict[s]" the allegations in the Amended Complaint. (ECF No. 54 at 2.)

Well-settled authority provides that the Court "may consider a document outside the pleadings, even in a Rule 12(b)(6) analysis, if the document is (1) mentioned in the complaint, (2) central to the claims at issue, and (3) not challenged as inauthentic." *Ramirez v. Hotel Equities Grp., LLC*, 2019 WL 5964968, at \*1 (D. Colo. Nov. 13, 2019) (quotation marks and alterations omitted) (quoting *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013)). However, the Court's "function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Gilchrist v. City*, 71 F. App'x 1, 2–3 (10th Cir. 2003) (unpublished) (internal quotation marks and citations omitted). Thus, video evidence should only be considered if it "clearly contradict[s] the allegations in the complaint." *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019).

EXHIBIT 1
Page 3 of 12

The Officers argue that the BWC footage contradicts Plaintiff's allegation that she was not creating a disruption when she was arrested. According to the Officers, the BWC footage shows that Plaintiff was significantly obstructing the inauguration because her "utterances began to distract people in front of her." (ECF No. 54 at 8.)

The Court has reviewed the BWC footage alongside Plaintiff's allegations and the Officers' version of the facts. The Court finds that BWC footage does not clearly contradict any of the allegations in the Amended Complaint. Therefore, for the purposes of this Order, Plaintiff's allegations are accepted as true. *See Myers*, 773 F. App'x at 1036.

**B. Official Capacity Claims**

Any official capacity claim against a municipal employee is treated as a suit against the municipality itself. *See Johnson v. Bd. of Cnty. Comm'rs for Cnty. of Fremont*, 85 F.3d 489, 493 (10th Cir. 1996). As the City is a named Defendant in this action, the Court concludes that the official capacity claims against the Officers are redundant. Accordingly, Plaintiff's claims against the Officers in their official capacities are dismissed without prejudice. *French v. City of Cortez*, 361 F. Supp. 3d 1011, 1042 (D. Colo. 2019) (dismissing official capacity claims against individual officers as duplicative of claim against the city).

**C. Claim Three: Unlawful Seizure**

 *4 The Tenth Circuit has identified three categories of police-citizen encounters: (1) consensual encounters which do not implicate the Fourth Amendment; (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, which are reasonable only if supported by probable cause. *United States v. Torres–Guevara*, 147 F.3d 1261, 1264 (10th Cir. 1998).

Plaintiff brings Claim Three based on two theories: she alleges that she was unconstitutionally seized because she was either (1) detained without reasonable suspicion or (2) arrested without probable cause. (ECF No. 52 ¶¶ 89, 90.) In their Motion, the Officers assume that this claim should be analyzed under a probable cause standard. (*See* ECF No. 54 at 7.) For the purposes of this Order only, the Court adopts the Officers' approach and analyzes Claim Three under a probable cause standard, rather than a reasonable suspicion standard.

An officer has probable cause to arrest "if, under the totality of the circumstances, he learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested." *United States v. Muñoz–Nava*, 524 F.3d 1137, 1144 (10th Cir. 2008) (internal quotation marks omitted). "Probable cause to arrest does not require facts sufficient to establish guilt but does require more than mere suspicion." *Id.* (internal quotation marks omitted). Probable cause is a "fluid concept" that "deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 370–71, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003).

   1. Defendants Chavez and Vaporis

The Officers argue that Defendants Vaporis and Chavez are entitled to qualified immunity on this claim because they arrested Plaintiff based on "arguable probable cause" that Plaintiff violated D.M.R.C. § 38-87. (ECF No. 54 at 8.)

Officers who reasonably but mistakenly conclude that probable cause is present are entitled to immunity. *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). Therefore, when a warrantless arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff. *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007).

The Officers argue that the BWC footage shows that Plaintiff's actions "began to distract the people in front of her, including several photographers, who began turning to look at Plaintiff instead of at the ceremony." (ECF No. 54 at 8.) Based on these facts,

EXHIBIT 1
Page 4 of 12

the Officers argue that Defendants Chavez and Vaporis had arguable probable cause to arrest Plaintiff for violating D.R.M.C. § 38-87. (*Id.*)

The Officers' argument, however, is completely dependent on their characterization of the BWC footage, which the Court has decided not to consider at this stage. Instead, the Court bases its ruling on the allegations in the Amended Complaint.

Plaintiff alleges that her actions at the inauguration did not cause a disruption, yet Defendants Vaporis and Chavez chose to arrest her without probable cause. (ECF No. 52 ¶ 22.) Accepting Plaintiff's allegations as true, the Court finds that Defendants Vaporis and Chavez arrested Plaintiff without arguable probable cause that she had violated D.R.M.C. § 38-87, which only proscribes actions that "significantly obstruct or interfere" with an event. Thus, Plaintiff has adequately stated an unlawful seizure claim against Defendants Vaporis and Chavez, and they are not entitled to qualified immunity. Therefore, this portion of the Officers' Motion is denied.

### 2. Defendants Heckenkamp and Benavides

**\*5** The Officers also argue that Plaintiff's unlawful seizure claim against Defendants Heckenkamp and Benavides fails because these Defendants were entitled to rely on their fellow officer's probable cause determination. (ECF No. 54 at 9.)

Under the collective-knowledge doctrine, the knowledge of one officer supporting a search or seizure may be imputed to other officers acting in conjunction with the knowledgeable officer. *United States v. Hensley*, 469 U.S. 221, 232–33, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). There are two forms of collective knowledge: horizontal and vertical collective knowledge. *See United States v. Chavez*, 534 F.3d 1338, 1345–46 (10th Cir. 2008). In their Motion, the Officers rely on the vertical collective knowledge doctrine, which applies when "one officer has probable cause and instructs another officer to act but does not communicate the corpus of information known to the first officer that would justify the action." *Id.* at 1346.

The Officer's argument misses the mark for two reasons. First, Plaintiff alleges that Defendants Heckenkamp and Benavides had a discussion with Defendants Chavez and Vaporis at the park about Plaintiff's actions at the inauguration ceremony. (ECF No. 52 ¶ 25.) Thus, Plaintiff has alleged that Defendants Heckenkamp and Benavides were aware of the information underlying Defendants Chavez and Vaporis's probable cause determination. Therefore, Defendants Heckenkamp and Benavides cannot invoke the vertical collective knowledge doctrine, which requires the predicate state of mind of their ignorance of the underlying facts.

Second, the vertical collective knowledge doctrine only applies when the initial probable cause was constitutionally sound, but here, Plaintiff has adequately alleged that Defendants Chavez and Vaporis did not have probable cause to arrest her. *See Chavez*, 534 F.3d 1338 at 1346.

Thus, the Court is not persuaded by the Officers' argument, and this portion of their Motion is also denied. Plaintiff has adequately stated a claim against Defendants Heckenkamp and Benavides for unlawful seizure in violation of the Fourth Amendment. Defendants Heckenkamp and Benavides are not entitled to qualified immunity because the collective knowledge doctrine is well established law.

### 3. Defendant Foster

Officers argue that Plaintiff's unlawful seizure claim against Defendant Foster should be dismissed because Plaintiff fails to allege Foster's personal participation in the seizure. (ECF No. 54 at 9–10.)

The Court agrees that Plaintiff fails to state an unlawful seizure claim against Defendant Foster. In her Amended Complaint, Plaintiff only alleges that:

EXHIBIT 1
Page 5 of 12

Defendant Foster viewed the entire stop, arrest, and detention of [Plaintiff] by Chavez and Vaporis, who are fellow police officers. Foster saw Plaintiff arrested for expressing her point of view and took no action to stop this violation of [Plaintiff's] constitutional rights, even though it was clear to him that she did not commit any crime.

(ECF No. 52 ¶ 24.) But allegations of officers' "mere presence at the scene and their failure to stop any of the alleged constitutional violations committed by their fellow officers" is not sufficient to state a claim for failure to intervene. *Bark v. Chacon*, 504 F. App'x 741, 746 (10th Cir. 2012). In the absence of more specific and substantive factual allegations against Defendant Foster, the Court must conclude that Plaintiff has failed to state a claim against him. As a result, this portion of the Officers' Motion is granted, and Claim Three is dismissed without prejudice insofar as it is brought against Defendant Foster.

## D. Claim Two: First Amendment Retaliation

**\*6**  To establish a claim of retaliation for exercising one's First Amendment rights, a plaintiff must show that: (1) she was engaged in a constitutionally protected activity; (2) the defendants' actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the activity; and (3) her exercise of the constitutionally protected activity substantially motivated the defendants' adverse action. *Van Deelen v. Johnson,* 497 F.3d 1151, 1155–56 (10th Cir. 2007).

As to the first element, the Officers concede that "the right to criticize officials undoubtedly exists." (ECF No. 54 at 6.) But they argue that Plaintiff was doing more than expressing her opinion, they argue that she was disrupting the inaugural ceremony. (*Id.*) And they contend that the First Amendment does not "encompass the right to cause a disruption." (*Id.* (quoting *Startzell v. City of Philadelphia,* 533 F.3d 183, 198 (3d Cir. 2008)).)

The Court finds this argument unpersuasive because Plaintiff clearly alleges that she did not cause a disruption. (ECF No. 52 ¶ 22 ("[T]here was no disruption of, or cessation of, the inauguration ceremony by [Plaintiff] exercising her right to free speech."); *Id.* ¶ 26 ("[T]here was no evidence that [Plaintiff] had disrupted any lawful assembly.").) Therefore, viewing the facts alleged in the Amended Complaint in the light most favorable to the Plaintiff, the Court finds that she has adequately alleged that her criticism of the mayor at a public event was constitutionally protected activity.

The second element is easily met since false charges or arrest are sufficiently adverse to support a retaliation claim. *Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners*, 962 F.3d 1204, 1227 (10th Cir. 2020).

With regard to the third element, the Officers argue that Plaintiff fails to adequately allege that Defendants Chavez and Vaporis's actions were motivated by her constitutionally protected activity. (ECF No. 54 at 6.) They argue that Defendants Chavez and Vaporis had probable cause to arrest Plaintiff for making a disturbance and that was their motivation for arresting her; thus, according to the Officers, Plaintiff's protected activity did not substantially motivate their actions. (*Id.*)

The Court is once again not persuaded by the Officers' argument. As discussed above, Plaintiff has adequately alleged that Defendants Chavez and Vaporis arrested her without probable cause. In addition, Plaintiff alleges that the Officers' actual motivation for arresting her was to retaliate against her for "expressing her point of view on Mayor Hancock's treatment of the homeless."[1] (ECF No. 52 ¶ 26.) The Court finds that Plaintiff has alleged sufficient facts to support the third element of her retaliation claim. *See Gee v. Pacheco,* 627 F.3d 1178, 1189 (10th Cir. 2010) (finding that the plaintiff adequately stated a retaliation claim when he alleged that defendants were aware of the plaintiff's protected activity and that the defendants' adverse action was taken in close temporal proximity to the protected activity).

**\*7**  Finally, the Officers argue that Plaintiff has failed to allege that Defendants Foster, Heckenkamp, and Benavides personally participated in the violation of Plaintiff's First Amendment rights. (*Id.* at 14–15.) The Court agrees that Plaintiff has not stated a First Amendment retaliation claim against Defendant Foster because she has not alleged that he was involved in the decision to arrest her or in the seizure itself. (*See generally* ECF No. 52.) However, Defendants Heckenkamp and Benavides are alleged to have directly participated in the discussion at the park that led to her being charged with a violation of D.R.M.C § 38-87. (*Id.* ¶¶ 25, 26.) Further, they are alleged to have transported her to Van-Cise Simonet Detention Center and booked her on a charge

EXHIBIT 1
Page 6 of 12

*Sodaro v. City and County of Denver, --- F.Supp.3d ---- (2022)*

2022 WL 4365983

of disrupting a lawful assembly. (ECF No. 52 ¶ 27.) Thus, the Court finds that Plaintiff has sufficiently pleaded plausible facts of Defendants Heckenkamp and Benavides' personal participation in the violation of her First Amendment rights.

For the reasons discussed above, and taking the allegations in the light most favorable to the Plaintiff, the Court finds that she has adequately stated a claim of First Amendment retaliation against Defendants Chavez, Vaporis, Heckenkamp, and Benavides, but not against Defendant Foster. Therefore, this portion of the Officers' Motion is granted insofar as it relates to Defendant Foster and denied in all other respects. Thus, Claim Two is dismissed without prejudice insofar as it is brought against Defendant Foster.

### E. Claim One: First Amendment Violation of Right to Free Speech

In addition to her retaliation claim, Plaintiff brings another claim under the First Amendment, which she titles "First Amendment Violation Free Speech." (ECF No. 52 ¶ 60.) The Officers argue that Claim One should be dismissed as duplicative of Claim Two. (ECF No. 54 at 5.) In response, Plaintiff argues that "there is a clear difference between actually stopping [Plaintiff's] freedom of expression in her protest and the retaliatory actions taken to chill and deter her speech, which were taken subsequent to the protest." (ECF No. 66 at 4.)

Plaintiff does not indicate which legal test is applicable to Claim One and she does not allege any preemptively proscriptive action taken by Defendants to deprive her of her First Amendment rights. Absent this showing, and considering that all of the Officers' actions occurred *in response* to the activities that Plaintiff contends were constitutionally protected, the Court is uncertain how it could analyze Plaintiff's claim as anything but a claim for retaliation. Therefore, Claim One is dismissed without prejudice as duplicative of Claim Two. *See Valdez v. New Mexico*, 109 F. App'x 257, 263 n.4 (10th Cir. 2004) (unpublished) (concluding that the plaintiff had "not stated a First Amendment claim in any context" where the court could "discern no distinction" between the plaintiff's First Amendment retaliation claim and his claim alleging a direct denial of his First Amendment rights).

Therefore, this portion of the Officers' Motion is granted, and Claim One is dismissed without prejudice.

### F. Claim Four: Malicious Prosecution

Plaintiff also asserts a claim for malicious prosecution based on her arrest and subsequent prosecution. (ECF No. 52 ¶¶ 26–28.) A malicious prosecution claim under § 1983 includes the following elements:

> (1) [T]he defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

*Montoya v. Vigil*, 898 F.3d 1056, 1066 (10th Cir. 2018) (quoting *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)). Additionally, because "the relevant constitutional underpinning for a claim of malicious prosecution under § 1983 [is] the Fourth Amendment's right to be free from unreasonable seizures," Plaintiff must establish that a qualifying Fourth Amendment seizure occurred in this case. *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007).

 **\*8**  The Officers contend that Plaintiff cannot state a claim for malicious prosecution because: (1) the Officers had probable cause supporting the arrest, and (2) they did not cause Plaintiff's prosecution. (ECF No. 54 at 10–12.) Their first argument fails for the reasons discussed in Section III.B, above. Their second argument fails for the reasons discussed below.

Typically, a plaintiff may not sue a police officer for malicious prosecution pursuant to § 1983 because "the chain of causation is broken between the arrest and the actual prosecution." *Grobecker v. Grundy*, 2014 WL 3593513, at \*8 (D. Colo. July 18, 2014) (quoting *Barton v. City & Cnty. of Denver*, 432 F. Supp. 2d 1178, 1207 (D. Colo. 2006)) (internal quotation marks omitted). The independent decisions of the prosecutor in bringing the charge and of the court in issuing an indictment constitute superseding causes that break the chain of causation. Nonetheless, officers are not shielded from liability if a causal connection can be established demonstrating that the prosecutor's and court's actions were not truly independent causes. *Pierce v. Gilchrist,*

EXHIBIT 1
Page 7 of 12

359 F.3d 1279, 1292–93 (10th Cir. 2004). Most commonly, officers can be liable for malicious prosecution if they conceal or misrepresent material facts to the prosecutor, whose judgment was thereby influenced by the false statements. *Id.* Such a showing is sufficient to meet the causation requirements of § 1983. *Id.*

In her Amended Complaint, Plaintiff alleges that in his probable cause statement, Defendant Benavides's stated that Plaintiff "began yelling from behind seated patrons and disrupting the event." (ECF No. 52 ¶ 35.) Plaintiff alleges that she was not disrupting the event, and thus, Defendant Benavides's probable cause statement was false and misleading. (*Id.*) Further, Plaintiff alleges that Defendants Heckenkamp, Vaporis, and Foster submitted corroborating statements mirroring Defendant Benavides's statement. (*Id.* ¶¶ 33, 34.) She also alleges that Defendants Chavez, Vaporis, Heckenkamp, and Benavides worked together in a joint effort to conceal evidence of Plaintiff's lawful protest by misrepresenting the nature of her protest and falsely representing that she had disrupted a lawful assembly. (*Id.* ¶ 30.) Finally, she alleges that her prosecution was carried out based on the Officers' misrepresentations and false statements. (*Id.* ¶ 33.)

Considering Plaintiff's allegations in the light most favorable to her, the Court finds that she has adequately alleged that the Officers' actions were causally linked to her prosecution.

Since the other elements are uncontested by the Officers, and Plaintiff has alleged sufficient facts to support them, the Court finds that Plaintiff has stated a malicious prosecution claim against the Officers. Further, the Officers are not entitled to qualified immunity because it is clearly established law that police officers can be liable for malicious prosecution when they make materially false statements or omissions that form the basis of an arrest or prosecution. *See Malley v. Briggs*, 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Therefore, this portion of the Officers' Motion is denied.

**G. Failure to Intervene**

To state a § 1983 claim based on failure to intervene, a plaintiff must allege that officers "observe[d] or ha[d] reason to know" that a constitutional violation occurred and had a "realistic opportunity to intervene." *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015). Plaintiff categorically asserts in each of her four claims for relief that the Defendants who were not personally participating in the alleged constitutional violation "failed to intervene to prevent the other Defendants from doing so." (ECF No. 52 ¶¶ 66, 81, 92, 107.) These collective allegations are insufficient to state a claim under Federal Rule of Civil Procedure 8 because they do not demonstrate which officer is alleged to have done what to whom. *See Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) ("[I]t is particularly important in a § 1983 case brought against a number of government actors sued in their individual capacity that the complaint make clear exactly who is alleged to have done what to whom as distinguished from collective allegations." (citation, alterations, and quotations omitted)).

**\*9** Therefore, the Officers' Motion is granted insofar as it relates to Plaintiffs failure to intervene claims and all such claims are dismissed without prejudice.

**H. Supervisory Liability**

Within each claim for relief, Plaintiff also asserts that Defendant Chavez should be held liable under a supervisory liability theory because "as the supervisor on scene," he "caused, and is liable for, the actions of his subordinate officers." (ECF No. 52 ¶¶ 68, 83, 97, 109.) Defendants argue that Plaintiff has failed to adequately plead facts to support this claim. (ECF No. No. 74 at 13.)

Section 1983 does not authorize *respondeat superior* liability for a supervisor based solely on the actions of his subordinates. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "[T]he three elements required to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities [are]: (1) personal involvement[,] (2) causation, and (3) state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013); *see also Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

EXHIBIT 1
Page 8 of 12

Sodaro v. City and County of Denver, --- F.Supp.3d ---- (2022)

2022 WL 4365983

The Court has determined that Plaintiff adequately alleged Claims Two, Three, and Four against Defendant Chavez based on a theory of direct liability. As such, the Court finds that the elements (1) personal involvement (2) causation, and (3) state of mind are met. *Schneider*, 717 F.3d at 767. Plaintiff further alleges that Defendant Chavez was the "supervisor on scene." (ECF No. 52 at 68.) Considering the facts alleged a light most favorable to Plaintiff, the Court finds that Claims Two, Three, and Four adequately state claims against Defendant Chavez based on a theory of supervisory liability in addition to direct liability.

## I. Municipal Liability

Section 1983 imposes liability on

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ....

42 U.S.C. § 1983. The Supreme Court held in *Monell v. Department of Social Services* that "person," as used in this statute, includes "municipalities and other local government units," more specifically, "local government units which are not considered part of the State for Eleventh Amendment purposes." 436 U.S. at 691 & n.54, 98 S.Ct. 2018 (1978).[2]

However, a local government unit can be liable for damages under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury." *Id.* at 694, 98 S.Ct. 2018. The Supreme Court has thus "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury," thereby "ensur[ing] that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality," rather than holding the municipality liable simply because it employed a constitutional wrongdoer. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403–04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

**\*10** The relevant policy or custom can take several forms, including:

(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks omitted; alterations incorporated). But, whatever species of policy or custom is alleged,

[t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bryan County*, 520 U.S. at 404, 117 S.Ct. 1382 (emphasis in original).

Plaintiff's *Monell* claim against the City is based on: (1) an informal custom theory; (2) a failure to train theory; and (3) a ratification theory. (ECF No. 67 at 6–12.)

a. *Informal Custom*

"[A]n act performed pursuant to a custom that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bryan*

EXHIBIT 1
Page 9 of 12

Sodaro v. City and County of Denver, --- F.Supp.3d ---- (2022)

2022 WL 4365983

*Cnty.*, 520 U.S. at 404, 117 S.Ct. 1382 (internal quotation marks omitted); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (establishing an informal policy or custom requires the plaintiff to show that the misconduct was widespread—*i.e.*, that it involved a series of decisions).

Plaintiff alleges that her rights were violated as a result of *six* widespread informal customs of the Denver Police Department, including: (1) "chilling protest by attacking or falsely arresting citizens;" (2) "making attitude arrests for contempt of cop;" (3) targeting activists and protesters that call into question the policies of the City and County of Denver; (4) harassing and attacking citizens in retaliation for the exercise of their First Amendment right to protest; (5) failing to prevent the filing of false charges or reports; and (6) falsely arresting and wrongfully prosecuting citizens to cover up or justify police misconduct. (ECF No. 67 at 7.)

To support her six theories of informal custom liability, Plaintiff alleges eleven incidents of interactions between citizens and Denver police officers. (ECF No. 52 ¶¶ 39–49.) The eleven incidents vary broadly, falling into four categories:

(1) Incidents related to police actions in response to large-scale protests (*id.* ¶¶ 41, 42, 46);

**\*11**  (2) Incidents related to police actions in response to being video recorded by citizens (*id.* ¶¶ 42, 44, 47);

(3) An incident in which individuals were charged with jury tampering after they stood outside of a courthouse passing out literature on jury nullification (*id.* ¶ 43); and

(4) Incidents of alleged retaliatory arrest in violation of the First Amendment (*id.* ¶ 45).

This case does not involve a large-scale protest, it does not involve citizens video-recording the police, and it does not involve jury tampering. Therefore, the first three categories of incidents are irrelevant here.

Thus, the Court turns to the fourth category, which is comprised of two incidents. First, Plaintiff alleges that on September 23, 2018, a Denver police officer arrested a man for shouting "fuck the police." (ECF No. 52 ¶ 45.) Second, Plaintiff alleges that on September 24, 2018, an individual was protesting on a public street and a Denver police officer told people nearby that he could arrest the protester if one of them made a complaint that his conduct was offensive. (*Id.*) After a woman stated that she was offended and signed a complaint, the officer arrested the protester. (*Id.*)

The Court finds that these two incidents are insufficient to plausibly allege a widespread practice of constitutional violations similar to that alleged in the case, much less a practice "so permanent and well settled as to constitute a custom or usage with the force of law." *Bryan Cnty.*, 520 U.S. at 404, 117 S.Ct. 1382; see *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1290 (10th Cir. 2019) (finding that one prior similar incident fell "far short" of plausibly alleging the existence of an informal policy).

Therefore, this portion of the City's Motion is granted, and Plaintiff's *Monell* claim is dismissed without prejudice insofar as it is based on an informal custom theory.

b. *Failure to Train*

Plaintiff's second theory is that Denver is liable because it failed to adequately train or supervise officers on refraining from First Amendment retaliation and the need for probable cause to make arrests. To state a *Monell* claim based on the failure to train or supervise, a plaintiff must sufficiently allege that the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011).

Plaintiff fails to state a *Monell* claim under this theory for two reasons. First, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick,*

EXHIBIT 1
Page 10 of 12

Sodaro v. City and County of Denver, --- F.Supp.3d ---- (2022)

2022 WL 4365983

563 U.S. at 62, 131 S.Ct. 1350 (quotation omitted). As discussed in the previous section, Plaintiff has failed to adequately allege a pattern of similar constitutional violations by Denver police officers. Therefore, Plaintiff has failed to adequately allege that the City should have been on notice that its police officers had a training deficiency.

 **\*12** Second, Plaintiff's allegations are missing sufficient supporting factual allegations providing a basis for Plaintiff's failure-to-train theory; Plaintiff does not set forth any facts concerning how the Officers were trained, who they were trained by, or why their training was deficient. *See Bark v. Chacon*, 2011 WL 1884691, at \*3 (D. Colo. May 18, 2011) (dismissing municipal liability claim where the plaintiff had "generally allege[d]" that the officers were not properly trained but had not "allege[d] specific deficiencies in training and supervision or explain[ed] how the incident could have been avoided with different or better training and supervision").

Therefore, this portion of the City's Motion is granted, and Plaintiff's *Monell* claim is dismissed without prejudice insofar as it is based on a failure to train theory.

### c. *Ratification by a Final Policy Maker*

Under *Monell*, a municipality may be held liable if a final municipal policymaker ratifies the unlawful conduct or decision of a subordinate and the basis for the conduct or decision. Plaintiff alleges that several decision-makers were present at the inauguration, including the mayor, the chief of police, and others. (ECF No. 52 ¶ 14.) She argues that by failing to intervene to stop the unconstitutional arrest of Plaintiff, these decisionmakers effectively ratified the Officers' actions.

The Court finds that Plaintiff has not adequately alleged that the mayor or the other city officials at the inauguration were even aware of the circumstances of her arrest. Most importantly, Plaintiff fails to plausibly allege that these city officials knew she was arrested without probable cause. Without plausibly alleging that the final-decision makers at the inauguration knew about the basis for the Officers' actions, Plaintiff cannot plausibly claim that they ratified the Officers' unlawful conduct.

Therefore, this portion of the City's Motion is granted, and Plaintiff's *Monell* claim is dismissed without prejudice insofar as it is based on a ratification theory.

### IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. The Officers' Motion (ECF No. 54) is GRANTED IN PART and DENIED IN PART as follows:

   a. The Motion to Dismiss Claim Two and Claim Three against Defendants Heckenkamp, Benavides, Vaporis, and Chavez is DENIED;

   b. The Motion to Dismiss Claim Four is DENIED;

   c. The Motion to Dismiss supervisory liability claims against Defendant Chavez is DENIED; and

   d. The Officers' Motion (ECF No. 54) is GRANTED in all other respects, and all such claims are DISMISSED WITHOUT PREJUDICE;

2. The City's Motion (ECF No. 55) is GRANTED;

3. All claims against Defendant City and County of Denver are DISMISSED WITHOUT PREJUDICE;

EXHIBIT 1
Page 11 of 12

4. All claims against the Officers in their official capacities are DISMISSED WITHOUT PREJUDICE; and

5. The stay of discovery (ECF No. 38) is LIFTED, and the parties are DIRECTED to contact the chambers of Judge Varholak no later than **September 26, 2022**, to begin the process of preparing a revised scheduling order.

**All Citations**

--- F.Supp.3d ----, 2022 WL 4365983

Footnotes

1    The Officers also argue that Claim Two should be dismissed because Plaintiff produced "no competent factual support" that any Defendant was "substantially motivated in response to her exercise of protected First Amendment conduct." (ECF No. 54 at 14.) This argument appears to be based on a misunderstanding of the legal standard applied by courts in the context of a motion to dismiss. Plaintiff does not have the burden to produce factual support for her claims at this stage. The question is whether Plaintiff has *alleged* enough facts to plausibly state a claim for relief. *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955.

2    The Eleventh Amendment reads, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court construes this language to mean, among other things, that states may not be sued (even by their own citizens) for monetary damages in federal court. *See Hans v. Louisiana,* 134 U.S. 1, 10–15, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT 1
Page 12 of 12