# Exhibit 1





FILED
IN COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA
JUL 17 2025
JOHN D. HADDEN
CLERK

**2025 OK CR 11**

**IN THE COURT OF CRIMINAL APPEALS
OF THE STATE OF OKLAHOMA**

| | |
|---|---|
| SINCERE TERRY, *ET AL*, | **FOR PUBLICATION** |
| Plaintiff-Appellants, | |
| v. | Case No. CQ-2025-185 |
| GENTNER DRUMMOND, *ET AL* | |
| Defendants-Appellees. | |

**OPINION ANSWERING CERTIFIED QUESTION OF LAW**

**LEWIS, JUDGE:**

¶1  Before this Court is an order from the United States Court of Appeals for the Tenth Circuit entered in the pending appeal styled *Sincere Terry, et al v. Gentner Drummond, et al*, No. 24-6046. The Judges therein certify the following question to this Court:

> Does Okla. Stat. Ann. tit. 21, § 1311 require the State to prove the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence toward another to convict for threats constituting riot?

¶2  This Court responds to this request pursuant to the Uniform Certification of Questions of Law Act. 20 O.S.2021, § 1601 *et seq*. We answer this question in the negative for the reasons stated below.

¶3  The Oklahoma Statutes in section 1311 of Title 21 define the elements of the offense commonly referred to as riot:

> Any use of force or violence, or any threat to use force or violence if accompanied by immediate power of execution, by three or more persons acting together and without authority of law, is riot.

Section 1311 first appeared as section 2558 of the Revised Laws of Oklahoma 1910 and remains unchanged. The statutory history indicates the law was adopted from the 1887 Compiled Laws of Dakota. The statute has been the law in South Dakota since 1877.

¶4  In *State v. Bad Heart Bull,* 257 N.W.2d 715 (S.D. 1977), defendants challenged the constitutionality of the riot statute. *See* S.D.C.L. § 22-10-1. Not unlike the current Plaintiff-Appellants in *Terry*, appellants there argued that the riot statute denied free speech and due process by "allowing a conviction of a major crime without a showing of criminal or culpable intent to commit the felony charged." *Bad Heart Bull*, 257 N.W.2d at 719.

¶5  The South Dakota Supreme Court found the statute as written was constitutional and affirmed the convictions. The Court there said in pertinent part that:

> [R]iot is an offense against public peace and good order. It cannot be committed by one person in isolation. Mere presence alone does not make one a rioter but any person who encourages, incites, promotes, or actively participates in a riot is guilty as a principal. *It necessarily is a group crime requiring proof of a common or mutual criminal intent.* According to our statute when three or more persons acting together, without authority of law, use or threaten to use force or violence accompanied by the immediate power of execution, all participants are guilty of riot as principals. *The state is only obligated to prove the common or mutual intent of the group to commit an unlawful act by force or violence or the threat thereof.* This mutual or common intent need not be established by independent positive proof. *It may be inferred from all the facts and circumstances surrounding the commission of the offense.*

*Bad Heart Bull,* 257 N.W.2d at 719-20 (emphasis added; internal citations omitted). *See also State v. Kane, et al,* 266 N.W.2d 552 (S.D. 1978) (following *Bad Heart Bull's* reading of section 22-10-1); *State v. Means,* 268 N.W.2d 802 (S.D. 1978) (same); *United States ex rel. Means v. Solem,* 457 F.Supp. 1256 (D.S.D. 1978) (affirming constitutionality of riot statute against First Amendment challenge); *Dakota Rural Action v. Noem,* 416 F.Supp.3d 874, 890-91 (D.S.D. 2019) (noting South Dakota Supreme Court's interpretation of criminal intent element of section 22-10-1).

¶6   We approve the South Dakota Supreme Court's interpretation of the element of intent necessary for a conviction of riot and adopt it as the law of Oklahoma. This interpretation is consonant with our consideration of the riot statute in, *inter alia*, *Wright v. State,* 1973 OK CR 9, ¶¶ 41-42, 505 P.2d 507, 515 (affirming riot conviction upon information alleging that defendant and others "willfully, unlawfully, and feloniously" committed acts of violence and made violent threats); and *Johnson v. State,* 1919 OK CR 278, 183 P. 926, 927-28 (approving jury instruction on riot that State must prove defendants "without authority of law, feloniously combined together, acting in concert and in pursuance of *a common design and intent*," used or threatened violence "accompanied by immediate power of execution")(emphasis added).

¶7 We also find ourselves to this extent in agreement with the U.S. District Court in *Terry v. Drummond,* 717 F.Supp.3d 1106 (W.D. Okla. 2024), which concluded from its appraisal of this Court's riot cases that a defendant charged with a violation of section 1311 must be proved by the State to have acted "willfully, without authority of law, and sharing a common intent [with other rioters] to use force or violence or to unlawfully threaten to use force or violence." *Terry,* 717

4

F.Supp.3d at 1114-15. This statement of the required criminal intent is strikingly similar to the Supreme Court of South Dakota's in *Bad Heart Bull.*

¶8  We therefore answer the certified question in the negative. Section 1311 of Title 21 does not require the State in a charge of riot to prove the defendant "consciously disregarded a substantial risk that his communications would be viewed as threatening violence toward another." We add, however, that the combined factual elements of a mutual or common intent to use or threaten violence, and that the violent threats be "accompanied by immediate power of execution," substantially produce the same effect. *See* § 1311.

¶9  In this way the statute precludes punishment for mere hyperbole, idle threats, angry bluster, or lawful protest. We hold the State in a charge of riot must prove the defendant's mutual or common intent with two or more others to use or threaten violence, accompanied by an immediate power to carry the threat into being.

¶10  We again adopt what the Supreme Court of South Dakota said in *Bad Heart Bull:*

> [T]he gravamen of the crime of riot in [Oklahoma] is [collective] violence or the *immediate* threat thereof. As

5

such, it relates to and prohibits *certain defined conduct* rather than forms of expression.

*Bad Heart Bull,* 257 N.W.2d at 722 (emphasis added).

¶11 **CERTIFIED QUESTION ANSWERED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2025), the MANDATE is ORDERED issued upon delivery and filing of this decision.

**OPINION BY LEWIS, J.**
LUMPKIN, P.J.: Specially Concur
MUSSEMAN, V.P.J.: Concur
HUDSON, J: Concur
ROWLAND, J.: Specially Concur

## ROWLAND, J., SPECIALLY CONCURRING:

¶1 The fulcrum of this case, in my view, is the United States Supreme Court's decision in *Counterman v. Colorado* because the legal question certified to us is a direct quote from that case. *Counterman*, 600 U.S. 66, 69 (2023). I write separately to explain why I find that today's opinion is consistent with *Counterman's* reasoning, and why I find that the federal district court's construction of the definition of "riot" in 21 O.S.2021, § 1311 is correct and consistent with longstanding Oklahoma caselaw.

¶2 In *Counterman*, the Supreme Court vacated the criminal conviction of a defendant who sent hundreds of unsolicited Facebook messages to a singer/musician over a two-year period. These ranged from patronizing to angry to arguably threatening and caused her to cancel public performances and social engagements out of fear for her safety. The defendant was convicted under a Colorado statute which criminalized the repeated making of "'any form of communication with another person' in 'a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person ... to suffer serious emotional distress.'"

*Counterman*, 600 U.S. at 70 (quoting Colo. Rev. Stat. § 18-3-602(1)(c) (2022)).

¶3 The majority in *Counterman* held that statutes criminalizing threatening speech must include a *mens rea*, specifically that of recklessness, to comport with the First Amendment and to separate true threats from bluster, hyperbole, etc. *Id.* at 69. Speech constituting a true threat is not protected by the First Amendment. *Id.* at 74. Mere advocacy of illegal acts, by contrast, is protected speech. *Id.* at 76. *See also Brandenburg v. Ohio,* 395 U.S. 444, 447 (1969) ("[T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.").

¶4  *Counterman*, like all the Supreme Court's free speech jurisprudence, interpreted the Colorado statute to avoid criminalizing speech which is protected by the First Amendment and to avoid causing people to self-censor because they are not clear where the legal line is. *Counterman*, 600 U.S. at 78 ("The speaker's fear of mistaking whether a statement is a threat; his fear of the legal system

getting that judgment wrong; his fear, in any event, of incurring legal costs—all those may lead him to swallow words that are in fact not true threats.").

¶5 Unlike the Colorado law in *Counterman,* Section 1311 does not target speech alone; it targets groups of people acting in concert who threaten force or violence and have the immediate power to carry out those threats. Judge Goodwin, in my view, correctly surveyed the cases of this Court dating to statehood and concluded that a criminal conviction under Section 1311 requires "willfulness and a common intent as to 'any threat to use force or violence.'" *Terry v. Drummond*, 717 F.Supp.3d 1106, 1114 (W.D. Okla. 2024) ("[I]t is reasonable and readily apparent that the OCCA would construe section 1311 to likewise require willfulness and a common intent as to 'any threat to use force or violence.'"). *See, e.g., Proctor v. State,* 1911 OK CR 118, 5 Okla. Crim. 553, 115 P. 630, 632 (predecessor to Section 1311 requires a common intent among three or more persons). The additional elements in Section 1311 coupled with the *mens rea* identified by the district court sufficiently narrow its application to avoid First Amendment concerns in a riot prosecution based upon threats alone.

3

¶6  There is, therefore, little danger that this statute would reach "jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow . . . ." *Counterman*, 600 U.S. at 74 (citing *Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam)). On the contrary, Section 1311, as construed above, does not reach mere advocacy which is protected speech, but is directed at "preparing" and "steeling" a group for violent action. *See Noto v. United States*, 367 U.S. 290, 298 (1961) ("[T]he teaching of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action and steeling it to such action.").

¶7  I therefore agree that the certified question should be answered in the negative because Oklahoma's riot statute requires both the *mens rea* of willfulness and a common criminal intent among rioters which satisfies *Counterman*'s subjective intent requirement.

¶8 I am authorized to state that Presiding Judge Lumpkin joins in this writing.